# EXHIBIT A

Westlaw.

Slip Copy                                                                                       Page 1

Slip Copy, 2007 WL 2071677 (W.D.Pa.)

**(Cite as: Slip Copy)**

C
Klingensmith v. Paradise Shops, Inc.
W.D.Pa.,2007.
Only the Westlaw citation is currently available.
United States District Court,W.D. Pennsylvania.
Melanie A. KLINGENSMITH, individually and on
behalf of all others similarly situated, Plaintiff,
v.
The PARADISE SHOPS, INC., a corporation,
Defendant.
**Civil Action No. 07-322.**

July 17, 2007.

*OPINION and ORDER OF COURT*
<u>AMBROSE</u>, Chief District Judge.

*SYNOPSIS*

*1 Defendant, a Georgia corporation, seeks a transfer
of this action pursuant to <u>28 U.S.C. § 1404(a)</u>, to the
United States District Court for the Northern District
of Georgia. Putative Class Action Plaintiffs, one a
resident of Pennsylvania and one a resident of
California, oppose transfer. I find that the
convenience of the parties and witnesses and the
interest of justice would best be served by a transfer.
The Motion is granted.

*OPINION*

The Fair and Accurate Credit Transaction Act ("
FACTA" ) is an amendment to the Fair Credit
Reporting Act (" FCRA" ). Section 1681c(g)(1) of
FACTA provides that " no person that accepts credit
cards or debit cards for the transaction of business
shall print more than the last five digits of the card
number or the expiration date upon any receipt ...."
<u>15 U.S.C. § 1681c(g)(1)</u>.<sup>FN1</sup> Defendant The Paradies
Shops, Inc. (" Paradies" ) owns and operates airport
gift shops in airports around the United States. Thus,
although Paradies is a Georgia corporation, with
headquarters in Atlanta, Georgia, it owns shops in
Pittsburgh, Pennsylvania; Columbia, South Carolina;
Dallas, Texas; Des Moines, Iowa; Harlingen, Texas;
Albany, New York; Providence, Rhode Island;
Indianapolis, Indiana; Nashville, Tennessee; Palm
Beach, Florida; Islip, New York; Reno, Nevada;
Spokane, Washington; Lexington, Kentucky; Long

Beach, Burbank and San Francisco, California.<sup>FN2</sup>

> <u>FN1.</u> FACTA required compliance with this
> provision by December 4, 2006 for any
> machine which was in use prior to January
> 1, 2005. Immediate compliance was
> required with respect to any machines first
> put into use *after* January 1, 2005. *See* <u>15
> U.S.C. section 1681c(g)(3)(B)</u>.

> <u>FN2.</u> The corporate structure of each
> individual Paradies Shop depends upon the
> requirements of the particular airport. Some
> are structured as S corps, others as limited
> liability companies and others as C
> corporations.

Plaintiffs Melanie Klingensmith, a Pennsylvania
resident, and Paul Kelly, <sup>FN3</sup> a California resident,
purport to bring this action on behalf of a national
class of debit and credit card holders who transacted
business with Paradies and who received receipts that
contained more than the last five digits of the card
number and /or the expiration date on the receipts.
Klingensmith and Kelly contend that Paradies
willfully violated FACTA in this regard. Though they
do not claim to have become victims of identity theft
of credit / debit card fraud, they claim that Paradies'
conscious disregard of FACTA's requirements
exposed them to such risks. They seek on their own
behalf, and on behalf of the putative class members,
statutory damages in the amount of not less than $100
and not more than $1,000 for each violation and the
costs of suit and reasonable attorney fees.

> <u>FN3.</u> Paul Kelly initiated a similar action in
> California and later voluntarily dismissed
> that action and was added as a party plaintiff
> to this litigation.

Paradies has filed a Motion to Transfer Venue To
The Northern District of Georgia and Motion to Stay
Discovery. *See* Docket No .[27]. Paradies urges that
because all of the key witnesses, the locus of facts
and the documents are located outside of this judicial
district, and because Paradies' headquarters is in
Atlanta, Georgia, a transfer is warranted.
Klingensmith and Kelly oppose transfer. For the
reasons set forth below, I find that a transfer is
appropriate.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 2071677 (W.D.Pa.)
**(Cite as: Slip Copy)**

### ANALYSIS

Paradies seeks a transfer pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that " [f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Thus, § 1404(a) contemplates a two step inquiry: (1) determining first whether venue would be proper in the proposed forum; and (2) whether the convenience of the parties and witnesses and the interests of justice would be served by a transfer to the proposed forum. Here, there is no dispute that venue would be appropriate in the proposed forum. See Docket No. [30], p. 1. Paradies " resides" in Atlanta. Consequently, transfer depends upon " the convenience of the parties and witnesses and the interests of justice."

*2 The Third Circuit Court has provided an extensive list of both private and public factors to consider in assessing whether the convenience of the parties and witnesses and the interests of justice would be furthered by a transfer:
(1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) " convenience of the parties as indicated by their relative physical and financial conditions" ; (5) " the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora" ; (6) the location of books and records; (7) the enforceability of the judgment; (8) practical considerations that could expedite or simplify trial; (9) the level of court congestion in the two fora; (10) " the local interest in deciding local controversies at home: (11) the public policies of the fora; and (12) in a diversity case, the familiarity of the two courts with state law.

In re Amendt, 169 Fed. Appx. 93, 96 (3d Cir.2006), citing, Jumara v. State Farms Ins. Co., 55 F.3d 873, 879-80 (3d Cir.1995). " The burden of showing a need for transfer is on the movant." Id.

I turn first to a consideration of the private factors. Typically, a plaintiff's choice of venue is entitled to deference and should not be lightly disturbed. Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir.1970), cert. denied, 401 U.S. 910 (1971). Klingensmith's choice of forum is obviously Pennsylvania. She resides in Pennsylvania and apparently her cause of

action arose here. Kelly's choice of forum, while initially California, is now apparently Pennsylvania. However, he does not reside in Pennsylvania and it does not appear that his cause of action arose in Pennsylvania. Because of this, Klingensmith's and Kelly's choice of forum would be entitled to somewhat less weight.

Further, and more significantly, Klingensmith and Kelly are putative class plaintiffs. " The United States Supreme Court has held that a plaintiff's choice of forum should be accorded less deference in class action suits since all members of the class could conceivably bring suit in his or her home forum." Howell v. Shaw Industries, Civ. No. 93-2068, 1993 WL 387901 at * 3 (E.D.Pa. Oct. 1, 1993), citing, Koster v. (American) Lumbermens Mutual Casualty Co., 330 U.S. 518, 524, 67 S.Ct. 828 (1947); see also All Terrain Vehicles Litigation, Civ. No. 88-237, 1989 WL 30948 at * 3 (E.D.Pa. Feb. 23, 1989); Donnelly v. Klosters Rederi A/S, 515 F.Supp. 5, 6 (E.D.Pa.1981); Impervious Paint Industries Ltd. v. Ashland Oil, Inc., 444 F.Supp. 465 (E.D.Pa.1978); and Goodman v. Fleischmann, 364 F.Supp. 1172, 1176 (E.D.Pa.1973). I find that Klingensmith's and Kelly's choice of forum is entitled to even less deference here where the Paradies shops are located nationwide. There is every expectation that there will be more plaintiffs residing outside of Pennsylvania than within and that more causes of action will have arisen outside of Pennsylvania than within. Paradies has submitted evidence indicating that its shop located within this forum accounts for less than 10% of its business. See Docket No. [27-14], ¶ 5. Accordingly, more than 90% of the causes of action (and thus possibly plaintiffs) arose somewhere other than this forum. Further, despite that Klingensmith and Kelly have expressed a preference for litigating in Pennsylvania, there is no indication that their role will be anything more than nominal in nature. The focus of the litigation will be on Paradies' actions, not on any class members' actions. Consequently, I find that Klingensmith's and Kelly's choice of forum is entitled to little deference.

*3 I must also consider Paradies' choice of forum. Obviously, Paradies would prefer that the action be transferred to Georgia. As stated above, Paradies is headquartered in Georgia. The focus of this case, as acknowledged by both parties, will be Paradies' conduct. In contrast with Klingensmith and Kelly, who will likely offer little testimony, Paradies' senior officers will likely testify at length during discovery

Slip Copy

Slip Copy, 2007 WL 2071677 (W.D.Pa.)

(Cite as: Slip Copy)

Page 3

and at trial regarding Paradies' alleged " willful" behavior. The evidence before me indicates that all of these senior officers and key decision makers reside in Georgia. *See* Docket No. [27-14], ¶¶ 6-7. Further, despite the fact that Paradies shops are located throughout the nation, the evidence before me indicates that all records held by Paradies regarding the matters at issue are located in Georgia. *Id.* As such, I find that this factor weighs in favor of a transfer. In addressing the parties' choice of forum I briefly referenced another factor to be considered-where the cause of action arose. Though neither party briefed the issue, presumably the cause of action arose at the point of sale. Though Klingensmith's point of sale may have been in this forum, again, this is a nationwide class action. Paradies' shops are located throughout the country. Thus, there is one identified cause of action arising in the forum state and the majority of other causes of action arising outside of the forum state. Klingensmith and Kelly do make the point that no Paradies airport shop is actually located in Georgia. Presumably, then, no cause of action arose in Georgia. Accordingly, I find this factor to be neutral in weight.

I must also consider the convenience of non-party witnesses. Paradies has submitted the declaration of John O'Hare. *See* Docket No. [27-15]. O'Hare is the Director of Information Technology for Paradies. He explained that, on a daily basis, all of Paradies' shops ship hard copies of their credit and debit card receipts to a company called Terment, which maintains and stores the receipts. *Id.*, ¶ 7. Terment also processes the credit cards. *Id.* Terment has the information regarding the number of transactions that occurred during the relevant time period. *Id.* Terment is not affiliated with Paradies, but is a vendor. *Id.* Terment is located in Atlanta, Georgia and stores and maintains all of its records in Atlanta, Georgia. *Id.*

I agree with Paradies that Terment employees could be key witnesses, at least on the issue of the number of transactions during the period of time at issue. Certainly this would be relevant to the issue of damages. Because Terment is located in Atlanta, it is beyond this Court's subpoena powers. Terment is the *only* non-party witness identified by either party. I consider this factor to weigh heavily in favor of a transfer.

I must also consider the location of the books and records. " [T]he technological advances of recent years have significantly reduced the weight of this

factor in the balance of convenience analysis." *See Lomanno v. Black*, 285 F.Supp.2d 637, 647 (E.D.Pa.2003), *quoting, Am. High-Income Trust v. Allied Signal Inc.*, Civ. No. 00-690, GMS, 2002 WL 373473 at * 5 (D.Del. March 7, March 7, 2002) (citations omitted). Nevertheless, this case does involve receipts of credit and debit card purchases. Indeed, they are the only records identified in this case. It is undisputed that these documents and records are located either at the Paradies' headquarters in Georgia or at the Terment facility in Georgia. *See* Docket No. [27-15]. Accordingly, this factor, while not accorded much weight, weighs in favor of a transfer.

**\*4** I must also consider public factors, such as the enforceability of the judgment, court congestion in the two fora, public policy, et cetera. However neither party offers any substantive analysis. Accordingly, I will consider these factors neutral in weight.

In balance, then, I find that the private factors favor a transfer of this action to Georgia. Though Klingensmith and Kelly express a preference for litigating this action here, because this is a putative national class action with the vast majority of class members residing and causes of action arising outside of this forum, I find that this factor is entitled to little weight. The remaining private factors-Paradies' choice of forum, the convenience of the non-party witnesses and the location of books and records-weigh in favor of a transfer to Georgia. Accordingly, the Motion to Transfer (Docket No. [27] is granted.

---

*ORDER OF COURT*

AND NOW, this **17th** day of July, 2007, after careful consideration, and for the reasons set forth in the accompanying Opinion, it is Ordered that the Defendant's Motion to Transfer Venue to the Northern District of Georgia and Motion to Stay Discovery (Docket No. [27] ) is GRANTED. The Motion to Stay is denied as moot, the parties apparently having agreed to refrain from engaging in discovery during the pendency of the litigation.

The Clerk of Courts is directed to transfer this case forthwith to the United States District Court for the

Slip Copy                                                                      Page 4

Slip Copy, 2007 WL 2071677 (W.D.Pa.)

**(Cite as: Slip Copy)**


Northern District of Georgia pursuant to 28 U.S.C. § 1404(a).

W.D.Pa.,2007.
Klingensmith v. Paradise Shops, Inc.
Slip Copy, 2007 WL 2071677 (W.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 782441 (E.D.Pa.)

**(Cite as: Not Reported in F.Supp.2d)**

Page 1

**C**
Schreiber v. Eli Lilly and Co.
E.D.Pa.,2006.
Only the Westlaw citation is currently available.
    United States District Court,E.D. Pennsylvania.
        Alan SCHREIBER, et al., Plaintiffs,
                        v.
ELI LILLY AND COMPANY, et al., Defendants.
            **No. Civ.A. 05CV2616.**

                March 27, 2006.

Mark Lipowicz, Michael M. Mustokoff, Duane
Morris, LLP, Philadelphia, PA, for Plaintiffs.
Lisa M. Salazar, McCarter and English, LLP, Joseph
Lucci, Steven D. Maslowski, Woodcock Washburn
LLP, Philadelphia, PA, for Defendants.

                *MEMORANDUM*

DAVIS, J.
*1 Presently before the Court is Defendant Eli Lilly
and Company's (" Lilly" ) Motion to Dismiss or
Transfer Claims Brought in Plaintiffs' Amended
Complaint (Doc. No. 13), Defendant University of
Pennsylvania's Opposition thereto (Doc. No. 22),
Plaintiffs' Opposition thereto (Doc. No. 27),
Defendant Lilly's Reply (Doc. No. 30) and Plaintiffs'
Sur-Reply (Doc. No. 33). For the following reasons,
this Court denies Defendant Lilly's Motion to
Dismiss.

        I. PROCEDURAL BACKGROUND AND
                FACTUAL HISTORY

Plaintiffs Dr. Alan Schreiber and ZaBeCor
Pharmaceutical Company commenced this action
against Defendant Lilly on June 2, 2005, alleging
patent infringement, conversion, unjust enrichment,
breach of contract, misappropriation of trade secrets,
fraud and fraudulent inducement. Plaintiffs also
request a declaratory judgment of inventorship and
seek an accounting of Defendant Lilly's monetary
gain. On June 17, 2005, plaintiffs amended the
complaint to add the University of Pennsylvania ("
Penn" ) as a defendant. [FN1] On August 23, 2005,
Defendant Lilly filed the instant motion to dismiss.

        FN1. Plaintiff has stated that Penn is to be
        subsequently re-aligned as a party-plaintiff.

Am. Compl. at 1.

In the early 1980s, Defendant Lilly developed a
chemical compound named keoxifene.[FN2] After
clinical trials failed to demonstrate that keoxifene
was an effective treatment for breast cancer, Lilly
considered keoxifene a " dead drug." Am. Compl. ¶
1. In early 1987, Dr. Schreiber, a biomedical
researcher at Penn, obtained a sample of keoxifene
from Lilly. *Id.* ¶ 24. Dr. Schreiber discovered that
keoxifene could be used to treat and prevent
autoimmune and immune-mediated diseases. *Id.* ¶ 26.
In April 1987, Dr. Schreiber applied for a patent
pertaining to the use of keoxifene for the treatment
and prevention of rheumatoid arthritis and other
autoimmune diseases. *Id.* ¶ 27. In 1991, United States
Patent No. 5,075,321 (" the '321 patent" ) was issued
and assigned to Penn. *Id.* ¶¶ 7, 27. Penn licensed its
rights in the '321 patent exclusively to CorBec
Pharmaceutical Company, Inc. (" CorBec" ). *Id.* ¶¶ 8,
29; *see also* Penn's Answer ¶¶ 8, 29. CorBec's rights
have been sublicensed to ZaBeCor, including the
right to bring patent infringement and other litigation.
Am. Compl. ¶¶ 8, 30; *see also* Penn's Answer ¶¶ 8,
30.

        FN2. This chemical compound is also called
        raloxifene. Def. Lilly's Mot. at 4.

Plaintiffs allege that in 1987 and 1994, Dr. Schreiber
disclosed to Lilly, in confidence, his keoxifene
inventions and related confidential information,
including the use of keoxifene for the prevention and
treatment of autoimmune and immune-mediated
diseases such as rheumatoid arthritis and
osteoporosis. Am. Compl. ¶¶ 3, 36. Lilly and Dr.
Schreiber agreed to maintain the confidentiality of
their discussions for use only in mutually agreeable
research or further ventures between the parties. *Id.*
¶¶ 34, 43. After proposals for continued collaboration
failed, Dr. Schreiber and Lilly ended their
negotiations and terminated their relationship. *Id.* ¶¶
52-54.

Unbeknownst to plaintiffs, Lilly allegedly used the
information obtained from Dr. Schreiber to file a
patent application claiming a method of inhibiting
bone loss using raloxifene (keoxifene) and similar
compounds. *Id.* ¶ 45. The patent application issued as
U.S. Patent No. 5,393,763 (" the '763 patent" ) on

Not Reported in F.Supp.2d                                                                    Page 2

Not Reported in F.Supp.2d, 2006 WL 782441 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

February 28, 1995. *Id.:* Def. Lilly's Mot. at Ex. 2, '763 Patent. Plaintiffs also allege that, based on the information obtained, Lilly filed three additional patent applications. Am. Compl. ¶¶ 55-57. One of the additional patent applications, which was later issued as U.S. Patent No. 5,478,847 (" the '847 patent " ), was for the use of benzothiophenes, a class of compounds that includes raloxifene, to inhibit bone loss. *Id.* ¶ 55. The other two patent applications were for a method of inhibiting bone loss using raloxifene or similar compounds. *Id.* ¶¶ 56, 57. These patent applications were later issued as U.S. Patent Nos. 5,457,117 (" the '117 patent " ) and 5,534,527 (" the '527 patent " ). *Id.* Lilly did not disclose the '321 patent in connection with any of the applications or identify Dr. Schreiber as an inventor in any of the patent applications. *Id.* ¶¶ 46-47, 58-59.

**\*2** The United States Food and Drug Administration (" FDA " ) approved raloxifene (keoxifene), under the brand name EVISTA®, for prevention of osteoporosis in 1997 and treatment of osteoporosis in 1999. *Id.* ¶¶ 61, 62. EVISTA® has become one of Lilly's leading drugs. *Id.* ¶ 63.

## II. DISCUSSION

This action arises from Defendant Lilly's alleged infringement of the '321 patent and alleged misappropriation of inventions and trade secrets related to keoxifene. Defendant Lilly seeks dismissal of this action, arguing that (1) this action should be dismissed pursuant to the " first-to-file " rule because the first properly filed action is pending in Indiana, (2) the Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because the Amended Complaint fails to state a claim on which relief can be granted, and (3) in the alternative, the action should be transferred to Indiana pursuant to 28 U.S.C. § 1404(a).

### A. " First-to-File " Priority Rule [FN3]

FN3. Since the issue of which action should have priority under the first-to-file rule " raises the issue of national uniformity in patent cases, and invokes the special obligation of the Federal Circuit to avoid creating opportunities for dispositive differences among the regional circuits," this Court shall apply Federal Circuit law to this issue. *Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed.Cir.1993) (declining

to apply Seventh Circuit law to an issue involving the " first-to-file " rule).

The " first-to-file " rule, which favors the forum of the first-filed action, is a well-recognized doctrine of federal comity. *See Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed.Cir.1993), *abrogated on other grounds by Wilton v. Seven Falls Co.,* 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); *EEOC v. University of Pennsylvania,* 850 F.2d 969, 971 (3d Cir.1988). As a general rule, the first-filed suit has priority over subsequently filed suits. " Exceptions, however, are not rare, and are made when justice or expediency requires." *Genentech,* 998 F.2d at 937. If " sound reason [exists] that would make it unjust or inefficient to continue the first-filed suit," the district court has discretion to temper the preference for the first-filed suit. *Id.* at 938.

### 1. First-Filed Action

In the instant matter, the parties dispute which action is the first-filed action. Plaintiffs filed this action against Defendant Lilly in the Eastern District of Pennsylvania on June 2, 2005. Fifteen days later, on June 17, 2005, plaintiffs amended their complaint to add Penn as a defendant. On June 9, 2005, after plaintiffs filed this case but before Penn was added as a defendant, Defendant Lilly filed a declaratory judgment action against Dr. Schreiber, ZaBeCor and Penn in Indiana.

Defendant Lilly argues that the first properly filed action is pending in Indiana. Def. Lilly's Mot. at 12-15. Defendant contends that the original complaint in this matter was defective in that it failed to name Penn, the entity having the true interest in the disputed intellectual property, as a party. *Id.* at 12. Since the action in Indiana was filed before the original complaint in this matter was amended, Defendant Lilly believes the declaratory judgment action in Indiana should be considered the " first-filed " case and that the instant action should be dismissed because it is the " second-filed " case. *Id.* at 13.

" The first-filed rule turns on which court first obtains possession of the subject of the dispute, not the parties of the dispute." *RJF Holdings III, Inc. v. Refractec, Inc.,* No.Civ. 03-1600, 2003 U.S. Dist. LEXIS 22144, at *6 (E.D. Pa Nov. 24, 2003) (quoting *Advanta Corp. v. VISA U.S.A.,* No.Civ. 96-7940, 1997 U.S. Dist. LEXIS 2007, at *6-7 (E.D.Pa.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 3

Not Reported in F.Supp.2d, 2006 WL 782441 (E.D.Pa.)

(Cite as: Not Reported in F.Supp.2d)

Feb.19, 1997)); *see also Whelan v. United Pacific Industries, Inc.,* No.Civ. 02-2519, 2002 U.S. Dist. LEXIS 21827, at *7-8 (E.D.Pa. Nov. 1, 2002) (deferring to a first-filed case even though the patent owners were not included as parties in the first-filed case); *Schering Corp. v. Amgen Inc.,* 969 F.Supp. 258, 267 (D.De.1997) (finding that the addition of a new party is irrelevant to the question of which court had first acquired subject matter jurisdiction and noting that " relation back" analysis is unnecessary).[FN4] This Court was first to obtain possession of the subject of the dispute.

> **FN4.** Some district courts analyze whether an amendment to add a new party " relates back" to the date of the original pleading when determining whether the case is " first-filed." *See National Foam, Inc. v. Williams Fire & Hazard Control, Inc.,* No.Civ. 97-3105, 1997 U.S. Dist. LEXIS 16734, at *13-14 (E.D.Pa. Oct.29, 1997) (deferring to the first-filed case even though a defendant was not named in the initial complaint because the amended complaint related back to the date of the original pleading pursuant to Fed.R.Civ.Proc. 15(c)(3)); *Optima Inc. v. Republic Industries, Inc. .,* No. 94-3919, 1995 WL 72430, at *1-2 (E.D.La. Feb.21, 1995) (finding that the amendment to add a defendant related back to the date of the original complaint).
> This Court agrees with the holdings in *RJF, Advanta, Whelan* and *Schering* that relation back analysis is unnecessary. However, even if relation back analysis was required, the first-filed case would still be in the Eastern District of Pennsylvania as the addition of Penn as a defendant would relate back to the date of the original complaint. Fed. R. Civ. Proc. 15(c)(3); *see also National Foam,* 1997 WL 700496, at *15-16 (noting that notice may be imputed to proposed new parties when the original and added parties are so closely related that it is fair to presume the added parties learned of the institution of the action shortly after it was commenced).

**\*3** Even though plaintiffs' original complaint failed to name the patent owner as a party to the action, " such an easily correctable oversight does not prevent this Court from deferring to the first-filed suit." *Whelan,* 2002 WL 31513432, at *2; *see also National Foam,*

*Inc. v. Williams Fire & Hazard Control, Inc.,* No.CIV.A. 97-3105, 1997 WL 700496, at *5 (E.D.Pa. Oct.29, 1997) (deferring to the first-filed case even though plaintiff failed to name all appropriate defendants). Plaintiffs' amendment of their complaint does not alter the fact that this matter was filed before the action in Indiana was filed. This matter is the " first-filed" action.

### 2. First-to-File Rule Exceptions

As a general rule, the first-filed suit has priority. " Exceptions, however, are not rare, and are made when justice or expediency requires." *Genentech,* 998 F.2d at 937. If " sound reason [exists] that would make it unjust or inefficient to continue the first-filed suit," the district court has discretion to temper the preference for the first-filed suit. *Id.* at 938. Factors that may overcome the presumptive right of the first litigant to choose the forum include " the convenience and availability of witnesses, " absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest ." *Id.* Defendant Lilly argues that since the original action " was filed defectively in an effort to secure a tactical advantage, [FN5] was not served, and should logically have been brought elsewhere anyway," the Court has discretion to recognize the Indiana action as the " first-filed" action. Def. Lilly's Mot. at 13. This Court declines to do so. [FN6]

> **FN5.** Defendant Lilly has not provided any evidence in support of this contention.

> **FN6.** The Court analyzes a number of the *Genetech* factors when it addresses Defendant Lilly's transfer of venue arguments.

### B. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

#### 1. Legal Standard [FN7]

> **FN7.** When analyzing a purely procedural question not pertaining to patent law, " such as whether a Rule 12(b)(6) motion was properly granted," the rule of the regional circuit is applied. *Phonometrics, Inc. v. Hospitality Franchise Systems, Inc.,* 203 F.3d 790, 793 (Fed.Cir.2000).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                Page 4

Not Reported in F.Supp.2d, 2006 WL 782441 (E.D.Pa.)

**(Cite as: Not Reported in F.Supp.2d)**

Dismissal for failure to state a claim is appropriate when it clearly appears that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Robb v. City of Philadelphia*, 733 F.2d 286, 290 (3d Cir.1984). In deciding a motion to dismiss pursuant to Rule 12(b)(6), all facts alleged in the complaint must be accepted as true. *Malia v. General Electric Co.*, 23 F.3d 828, 830 (3d Cir.1994). A claim may be dismissed when the facts alleged and the reasonable inferences therefrom are legally insufficient to support the relief sought. *See Pennsylvania ex rel. Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 179-80 (3d Cir.1988).

### 2. Material Appended to Defendant Lilly's Motion to Dismiss

As a general matter, matters extraneous to the pleadings may not be considered. *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir.1997). However, a document " integral to or explicitly relied upon in the complaint" may be considered without converting the motion to dismiss into one for summary judgment.[FN8] *Id.* (quoting *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1220 (3d Cir.1996)); *see also In re Rockefeller Center Properties, Inc. Securities Litigation*, 184 F.3d 280, 287 (3d Cir.1999). " A court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guarantee Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). The Third Circuit notes that the rationale behind these exceptions is that the primary problem raised by looking to documents outside the complaint-lack of notice to the plaintiff-is dissipated where the plaintiff has actual notice and has relied upon these documents in framing the complaint. *In re Rockefeller Center*, 184 F.3d at 287.

> FN8. In its reply, Defendant Lilly suggests that this Court treat its motion to dismiss as a motion for summary judgment. Def. Lilly's Reply at 3 n.2. When a district court converts a motion to dismiss into a motion for summary judgment, it must provide the parties reasonable opportunity to present all material relevant to a summary judgment motion. *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287-88 (3d Cir.1999). Plaintiffs have not had sufficient notice or an opportunity to present all relevant materials. Therefore, this Court will not convert Defendant Lilly's motion to dismiss into a motion for summary judgment.

*4 Defendant Lilly appended thirty documents to its motion to dismiss. *See* Def. Lilly's Mot. Plaintiffs note that seven of the attached documents, two of Lilly's patents, two letters and three patent reissuance applications, were referenced in the Amended Complaint.[FN9] Pls' Opp. at 12 n.7. Plaintiffs do not dispute the authenticity of these seven documents. Since these documents are undisputedly authentic, plaintiffs' claims are based on these documents, and the documents are explicitly relied upon in the complaint, this Court shall consider these seven documents when deciding the motion to dismiss.

> FN9. These documents are appended in the following exhibits: Exhibit 2: Lilly U.S. Patent No. 5,393,763; Exhibit 3: Lilly U.S. Patent No. 4,418,068; Exhibit 5: November 11, 1993 letter from Lilly to Dr. Schreiber; Exhibit 13: April 2, 1987 letter from Penn to Lilly; Exhibit 25: patent reissuance application for the '763 patent; Exhibit 26: patent reissuance application for the '117 patent; Exhibit 27: patent reissuance application for the '847 patent.

Plaintiffs argue that the " overwhelming majority" of documents appended to Defendant Lilly's motion to dismiss are not referenced in the Complaint and are not the basis for any of plaintiffs' claims. Pls' Opp. at 12 n7. In large part, this Court agrees. Specifically, this Court finds that Exhibits 6-12, 14, 16, 20 and 21, which contain articles, abstracts, brochures, a press release and an excerpt from the Merck Manual of Diagnosis and Therapy, Exhibits 4 and 22, which contain communications between the parties, Exhibits 17-19, which contain patent prosecution histories, Exhibits 23-24 and 30, which relate to the *Lilly v. Barr* case pending in Indiana, and Exhibits 28 and 29, which contain SEC forms for Inkine Pharmaceutical Company, Inc., are not integral to or explicitly relied upon in the complaint. Therefore, the documents contained in these exhibits will not be considered.

In addition to the exhibits plaintiffs admitted were referenced in the complaint, this Court will consider

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 5

Not Reported in F.Supp.2d, 2006 WL 782441 (E.D.Pa.)

**(Cite as: Not Reported in F.Supp.2d)**

Exhibit 1, which contains the FDA-approved labeling for EVISTA®, as plaintiffs' claims are, in part, based upon this document. This Court shall also consider Exhibit 15, which contains the 1987 Confidentiality Agreement, as plaintiffs' claims are based upon this document and the document is explicitly relied upon in the Amended Complaint. *See* Am. Compl. ¶ 34. For both of these documents, the primary problem raised by considering documents outside the complaint-lack of notice to the plaintiff-is not present.

3. Dr. Schreiber's Work, Communications and Patent

Defendant Lilly argues that the entire Amended Complaint should be dismissed because Dr. Schreiber's work, communications and patent relate to the treatment of autoimmune disease, not post-menopausal osteoporosis. Def's Mot. at 15. Specifically, Defendant Lilly believes that the patent infringement claim and the inventorship claims should be dismissed.

a. Patent Infringement Claim

Defendant Lilly argues that no colorable claim for infringement can be advanced because post-menopausal osteoporosis is not an autoimmune disease within the scope of the properly construed claims of the Schreiber '321 patent. *Id.* at 16-17. The Federal Circuit has held that, in order to survive a motion to dismiss, " a patentee need only plead facts sufficient to place the alleged infringer on notice." *Phonometrics, Inc. v. Hospitality Franchise Systems, Inc.*, 203 F.3d 790, 794 (Fed.Cir.2000) (finding that a complaint that alleged ownership of the patent, named each individual defendant, cited the allegedly infringed patent, described the means by which the defendants allegedly infringed and pointed to the specific sections of patent law invoked contained enough detail to survive a motion to dismiss). The patent infringement claim in the Amended Complaint alleges that ZaBeCor has the exclusive worldwide right and license of the '321 patent and that Defendant Lilly has infringed the '321 patent by its manufacture, promotion, offering for sale, and sale of EVISTA®. Am. Compl. ¶¶ 79-83. Plaintiffs have pled sufficient facts to put Defendant Lilly on notice of their patent infringement claims. Therefore, the patent infringement claim survives Defendant Lilly's motion to dismiss.[FN10]

FN10. Defendant Lilly also argues that "

[c]onstruction of the patent claims is a question of law for the Court." Def. Lilly's Mot. at 16. While this is undeniably true, the proper time for this Court to address claim construction is not in a motion to dismiss. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

b. Inventorship claims

*5 Plaintiffs allege that Dr. Schreiber is the sole inventor (or co-inventor) and sole owner (or co-owner) of Defendant Lilly's '763, '847, '117 and '527 patents. Am. Compl. ¶¶ 84-89. Defendant Lilly contends that the only methods of treating diseases with keoxifene even arguably invented by Dr. Schreiber are the methods of treating autoimmune diseases claimed in his patent. Def.Lilly's Mot. at 17. Defendant Lilly contends that since Dr. Schreiber's patent is fundamentally different from Lilly's patented inventions, which are directed to the treatment of post-menopausal osteoporosis, there can be no legitimate claim of inventorship or co-inventorship. *Id.* at 17-18.

The Amended Complaint, however, alleges that in 1987, Dr. Schreiber, believing that he was communicating with Lilly under a confidentiality agreement, disclosed inventions and confidential information, " including use of keoxifene (raloxifene) for the prevention and treatment of autoimmune and immune-mediated diseases, including rheumatoid arthritis and osteoporosis, among others." Am. Compl ¶¶ 34-36. It also alleges that after the 1987 communications, Defendant Lilly focused on the confidential information disclosed, " including the Dr. Schreiber-discovered inhibitory effect of keoxifene (raloxifene) on bone loss and osteoporosis." *Id.* ¶ 39. According to the Amended Complaint, on January 12, 1994, using the inventions and information disclosed in confidence by Dr. Schreiber, Defendant Lilly filed a patent application claiming a method of bone inhibiting loss using raloxifene and similar compounds. *Id.* ¶ 45 (referring to the patent application for the '763 patent). The Amended Complaint then concludes that the patent application for the '763 patent was derived in whole or in part from the information disclosed by Dr. Schreiber to Defendant Lilly. *Id.* ¶ 46.

The Amended Complaint makes similar allegations with regard to the '847 patent, the '117 patent and the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page 6

Not Reported in F.Supp.2d, 2006 WL 782441 (E.D.Pa.)

**(Cite as: Not Reported in F.Supp.2d)**

'527 patent. *Id.* ¶¶ 55-60. Dr. Schreiber visited Lilly scientists on February 2, 1994. *Id.* ¶ 49. At this meeting, Dr. Schreiber and Defendant Lilly allegedly discussed Dr. Schreiber's inventions and confidential information relating to raloxifene, including the fact that raloxifene could be used to treat autoimmune and immune-mediated diseases such as rheumatoid arthritis and osteoporosis. *Id.* An attorney who was present at these meetings defended Defendant Lilly's patents at issue. *Id.* ¶ 60. The Amended Complaint alleges that the '847 patent, the '117 patent and the '527 patent were based on inventions and information Dr. Schreiber disclosed to Defendant Lilly in confidence. *Id.* ¶¶ 55-57.

Accepting all of the allegations contained in the Amended Complaint as true, this Court finds that the facts alleged adequately aver that Dr. Schreiber is the sole inventor (or co-inventor) and sole owner (or co-owner) of Defendant Lilly's '763, '847, '117 and '527 patents. Plaintiffs have adequately pled a claim for inventorship of the '763, '847, '117 and '527 patents.

### 4. Trade Secret and Associated State Law Claims

*6 Defendant Lilly argues that the trade secret and associated state law claims should be dismissed because Dr. Schreiber's information was free of any confidentiality restriction by virtue of the acts of Dr. Schreiber and Penn. Def's Mot. at 18. Defendant Lilly contends that the information disclosed by Dr. Schreiber was published in 1987 and included in the text of the '321 patent, which was published in 1991. *Id.* Since the information has been published, Defendant Lilly believes that the confidentiality restrictions have been lifted. *Id.*

Plaintiff argues that Defendant Lilly's argument is premised on the " misleading suggestion that the Schreiber patent and/or publications describe all of the research that Dr. Schreiber performed using keoxifene and all of the information shared with Lilly." Pl's Opp. at 15. The allegations in the Amended Complaint, taken as true for the purpose of this motion to dismiss, provide support for plaintiffs' argument. The Amended Complaint alleges that Dr. Schreiber disclosed confidential information relating to the use of keoxifene for " autoimmune diseases and immune-mediated diseases and specifically for the treatment of osteoporosis." Am. Compl. ¶ 48; *see also id.* ¶¶ 35-36, 49-50. Plaintiffs claims are sufficient to survive a motion to dismiss.

### 5. Patent Infringement Damage Claim

Defendant Lilly argues that the patent infringement damage claim should be dismissed on the grounds of laches because plaintiffs unreasonably delayed asserting the claim.[FN11] Def's Mot. at 18-19. Dismissal of a claim on the ground of laches requires that there be (1) unreasonable and unexcused delay in bringing the claim and (2) material prejudice to the defendant as a result of the delay. *A.C. Aukerman Co. v. R.L. Chaides Construction Co.,* 960 F.2d 1020, 1028 (Fed.Cir.1992). The strictures of Rule 12(b)(6) " are not readily applicable to a determination of laches," as the defense of laches usually requires factual development beyond the content of the complaint. *Advanced Cardiovascular Systems, Inc. v. SciMed Life Systems, Inc.,* 988 F.2d 1157, 1161 (Fed.Cir.1993). The mere passage of time does not constitute laches. *Id.* Based on the information currently before the Court, it is not evident that plaintiffs' delay in bringing the claim was unreasonable or unexcused or that material prejudice resulted to Defendant Lilly. In order to determine whether plaintiffs' claim is barred by laches, this Court needs more information than is contained in the Amended Complaint and Defendant Lilly's admitted exhibits.

> FN11. Defendant argues that the unreasonable delay attributable to Penn's failure to assert any claim of infringement notwithstanding its knowledge of Defendant Lilly's activities should be imputed to ZaBeCor as the exclusive licensee of the Schreiber '321 patent. Def. Lilly's Mot. at 19.

### 6. Statute of Limitations for State Law and Common Law Claims

Defendant Lilly argues that the state law and common law claims are barred by the statute of limitations. Def. Lilly's Mot. at 20. Specifically, Defendant Lilly contends that the conversion (Count III), fraud/constructive fraud (County VII), fraudulent inducement (Count VIII) and accounting (Count IX) claims have a statute of limitation of two years pursuant to 42 Pa.C.S.A. § 5524, that the unjust enrichment (Count IV) and breach of contract (Count V) claims have a statute of limitations of four years pursuant to 42 Pa.C.S.A. § 5525, and that the trade secret misappropriation claim based upon the Indiana

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 7

Not Reported in F.Supp.2d, 2006 WL 782441 (E.D.Pa.)

**(Cite as: Not Reported in F.Supp.2d)**

Uniform Trade Secrets Act (Count VI) has a statute of limitations of three years. *Id.* Plaintiffs disagree with most of the statute of limitations cited by Defendant Lilly. Pl's Opp. at 16. Specifically, plaintiffs argue that the breach of contract claims have a ten year statute of limitations pursuant to Ind.Code 34-11-2-11 and that the rest of the claims, with the exception of Count VI, are covered by Indiana's six year statute of limitations, Ind.Code § 34-11-2-7. *Id.* In its reply, Defendant Lilly argues that, even if Indiana statutes of limitations apply, the state claims are still time-barred. [FN12] Def. Lilly's Reply at 2-3.

> FN12. Neither party fully addressed the statute of limitations issue. For these claims, state law determines the applicable statute of limitations. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The statute of limitations issue raises a choice-of-law question. A federal district court adjudicating state law claims must apply the choice-of-law rules of the forum state, in this case Pennsylvania. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The operative choice-of-law rule in Pennsylvania is found in Pennsylvania's borrowing statute, 42 Pa.C.S.A. § 5521, which provides that " [t]he period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim." 42 Pa.C.S.A. § 5521(b).

**\*7** A motion to dismiss premised on statute of limitations grounds may only be granted if it is apparent from the face of the complaint that the cause of action was not brought within the limitations period. *Bethel v. Jendoco Construction Corp.,* 570 F.2d 1168, 1174 (3d Cir.1978). In the Amended Complaint, plaintiffs allege that Dr. Schreiber first learned about Lilly's litigation with Barr " about late 2002 or early 2003." Am. Compl. ¶ 76. Thereafter, he learned that EVISTA® was the same compound on which his discoveries were based and that the information disclosed in confidence to Defendant Lilly had been exploited by Lilly. *Id.* ¶¶ 77-78. Plaintiffs do not provide the specific time frame in which Dr. Schreiber, ZaBeCor or Penn learned of Defendant Lilly's actions. Viewed in the light most

favorable to plaintiffs, the allegations in the Amended Complaint, on their face, demonstrate only that at some point after early 2003, Dr. Schreiber learned about Defendant Lilly's actions that give rise to plaintiffs' claims. This point could have been after June 2, 2003. Since the shortest possible statute of limitations is two years and plaintiffs filed their complaint on June 2, 2005, the allegations in the Amended Complaint are insufficient for this Court to determine whether the state law and common law claims were brought within the limitations period. FN13

> FN13. This Court does not believe that plaintiffs should be rewarded for providing only minimal information about the timing of their discovery of Defendant Lilly's actions. However, this Court believes that minimal discovery will enable the parties to determine whether the state claims are time-barred on statute of limitations grounds.

C. Transfer of Venue [FN14]

> FN14. Transfer of venue under 28 U.S.C. § 1404(a) is governed by the law of the appropriate regional circuit. *Storage Tech. Corp. v. Cisco Sys., Inc.,* 329 F.3d 823, 836 (Fed.Cir.2003).

In the alternative, Defendant Lilly requests transfer of venue to the Southern District of Indiana pursuant to 28 U.S.C. 1404(a).[FN15] Def's Mot. at 20-25. Section 1404(a) provides that " [f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The burden of proving that transfer is appropriate is placed on the party moving for transfer, in this case Defendant Lilly. *Shutte v. AMCO Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970); *see also Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995) (citing *Shutte* ). The Third Circuit has identified non-exhaustive list of public and private interest factors to determine whether the moving party has met its burden. *Jumara,* 55 F.3d at 879-80. Within this framework, a plaintiff's choice of forum demands paramount consideration and should not be lightly disturbed. *Shutte,* 431 F.2d at 24.

> FN15. Neither party disputes that venue is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 782441 (E.D.Pa.)

(Cite as: Not Reported in F.Supp.2d)

Page 8

proper in the Eastern District of Pennsylvania.

### 1. Private Interest Factors

The private interest factors help interpret the " convenience" language of section 1404(a). These private interest factors include: whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *Jumara,* 55 F.3d at 879. Defendant Lilly identifies three private interest factors that allegedly favor transfer to Indiana: the convenience of the witnesses; the ease of access to sources of proof in Indiana; and the fact that Indiana is the hub of activity for virtually all of the events underlying plaintiffs' claims. Def. Lilly's Mot. at 21-23. Plaintiffs argue that the convenience of the witnesses and the convenience of the parties both weigh against transfer to Indiana. Pls' Opp. at 19-20.

#### a. Convenience of the Witnesses

*8 Defendant Lilly avers that " at least a dozen individuals who currently reside in Indiana" have potentially relevant information about plaintiffs' allegations. *Id.* at 22. Eight of Defendant Lilly's potential witnesses are current employees of Defendant Lilly and four are former employees. Def. Lilly's Mot., Leeds Decl. ¶ 7. In addition, the three inventors named on Lilly's patents all reside in Indiana. *Id.* Witnesses who are employed by a party carry no weight in the *Jumara* convenience analysis so this Court will not consider the eight potential witnesses employed by Defendant Lilly. *See Affymetrix Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 203 (D.Del.1998). Defendant Lilly notes that the witnesses, presumably the four former employees and the three inventors, " are unlikely to be compelled by subpoena to travel to Pennsylvania to testify before this Court." Def. Lilly's Mot. at 22. While this statement suggests that these witnesses are unavailable or unwilling to testify should the case remain in the Eastern District of Pennsylvania, Defendant Lilly has not provided any witness affidavits that support this contention. *See Jumara,* 55 F.3d at 879 (looking to the convenience of

witnesses, but only to the extent that " witnesses may actually be unavailable for trial in one of the fora" ); *Lomanno v. Black,* 285 F.Supp.2d 637, 646-47 (E.D.Pa.2003) (citing witnesses' affidavits averring that the forum would be inconvenient).

Plaintiffs argue that some of plaintiffs' witnesses reside in this District. Pls' Opp. at 18-19. Specifically, plaintiffs argue that former members of Penn who will confirm the confidential communications with Lilly, former research assistants who will confirm Dr. Schreiber's research and discoveries and what was conveyed in confidence to Lilly, and the lawyers who prosecuted the relevant patent application are potential witnesses residing in this District. *Id.* Plaintiffs claims that its " crucial witnesses are entirely independent of Plaintiffs." *Id.* Defendant Lilly believes that plaintiffs' list of witnesses in this District consists of only two people: Dr. Schreiber and one employee from the Penn technology transfer office who was involved in the communications underlying the Amended Complaint. Def. Lilly's Reply at 5-6.

Plaintiffs have not provided any sworn testimony regarding the number of witnesses residing in this District so this Court is unable to determine the potential number of witnesses residing in Pennsylvania. While Defendant Lilly provided a list of witnesses, seven of which are non-employees who reside in Indiana, it did not provide sworn testimony that these witnesses were unavailable or unwilling to testify in this District. Given the evidence submitted, this Court cannot find that this factor weighs in either party's favor.

#### b. Ease of Access to Sources of Proof and Evidence

Defendant Lilly argues that at least 500,000 pages of relevant documents are located in Indiana. Def. Lilly's Mot. at 22. Consideration of the location of books and records is " limited to the extent that the files could not be produced in the alternative forum." *Jumara,* 55 F.3d at 879. Defendant does not allege that the relevant documents cannot be produced in the Eastern District of Pennsylvania. As a result, the location of these documents is irrelevant to the venue analysis.

#### c. Hub of Activity

*9 Defendant Lilly argues that Indiana is the hub of activity for virtually all of the events giving rise to

Not Reported in F.Supp.2d                                                                                                                  Page 9

Not Reported in F.Supp.2d, 2006 WL 782441 (E.D.Pa.)

**(Cite as: Not Reported in F.Supp.2d)**

plaintiffs' claims. Def. Lilly's Mot. at 21-23. Defendant Lilly argues that the " center of gravity" for plaintiffs' patent infringement claim is in Indiana and that plaintiffs' inventorship, state and common law claims are based upon a series of meetings, communications, discussions and agreements with Lilly. *Id.* at 21-22. Penn argues that the claims arose in Pennsylvania, noting research at Penn that led to the inventions at issue and communications sent from, or sent to, parties that reside in this District.[FN16] Penn's Opp. at 5, 8-9. The Court believes that this factor weighs in favor of Defendant Lilly.

> FN16. Plaintiffs do not address Defendant Lilly's contention that the claims arose in Indiana. In fact, plaintiffs argue that Indiana law should apply to the state and common law claims. *See* Pls' Opp. at 16.

#### d. Convenience of the Parties

Plaintiffs argue that the convenience of the parties as indicated by their relative physical and financial condition weighs in favor of letting the case remain in the Eastern District of Pennsylvania. Pls' Opp. at 19-20; *see also Jumara,* 55 F.3d at 879. Plaintiffs note that the Lilly is a multi-billion dollar corporation with interests and activities spanning the globe. Pls' Opp. at 19. Financially, Defendant Lilly is capable of shouldering the inconvenience of litigating in Pennsylvania. Plaintiffs, on the other hand, have limited resources. *Id.* Dr. Schreiber and ZaBeCor, both of which are domiciled in the Eastern District of Pennsylvania, argue that it would be a significant hardship if they were compelled to litigate their claims in Indiana. *Id.* at 1, 19-20. Penn is a Pennsylvania not-for-profit educational institution and would similarly be inconvenienced by litigation in Indiana. Penn's Opp. at 1. This factor weighs in favor of the current venue.

#### 2. Public Interest Factors

The public interest factors help interpret the " interest of justice" language of section 1404(a). These public interest factors include: enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara,* 55

F.3d at 879-80. Defendant Lilly identifies two public interest factors that support a transfer to Indiana: judicial economy and the applicability of Indiana law. Def. Lilly's Mot. at 23-25; Def. Lilly's Reply at 8.

Defendant Lilly argues that the *Lilly v. Barr* case (" the *Barr* litigation" ) currently pending in the Southern District of Indiana involves many of the same legal and factual issues presented by Plaintiffs' Amended Complaint.[FN17] Def. Lilly's Mot. at 23. Defendant Lilly argues that since the Indiana court has already acquired considerable familiarity with the issues, judicial economy will be best served if this case is transferred to Indiana. *Id.* at 23. The *Barr* litigation involves seven Lilly patents and has been pending for three years in Indiana. Defendant Lilly does not contend that the instant case should be consolidated with the *Barr* litigation. Def. Lilly's Reply at 8. However, according to Defendant Lilly, the *Barr* litigation and the instant case both require construction of the claims of the '763, '847 and '117 patents. Def. Lilly's Mot. at 23-24. Defendant Lilly also claims that the Schreiber '321 patent is " central to both cases." Def. Lilly's Reply at 8. Plaintiffs believe that Lilly overstates the legal and factual relationship between the instant matter and the *Barr* litigation. Pls' Sur-Reply at 7. Plaintiffs contend that there is no legally relevant overlap between the '763, '847 and '117 patents. Pls' Opp. at 23.

> FN17. The *Barr* litigation was instigated when Barr sought FDA permission to sell a generic version of EVISTA®. Def. Lilly's Mot, at 11. In the *Barr* litigation, Barr has asserted that seven of Lilly's patents, including the '763, '847 and '117 patents, are invalid. *Id.* One of Barr's arguments that those patents are invalid is based upon its assertion that the Schreiber '321 patent anticipates the subject matter claimed in the '763, '847 and '117 patents. *Id.* The plaintiffs in the instant matter are not involved in the *Barr* litigation.

**\*10** This Court does not believe that the legal and factual issues overlap to such an extent that transfer on this basis is justified. *See SmithKline Beecham Corp. v. Geneva Pharmaceuticals,* No. 99-2926, 2000 WL 217642, at \*2 (E.D.Pa. Feb.11, 2000) (denying a motion to transfer when the case involved two patents not at issue in the Illinois case and discovery had already been completed in the Illinois

Not Reported in F.Supp.2d                                          Page 10

Not Reported in F.Supp.2d, 2006 WL 782441 (E.D.Pa.)

**(Cite as: Not Reported in F.Supp.2d)**

case); *Max Planck Gesellshaft Zur Foederung Der Wissenschaften, E.V. v. General Electric Co.,* 858 F.Supp. 380, 382 (S.D.N.Y.1994) (finding that familiarity of a court with a specific patent should not be given weight).

Defendant Lilly also argues that the case should be transferred to Indiana because Indiana law applies and the Southern District of Indiana routinely applies Indiana law. Def. Lilly's Reply at 8. Assuming *arguendo* that Indiana law applies, there is nothing to indicate that this Court would have difficulty applying Indiana law to this case. *See De Lage Landen Financial Services, Inc. v. Cardservice International, Inc.,* No.Civ.A. 00-2355, 2000 WL 1593978, at *2 (E.D.Pa. Oct.25, 2000) (" federal judges routinely apply the law of various jurisdictions" ).

### 3. Balance of the Factors

Upon consideration of the parties' arguments, this Court is not persuaded that a transfer to the Southern District of Indiana is appropriate. Defendant Lilly has not made a convincing showing that the balance of factors outweighs the paramount consideration given to plaintiffs' choice of forum. Accordingly, this case will not be transferred.

### III. CONCLUSION

Accordingly, Defendant Lilly's Motion to Dismiss or Transfer Claims is DENIED. An appropriate order follows.

E.D.Pa.,2006.
Schreiber v. Eli Lilly and Co.
Not Reported in F.Supp.2d, 2006 WL 782441 (E.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 695700 (N.D.Ill.)

**(Cite as: Not Reported in F.Supp.2d)**

C
Vanguard Products Group, Inc. v. Protex Intern. Corp.
N.D.Ill.,2006.
Only the Westlaw citation is currently available.
    United States District Court,N.D. Illinois, Eastern
                        Division.
    VANGUARD PRODUCTS GROUP, INC. and
Telefonix, Inc., both Illinois corporations, Plaintiffs,
                            v.
PROTEX INTERNATIONAL CORP., Defendant.
                    **No. 05 C 6310.**

                    March 14, 2006.

Lee F. Grossman, Jeffrey Mark Drake, Mark M.
Grossman, Grossman Law Offices, Chicago, IL, for
Plaintiffs.
Philip T. Petti, Rudy I. Kratz, Fitch, Even, Tabin &
Flannery, Chicago, IL, for Defendant.

          *MEMORANDUM OPINION AND ORDER*
DARRAH, J.
**\*1** Plaintiffs, Vanguard Products Group, Inc. and
Telefonix, Inc., filed suit against Defendant, Protex,
International    Corp.,    alleging    Defendant's
infringement of U.S. Patent No. 6,799,994 B2.
Presently pending before the Court is Protex's motion
to dismiss for improper venue pursuant to
Fed.R.Civ.P. 12(b)(3) or, in the alternative, to
transfer venue pursuant to 28 U.S.C. § 1404(a).

                    BACKGROUND

A reading of the Complaint, including attachments,
and other matters of record supports the following
summary of the alleged operative conduct of the
parties.

Paul Burke, the founder and president of Telefonix,
Inc., obtained U.S. Patent No. 6,799,994 B2 (" the
'994 Patent" ) for an anti-shoplifting system, entitled
Cord Management Apparatus and Method. The anti-
shoplifting equipment protected by the '994 Patent is
a unique cord reel management system which permits
the unattended display of electronic consumer
products by retailers for use by potential purchasers,
while simultaneously preventing product theft. On
October 5, 2004, immediately after obtaining the

patent, Burke assigned the '994 Patent to Telefonix,
which is a designer and manufacturer of products in
the field of electronic cord management. Thereafter,
Telefonix exclusively licensed the '994 Patent to
Vanguard. Vanguard is a wholesaler of anti-
shoplifting equipment to various companies
throughout the United States. Vanguard is co-owned
by Burke, who is a Lake County, Illinois resident.
Protex is a former customer of Telefonix and is also a
purveyor of anti-shoplifting equipment to retailers.
Protex is a competitor of Vanguard and sells a cord
reel management system called PowerPro.

On March 4, 2005, Vanguard wrote a letter, notifying
Protex of its possible infringement of the '994 Patent.
Protex responded by letter on April 13, 2005, stating
its opinion that the '994 Patent did not cover its
PowerPro product.

On September 2, 2005, following Protex's execution
of a large contract for the sale of the PowerPro
product, Plaintiffs filed an amended complaint,
adding Protex as a party defendant to a pending
patent infringement action Plaintiffs had filed in the
Northern District of Illinois against Diam
International and Diam U.S.A. on March 4, 2005, for
infringement of the '994 Patent (the *Diam* action" ).
The *Diam* court permitted the joinder of Protex in
this suit.

On September 20, 2005, the *Diam* defendants filed a
motion, requesting the court to reconsider the
previous ruling that allowed Protex to be added as a
defendant. The *Diam* defendants argued that Protex
had been improperly joined inasmuch as Protex's
alleged acts of patent infringement did not arise out
of the same occurrence as the *Diam* action. On
October 26, 2005, the motion to reconsider was
granted; and the *Diam* court issued an order, denying
Plaintiffs' motion to amend the complaint by adding
Protex as a party defendant. The order stated that "
[p]laintiff is required to file a separate action against
one of the two defendants" and that " there is no
proper basis for joining the two defendants in one
action."

**\*2** On October 27, 2005, Protex filed a declaratory
judgment action, in the Eastern District of New York,
against Plaintiffs. In its complaint, Protex requested
that the New York court declare the '994 Patent

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 695700 (N.D.Ill.)

**(Cite as: Not Reported in F.Supp.2d)**

invalid and that Protex is not infringing and has not infringed upon the '994 Patent.

On November 3, 2005, eight days after the declaratory judgment action was filed in the New York forum, Plaintiffs filed the instant action against Protex. Protex then filed this Motion to Dismiss or Transfer with this Court.

### ANALYSIS

#### Motion to Dismiss for Improper Venue Under the First-to-File Rule

Protex moves for dismissal of this action pursuant to Fed.R.Civ.P. 12(b)(3), asserting improper venue under the first-to-file rule. In response, Plaintiffs contend: that the declaratory judgment action pending in the New York forum was not the first filed because Plaintiffs' claim in the Illinois forum in the *Diam* action should be considered the first filed; also, that the declaratory action filed by Protex was an improper, anticipatory filing. For these reasons, Plaintiffs contend their choice of the Illinois forum, rather than Protex's choice of forum, should prevail. Protex responds that it did not engage in forum shopping and that it did not file its action in the New York forum in apprehension of an ongoing threat of litigation.

The Federal Circuit Court applies its circuit law when reviewing district court decisions on patent law issues in the interest of promoting national uniformity. *See Midwest Indus., Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356, 1359 (Fed.Cir.1999). In resolving venue disputes and issues of appropriate forum where two actions involve closely related patent infringement questions, the Federal Circuit has strongly endorsed the first-to-file doctrine. *See Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed.Cir.1993), *overruled in part on other grounds by, Wilton v. Steven Falls Co.,* 515 U.S. 277, 289, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (*Genentech* ); *Trading Tech. Intl., Inc. v. CQG, Inc.,* 2005 WL 3601936 at 2 (N.D.Ill. Oct.31, 2005) (*Trading Tech.*). The first-to-file rule is a discretionary doctrine that provides if actions involving nearly identical parties and issues have been filed in two different courts, the court in which the first suit was filed should generally proceed to judgment. *See Genentech,* 998 F.2d at 937. This rule applies even if the filing is a declaratory judgment action. *See Elec. for Imaging, Inc. v. Coyle,* 394 F.3d 1341, 1347 (Fed.Cir.2005)

(*Elec. for Imaging* ); *Genentech,* 998 F.2d at 937.

#### Determination of the Action First Filed

It must first be determined which of the two actions was first filed. As between the instant action and the action filed in New York (Case No. CV-05 5032), the record is unambiguous as to the dates of filing. The declaratory judgment action pending in the New York forum was filed on October 27, 2005. The instant action was filed eight days later, on November 3, 2005. Considering only these two actions, the declaratory judgment action filed in the New York forum was chronologically the first filed.

**\*3** Plaintiffs, however, argue Protex's New York declaratory judgment action should be deemed the second filed. Plaintiffs contend the order in the *Diam* action that denied their efforts to add Protex to the suit in the Illinois action imposed upon Plaintiffs a requirement to file this action against Protex; and, therefore, it should be afforded the status of an action pending prior to the time the New York action was filed. Said another way, it is Plaintiffs' position that because the court order in the *Diam* action imposed a requirement on Plaintiffs to file a separate action against Protex, the instant action should be treated as the first filed in relation to the New York action, inasmuch as the instant action effectively constitutes a continuation of the Illinois *Diam* action. The *Diam* court order, Plaintiffs contend, creates a special circumstance, favoring a determination by this Court that their litigation was the first filed because they had no choice but to file the instant action against Protex.

Notwithstanding Plaintiffs' characterization of the *Diam* order, it essentially determined that the pursuit of claims of patent infringement against both Diam and Protex must be by separate, independent actions. That is, the order specifies that in the prosecution of both claims of patent infringement, one of the proposed defendants in the *Diam* action must be sued in litigation apart from the *Diam* action. The crux of the order is (1) that the existing claims against the previously named defendants in the *Diam* action cannot be litigated in a single action with Protex and (2) that Plaintiffs, to the extent they intend to pursue prosecutions of both parties, would be required to bring their claims in separate actions. No reasonable reading of the language of the order supports an interpretation otherwise. Nothing in the procedural history nor the language of the *Diam* court in refusing

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 695700 (N.D.Ill.)

**(Cite as: Not Reported in F.Supp.2d)**

to join Protex as a defendant in that case demonstrates sound reason to make it unjust to find Protex the first filed in the New York District Court. *See Genentech*, 998 F.2d at 937-38.

Exceptions to the First-to-File Rule

With the question as to which action was first filed having been resolved in Protex's favor, the Court now turns to the consideration of relevant equitable factors that might rebut the presumption favoring Protex's choice of forum in New York.

The rule favoring the forum of first-filed action is not absolute. *See Genentech,* 998 F.2d at 937; *MLR, LLC v. U.S. Robotics Corp.,* 2003 WL 685504 at *1 (N.D.Ill. Feb.23, 2003) (*MLR* ). The first-to-file doctrine is a general rule " favoring the right of the first litigant to choose the forum, absent countervailing interests of justice or convenience." *Genentech,* 998 F.2d at 938. " [R]igid mechanical solutions" to venue and jurisdiction problems are not counseled by the Federal Circuit. *See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952); *Trading Tech.,* 2005 WL 3601936 at 2.

*4 Exceptions recognized by the Federal Circuit are found when justice or expediency requires. *Genentech,* 998 F.2d at 937. Considerations affecting strict application of the first-to-file rule include " convenience and availability of witnesses, absence of jurisdiction over all necessary or desirable parties, the possibility of consolidation with related litigation, or considerations relating to the real party in interest." *Genentech,* 998 F.2d at 938. Other equitable considerations are whether a first-filed declaratory judgment is in bad faith, anticipatory and motivated by forum shopping. *See Serco Serv. Co. v. Kelley Co.,* 51 F.3d 1037, 1039 (Fed.Cir.1995) (*Serco Serv.*). These equitable factors, as possibly warranting exceptions to the general rule in favor of the first-filed action in patent cases, track those considered in ruling on a motion to transfer under 28 U.S.C. § 1404(a). *See Genentech,* 998 F.2d at 937-38; *Buztronics, Inc. v. Theory 3, Inc.,* 2005 WL 1113873 at 4 (N.D.Ill. May 9, 2005) (*Buztronics* ).

Accordingly, the relevant equitable factors to be considered are (1) jurisdiction over the parties, (2) judicial efficiencies and economies, (3) conveniences to the parties, (4) availability and convenience of witnesses, and (5) the extent to which the declaratory

judgment action filed in another forum is anticipatory and motivated by forum shopping.

### Jurisdiction Over the Parties

In the instant case, because neither forum lacks jurisdiction, there is no countervailing effect on application of the first-to-file rule.

### Judicial Efficiencies and Economies

The *Genentech* court observed the importance of avoiding a " redundancy of litigation" and of " preventing multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." 998 F.2d at 938. While the *Diam* action involving the '994 Patent is yet pending, that court determined there is no basis to join Protex with Diam as co-defendants. Therefore, " comprehensive disposition of litigation" of both actions cannot be achieved in that suit pending in the Illinois forum that would promote judicial economy or avoid " a redundancy of litigation." Although, Telefonix is not a named party in the New York patent infringement action, there does not appear to be any impediment to joining Telefonix as a defendant there. Consideration of promoting judicial efficiency and conservation of judicial resources here are neutral factors and, if not, weigh slightly in favor of the New York forum and, therefore, do not support an exception to the first-filed rule.

### Conveniences to the Parties

In evaluating conveniences for the parties, courts considers: the choice of forum of the first to file; the convenience of the witnesses; the ease of access to evidence; the location of material events; and the overall convenience of litigating in the respective forums. *See, e.g., Amoco Oil Co. v. Mobil Oil Corp.,* 90 F.Supp.2d 958, 960 (N.D.Ill.2000). For the New York-based Protex and its principals, the Illinois forum is obviously the less convenient forum. For the Florida-based Vanguard, the New York and the Illinois forums are equally inconvenient (except for Burke, one of its principals). For the Illinois-based Telefonix and its sole principal, Burke, the '994 Patent inventor who resides in Illinois, the New York forum is the less convenient forum. If the forum remains in Illinois, Protex and its organization will be caused, overall, greater inconvenience. On the other hand, only Burke would be more inconvenienced in the New York forum.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page 4

Not Reported in F.Supp.2d, 2006 WL 695700 (N.D.Ill.)

**(Cite as: Not Reported in F.Supp.2d)**

**\*5** Regarding access to the evidence, New York, as the principal place of business for Protex, is the location of documents and evidence regarding sales, manufacturing personnel, equipment, and the witnesses responsible for the design of the Protex PowerPro product. Even though the Northern District of Illinois may be a convenient forum in this regard, unless it is clear that it is more convenient than New York, deference must be given to the New York forum-the preferred forum of the first-filed plaintiff. Deference to a later-filed action will not be given when to do so " merely serves to shift in conveniences from one to another." *See, e.g., RJF Holdings III, Inc. v. Kremer Laser Eye Center, Inc.* 2003 WL 22794987 at 4 (E.D.Pa. Nov.24, 2003) (quoting *Weight Watchers Intl. v. The Stouffer Corp.,* 1989 WL 73292 at 4 (S.D.N.Y. June 28, 1989). Therefore, the overall convenience weighs in favor of the New York forum; and no sound reason exists for making an exception to the application of the first-to-file rule.

*Availability and Convenience of Witnesses*

Of major concern is the availability of non-party witnesses. *Buztronics,* 2005 WL 1113873 at 4. Party witnesses and those closely aligned with a party are presumed to be more willing to testify in a different forum. *Samsung Elec. Co. v. Rambus, Inc.,* 386 F.Supp.2d 708, 718 (E.D.Va.2005). Parties are generally assumed to be sufficiently motivated to have their own employees or other allies appear in person for trial wherever it might take place. *Buztronics,* 2005 WL 1113873 at 4. This is not so for non-party witnesses. Therefore, principal concern is to ensure that non-party witnesses are available for trial. *Buztronics,* 2005 WL 1113873 at 4. In this case, neither party has identified any non-party witnesses. At most, the parties have made reference only to witnesses who are employees or who are closely aligned with a party. Consequently, it may be assumed that each party can obtain the presence of these witnesses in the more distant venue. There is no indication that one party's witnesses will be burdened or inconvenienced more than the other party's witnesses. For the presumption of the first-to-file rule to be overcome, there must be a clear showing that it would be unjust or inefficient for the first-filed lawsuit to proceed. *See, e.g., Design Auto Group, Inc. v. Lund Indus., Inc.* 1996 WL 377063 at 1-2 (N.D.Ill. July 1, 1996) (*Design Auto* ). The factor of availability of non-party witnesses weighs in favor of

neither party and presents no sound basis for exception to the first-to-file rule.

*Forum Shopping*

Plaintiffs contend that Protex filed the declaratory judgment action in New York solely in anticipation of the instant lawsuit and was a manipulative attempt to select a forum. The Declaratory Judgment Act is not a tool to be used by potential litigants for the purpose of securing the forum. *See Schumacher Elec. Corp. v. Vector Products, Inc.,* 286 F.Supp.2d 953, 955 (N.D.Ill.2003).

**\*6** Whether the party filing the action did so for the purpose of preempting the infringement suit brought by another may be considered. *See Serco Serv.,* 51 F.3d at 1040. Intent of the filing party, though, is " merely one factor (to be considered) in the analysis." *Elec. for Imaging,* 394 F.3d at 1347-48; *Trading Tech.,* 2005 WL 3601936 at 2.

Protex claims it filed the New York action in good faith and not for purposes of forum shopping. Other than the prior unsuccessful attempted joinder of Protex as a defendant in the *Diam* case, the Plaintiffs cannot show any conduct by Protext that would make its New York declaratory judgment action anticipatory and Protex guilty of forum shopping. Even if the New York action could be characterized as anticipatory, this does not, alone, warrant making an exception to the general first-to-file rule. *Elec. for Imaging,* 394 F.3d at 1348; *Buztronics,* 2005 WL 1113873 at 5. Because the impact of traditional forum shopping in patent cases has been in large part obviated by the creation of the Federal Circuit, the stakes of a race to the courthouse are now less severe. *Serco Serv.,* 51 F.3d at 1040. Dismissal of a declaratory action that is anticipatory in nature may be granted in view of other factors, including the location of the witnesses and documents, but cannot be premised solely because the suit was designed to anticipate a later-filed complaint in another forum. *Elec. for Imaging,* 394 F.3d at 1348. Here, there are no additional factors to support dismissal even if Protex's New York suit was found to be filed in anticipation of this action. Rather, those factors, as explained above, favor the New York forum and support the first-to-file rule.

Plaintiffs cite cases in support of the general proposition that the filing of an anticipatory declaratory judgment serves as a sufficient ground for

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 695700 (N.D.Ill.)

**(Cite as: Not Reported in F.Supp.2d)**

departing from the first-to-file rule. *See Schwartz v. Natl. Van Lines, Inc.,* 317 F.Supp.2d 829, 833 (N.D.Ill.2004) (*Schwartz* ); *S.J.G. Enterprises, Ltd. v. Eikenberry & Assoc., Inc.,* 2004 WL 17944475 at 1 (N.D.Ill. August 5, 2004); *Galileo Intl. Partn. v. Global Village Commn., Inc.,* 1996 WL 452273 at 4 (N.D.Ill. Aug.8, 1996) (*Galileo* ); *MLR,* 2003 WL 685504 at *1. The facts in each of the cases, however, are distinguishable. Specifically, in each of the cases, the potential litigants, prior to the filing of the declaratory action, had either been engaged in negotiations which broke down and the patentee clearly articulated to the alleged infringer an explicit and unequivocal threat of imminent suit or the alleged infringer surreptitiously filed the declaratory judgment action while feigning good faith efforts to negotiate the dispute.

Unlike the circumstances in the above cited cases, when Protex brought its declaratory judgment action in New York, there had been no negotiations between the parties. While Protex and Vanguard had exchanged letters charging and denying infringement, there was no further communication for a period of nearly eight months. At the time Protex filed in the New York forum, there existed no express or implied agreement between the parties to negotiate.

*Motion to Transfer Pursuant to Federal Change of Venue Statute*

**\*7** In light of the above ruling, the issue of transfer pursuant to 28 U.S.C. § 1404(a) is not considered.

## CONCLUSION

In the instant action, the presumption favoring the forum of the first-filed action has not been overcome. There has been no showing of an imbalance of convenience nor is there present compelling circumstances or sound reasons which would make it " unjust or inefficient" to permit the District Court for the Eastern District of New York first-filed action to proceed.

For the foregoing reasons, Protex's Motion to Dismiss is granted. Protex's Motion to Transfer Venue is denied as moot.

N.D.Ill.,2006.
Vanguard Products Group, Inc. v. Protex Intern. Corp.
Not Reported in F.Supp.2d, 2006 WL 695700

(N.D.Ill.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy                                                    Page 1

Slip Copy, 2007 WL 1099483 (N.D.Ill.)

**(Cite as: Slip Copy)**

Amorose v. C.H. Robinson Worldwide, Inc.
N.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern
Division.
Lynn A. AMOROSE, Danielle M. Barron, Phillip
Justin Barnette, Joshua K. Wilson, Kelcey Gilbert,
and Robert Kulig, Jr., Plaintiffs,
v.
C.H. ROBINSON WORLDWIDE, INC., Defendant.
Richard Cahn, Matthew Carter, William Horne,
William Neal Williamson III David A. Edson,
Derrick Stein, and James C. Rogers, Plaintiffs,
v.
C.H. Robinson Worldwide, Inc., Defendant.
Kari S. Johnson, Jennifer L. Mawson, Darren Reid,
and James A. Johnson, Plaintiffs,
v.
C.H. Robinson Worldwide, Inc., Defendant.
Heidi Michelle Poepsel, Plaintiff,
v.
C.H. Robinson Worldwide, Inc., Defendant.
**Nos. 06 C 6463, 06 C 6512, 06 C 6629, 06 C 6664.**

April 6, 2007.

L. Steven Platt, Arnold & Kadjan, Chicago, IL, for
Plaintiffs.

Gerald L. Maatman, Jr., Richard Patrick Mcardle,
Tanya L. Jachimiak, Ernst Henning Ostrand, Seyfarth
Shaw LLP, Chicago, IL, for Defendant.

***MEMORANDUM OPINION AND ORDER***
ELAINE E. BUCKLO, United States District Judge.
**\*1** Defendant C.H. Robinson Worldwide, Inc. ("
C.H.Robinson" ) has filed a motion under 28 U.S.C.
§ 1404(a) to transfer the above captioned cases, each
of which raises claims under the Fair Labor
Standards Act (" FLSA" ), 29 U.S.C. § 201 *et seq.,* to
the district encompassing the branch location where
the plaintiffs purportedly worked and where the
classification decision at issue in each suit were
made. For case number 06 C 6463, defendant
contends this is the Northern District of Georgia; for
case number 06 C 6512, the Western District of
Louisiana; for case number 06 C 6629, the Middle
District of Tennessee; and for case number 06 C
6664, the Central District of Illinois. For the
following reasons, I grant C.H. Robinson's motion
and transfer the cases as requested.

I.

Plaintiffs' complaints in each of the cases at issue
allege that C.H. Robinson, a third-party
transportation logistics company, employed each of
the plaintiffs at a branch office. (Poepsel Compl. at ¶
5, Amorose Compl. at ¶¶ 5-10, Johnson Compl. at ¶¶
5-8, Cahn Compl. at ¶¶ 5-11.) Plaintiffs further allege
that C.H. Robinson misclassified each plaintiff as an
exempt, salaried employee during the relevant period
when they should have been treated as non-exempt
and therefore entitled to overtime pay for the hours
they worked in excess of forty hours a week. (Cahn
Compl. at ¶¶ 15-17, Poepsel Compl. at ¶¶ 9-11,
Amorose Compl. at ¶¶ 14-16, Johnson Compl. at ¶¶
12-14.)

Plaintiff Heidi Poepsel (" Poepsel" ) was allegedly
employed at C .H. Robinson's Peoria, Illinois branch.
(Poepsel Compl. at ¶ 5.) Plaintiff Lynn Amorose ("
Amorose" ) and the other named plaintiffs to
Amorose's complaint were allegedly employed at a
C.H. Robinson branch in Atlanta, Georgia. (Amorose
Compl. at ¶¶ 5-10.) Plaintiff Kari Johnson ("
Johnson" ) and the other named plaintiffs to
Johnson's complaint were allegedly employed at a
C.H. Robinson branch in Nashville, Tennessee.
(Johnson Compl. at ¶¶ 5-8.) Plaintiff Richard Cahn ("
Cahn" ) and the other named plaintiffs to Cahn's
complaint were allegedly employed at a C.H.
Robinson branch in Shreveport, Louisiana. (Cahn
Compl. at ¶¶ 5-11.) The parties do not dispute that
none of the named plaintiffs in any of the above
actions are residents of the Northern District of
Illinois. Further, the parties do not dispute that C.H.
Robinson is a Delaware corporation with its
headquarters in Minnesota, although it does maintain
a large branch in Chicago, Illinois.

The plaintiffs in each of the above suits were
previously opt-in members of a putative FLSA class
action brought in the District of Minnesota. The court
decertified that putative class action, however, and
dismissed the opt-in plaintiffs from the suit without
prejudice. *See Carlson v. C.H. Robinson Worldwide,
Inc.,* Civ. Nos. 02-3780 (JNE/JJG), 02-4261
(JNE/JJG), 2006 WL 2830015 (D.Minn. Sept.26,
2006). After the class was decertified, the former opt-
in plaintiffs filed a number of individual suits in other

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 2
Slip Copy, 2007 WL 1099483 (N.D.Ill.)
**(Cite as: Slip Copy)**

jurisdictions, including in the District of Minnesota and in the Northern District of Illinois. Other courts within the Northern District of Illinois have already transferred many of these cases to other jurisdictions. *See, e.g., Burt v. C.H. Robinson Worldwide, Inc.,* No. 06 C 6540, slip op. at 11 (N.D.Ill. Mar.12, 2007), *Quigley v. C.H. Robinson Worldwide, Inc.,* No. 06 C 6560 (N.D.Ill. Feb. 7, 2007), *Dowden v. C.H. Robinson Worldwide, Inc.,* No. 06 C 6505 (N.D.Ill.Dec. 18, 2006). C.H. Robinson represents, and plaintiffs do not dispute, that courts within the Northern District of Illinois have transferred at least twenty-two of these cases to other jurisdictions. (Def. Reply Br. at 3.)

## II.

**\*2** This court may transfer venue to another district or division for reasons of convenience when it is " in the interest of justice." 28 U.S.C. § 1404(a). The moving party must show that (1) venue is proper in this district; (2) venue is proper in the transferee district; (3) the transferee district is more convenient for both the parties and witnesses; and (4) transfer would serve the interest of justice. *Bryant v. ITT Corp.,* 48 F.Supp.2d 829, 832 (N.D.Ill.1999). In ruling on a motion to transfer, a district court must consider these statutory factors " in light of all the circumstances of the case." *See Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 (7th Cir.1986) (internal citations omitted). Section 1404(a) does not indicate the relative weight to afford to each of these factors; this is left to the discretion of the district court. *See id.* at 219, n. 3. The weighing of the relevant factors " involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Id.* at 219; *see also N. Shore Gas Co. v. Salomon Inc. .,* 152 F.3d 642, 648, n. 3 (7th Cir.1998) (internal citation omitted); *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (noting that the remedial purpose of § 1404(a) requires " individualized, case-by-case consideration of convenience and fairness" ). The movant, here C.H. Robinson, bears the burden of establishing that the transferee fora are clearly more convenient. *Coffey,* 796 F.2d at 219.

In these cases, the parties do not dispute that venue is proper in both the Northern District of Illinois and the venues to which C.H. Robinson seeks to transfer these cases (the Northern District of Georgia for the Amorose plaintiffs, the Western District of Louisiana for the Cahn plaintiffs, the Middle District of Tennessee for the Johnson plaintiffs, and the Central District of Illinois for Poepsel). The only disputed issues between the parties are whether the districts to which C.H. Robinson has requested these actions be transferred are more convenient fora, and whether transfer would be in the interests of justice. I consider these issues below.

## III.

In determining whether a forum is more convenient and whether a transfer would be in the interest of justice, the court must consider the private interests of the parties as well as the public interest of the court. *N. Shore Gas Co. v. Salomon, Inc.,* 896 F.Supp. 786, 791 (N.D.Ill.1995). The factors relevant to the parties' private interests include (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the convenience of the parties; and (4) the convenience of the witnesses. *Coll. Craft Cos., Ltd. v. Perry,* 889 F.Supp. 1052, 1054 (N.D.Ill.1995). The factors relevant to the public interest of the court include the court's familiarity with the applicable law and concerns relating to the efficient administration of justice. *Id.* at 1056. The burden is on the moving party to demonstrate that the balance of the factors weighs heavily in favor of transfer and that transfer would not merely shift inconvenience from one party to another. *Fink v. Declassis,* 738 F.Supp. 1195, 1198 (N.D.Ill.1990).

### A. Plaintiff's Choice of Forum

**\*3** A plaintiff's choice of forum is generally given substantial weight, particularly when it is the plaintiff's home forum. *Vandeveld v. Christoph,* 877 F.Supp. 1160, 1167 (N.D.Ill.1995). Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. *In re Nat'l Presto Indus., Inc.,* 347 F.3d 662, 664 (7th Cir.2003) (internal citations omitted). Here, the plaintiffs' choice of forum was the Northern District of Illinois. However, it is undisputed that none of the plaintiffs reside in the Northern District of Illinois. In addition, a plaintiff's choice of forum is afforded less deference when another forum has a stronger relationship to the dispute or when the forum of plaintiff's choice has no connection to the material events. *Chicago, Rock Island & Pac. R.R. Co. v. Igoe,* 220 F.2d 299, 304 (7th Cir.1955). Here, C.H. Robinson argues that decisions about how to classify plaintiffs for purposes of the FLSA were made at the branch level, and that C.H. Robinson's operations

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 1099483 (N.D.Ill.)

**(Cite as: Slip Copy)**

within the Northern District of Illinois have no connection to the classification decisions at issue. Plaintiffs do not provide any argument in response. Therefore, while plaintiffs' choice of forum is entitled to some deference, it is but one factor to consider in ruling on defendants' motion.

### B. Situs of Material Events

I must also consider the situs of the material events giving rise to plaintiffs' claims. Plaintiffs' claims center around C.H. Robinson's alleged misclassification of plaintiffs as non-exempt employees, and C.H. Robinson's alleged refusal to pay the plaintiffs overtime pay as the plaintiffs claim the FLSA requires. There is no evidence that any material events with respect to these allegations took place in the Northern District of Illinois, but some that the material events took place in the districts encompassing the branches where the plaintiffs purportedly worked. I can find no cases defining the situs of material events for FLSA cases, but it is logical to conclude that the situs of these events is the location where the classification decisions about plaintiffs were made, and the location where plaintiffs worked when C.H. Robinson allegedly refused to pay them for overtime. There is no evidence that the Northern District of Illinois is in any way related to plaintiffs' claims, and plaintiffs do not contend that it is.[FN1] Therefore, this factor weighs in favor of transfer.

> FN1. Some courts consider the " relative ease of access to sources of proof" and the " cost of securing witnesses" as factors in the transfer analysis. *See, e.g., Chicago, Rock Island & Pac. R.R. Co .,* 220 F.2d at 303. C.H. Robinson argues that the sources of proof concerning the classification decisions, including payroll records, etc., are located either at its headquarters in Minnesota or at the branch locations in the districts in which it seeks to have these cases transferred, so that factor would weigh in favor of transfer. Neither party has articulated what non-party witnesses they would need to compel to attend, so C.H. Robinson has not met its burden to show that this factor weighs in favor of transfer.

### C. Convenience of the Parties

Another factor I must consider is the convenience of the parties. The defendant contends that the districts to which it seeks to have these cases transferred are more convenient than the Northern District of Illinois. C.H. Robinson alleges, and the plaintiffs do not dispute, that the plaintiffs reside in the districts to which they seek to have these cases transferred, or at least reside " substantially closer to the transferee district[s]." (Defs. Mot. to Transfer at 10.) As C.H. Robinson notes, the convenience of the plaintiffs' counsel, who is based in Chicago, is not relevant to my inquiry. *See, e.g., Koos, Inc. v. Performance Indus., Inc.,* 747 F.Supp. 487, 490 (N.D.Ill.1990). In addition, C.H. Robinson contends that the relevant witnesses from C.H. Robinson will come from the branch location in the districts in which it seeks to have these cases transferred, and potentially some witnesses from its corporate headquarters in Minnesota, but none from its offices in the Northern District of Illinois. In their response plaintiffs provide no argument that it is more convenient for them to litigate their claims in Chicago than to litigate in the proposed transferee districts, although plaintiffs do generally contend that the District of Minnesota is more convenient than the proposed transferee districts. For these reasons, I find that this factor weighs in favor of transfer.

### D. Convenience of the Witnesses

*4 I must also consider the convenience of potential witnesses, looking beyond the number of witnesses to be called and examining the nature and quality of the witnesses' testimony with respect to the issues in the case. *Vandeveld,* 877 F.Supp. at 1168. Although C.H. Robinson generally identifies witnesses that it would call, including managers and co-workers at the branch level that would provide testimony about the branch's pay practices and work that the plaintiffs performed, these witnesses all appear to be party witnesses, although it is conceivable some former C.H. Robinson employees may be non-party witnesses. The convenience of party witnesses is less relevant than the convenience of non-party witnesses, since party witnesses normally must appear voluntarily. *See, e.g., First Nat'l Bank v. El Camino Res., Ltd.,* 447 F.Supp.2d 902, 913 (N.D.Ill.2006) (internal citation omitted). As with other factors, the plaintiffs have provided no response why the Northern District of Illinois would be more convenient for witnesses; they have identified no witnesses who reside in this district. Therefore, this factor weighs in favor of transfer.[FN2]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 4
Slip Copy, 2007 WL 1099483 (N.D.Ill.)
(Cite as: Slip Copy)

FN2. I do note, however, that some courts have concluded that a party must present actual evidence, such as through an affidavit, for a court to determine whether transfer is appropriate. *See, e.g., Midwest Precision Servs. v. PTM Indus. Corp.,* 574 F.Supp. 657, 659 (N.D.Ill.1983). Here, neither party has presented such affidavits, although plaintiff has waived any objection by not arguing that C.H. Robinson has not presented sufficient evidence in support of its position.

## IV.

In addition to considering the parties' private interests, I must consider the public interests of the court. Factors relevant to this inquiry include the transferor and transferee courts' familiarity with the applicable law and the effect of transfer on the efficient administration of justice. *Coll. Craft Cos.,* 889 F.Supp. at 1056; *see also Schwarz v. Nat'l Van Lines, Inc.,* 317 F.Supp.2d 829, 837 (N.D.Ill.2004). Because this case concerns federal law, the familiarity with applicable law is neutral here. *See Bryant,* 48 F.Supp.2d at 835. Therefore, I need only consider the effect of transfer on the efficient administration of justice.

C.H. Robinson presents Federal Court Management Statistics that demonstrate that the speed to trial in the proposed transferee districts is similar to or better than the speed to trial in the Northern District of Illinois. *See First Nat'l Bank,* 447 F.Supp.2d at 913-14 (considering speed to trial as part of the interests of justice). These statistics demonstrate that for the twelve-month period ending September 30, 2006, the median time from filing to disposition in civil cases in the Northern District of Illinois was 6.5 months, and the median time from filing to trial was 26.4 months. See Federal Court Management Statistics (2006), available online at http://www.uscourts.gov/fcmstat/index.html. In the Western District of Louisiana, the median time from filing to disposition was 12.8 months, and from filing to trial 25.5 months. *Id.* In the Northern District of Georgia, the median time from filing to disposition was 9.5 months, and from filing to trial 31 months. *Id.* In the Middle District of Tennessee, the median time from filing to disposition was 10.2 months, and from filing to disposition 25.4 months. *Id.* Finally, in the Central District of Illinois the median time from filing to disposition was 8.7 months, and from filing

to trial 30 months. *Id.* While the Northern District of Illinois did have a shorter time from filing to disposition than any of these districts, the time from disposition to trial was relatively similar in all the districts. Consequently, this factor is relatively neutral in the transfer analysis.

**\*5** However, as C.H. Robinson argues, some courts have held that one factor to consider in assessing the public interests of the court is the relationship of the communities to the litigation. *See, e.g., Chicago, Rock Island and Pac. R.R. Co.,* 220 F.2d at 304. Although C.H. Robinson has a presence in this district as well as the proposed transferee districts, because the transferee districts are where the plaintiffs purportedly worked when they were denied overtime pay, those districts have a much greater interest in the litigation. *See Bryant,* 48 F.Supp.2d at 835 (holding that state in which plaintiff worked when he was denied benefits had a stronger interest in resolving the litigation). Therefore, for this reason I conclude that the public interests of the court weigh in favor of transfer to the proposed transferee districts.

## V.

As described above, plaintiffs do not really contest most of the factors weighing in favor of transfer, but they nevertheless argue that I should not decide C.H. Robinson's transfer motion at this time, but instead should wait until Judge St. Eve resolves a motion to consolidate all of these cases in this district against C.H. Robinson. (Pls. Resp. at 4.) The plaintiffs in two cases before Judge St. Eve brought such a motion, but the dockets for those cases show that Judge St. Eve denied both motions. *See Hyde v. C.H. Robinson Worldwide, Inc.,* No 06 C 6458, slip op. at 1 (N.D.Ill. Feb. 27, 2007); *Sparks v. C.H. Robinson Worldwide, Inc.,* No. 06 C 6461, slip op. at 1 (N.D.Ill. March 1, 2007). In addition, Judge St. Eve granted C.H. Robinson's motion to transfer the Hyde matter to the Middle District of Florida, *see Hyde,* No. 06 C 6458, slip op. at 1 (N.D.Ill. Feb. 27, 2007), and there is a motion pending to transfer the Sparks matter elsewhere as well. *See Sparks,* No. 06 C 6461, slip op. at 1 (N.D.Ill. Feb. 2, 2007). Plaintiffs have not indicated that there are any other pending motions to consolidate that might affect the case now before me, and because the motions to consolidate before Judge St. Eve have been resolved there is no reason for delay on that basis.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 1099483 (N.D.Ill.)

**(Cite as: Slip Copy)**

Plaintiffs have also argued in the alternative that all cases should remain in this district so that they can be consoli, discovery can be conducted jointly, and the resolution of legal issues can be uniform. (Pls. Resp. at 6-7.) Moreover, they state that they intend to file a petition with the Panel for Multidistrict Litigation (the " Panel" ) seeking an MDL in this district, and contend that it makes sense to wait until after the MDL panel has ruled before I rule on defendant's motion. (*Id.* at 3-4.) Plaintiffs have not represented that such a petition has actually been filed. In addition, as C.H. Robinson points out, the Rules of Procedure of the Judicial Panel on Multidistrict Litigation specifically state that the pendency of a motion before the Panel " does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court." Rule 1.5 Of Proc. of the Judicial Panel on Multidistrict Litig. Nothing in the rules of procedure for the Panel suggests that district courts should delay proceedings pending the outcome of a decision by the Panel, and plaintiffs have cited no other support for this proposition. In addition, as discussed above, numerous other courts in this district have already granted motions to transfer these cases to other jurisdictions, and plaintiffs have made me aware of no pending motion to actually consolidate these cases in this district. It does not make sense to delay these actions further for a hypothetical future motion.

*6 In the alternative, plaintiffs contend that I should transfer these actions to the District of Minnesota because district is already familiar with the law at issue in these cases, and because C .H. Robinson is headquartered in that district. (Pls. Resp. at 6-7.) In addition, plaintiffs contend that settlement would be easier to achieve were these cases transferred to the District of Minnesota because settlement efforts are already underway to resolve other cases in that district. (*Id.*) Further, plaintiffs contend that key witnesses and evidence are located at C.H. Robinson's Minnesota headquarters. (*Id.* at 7.) Even if some evidence and witnesses are located in Minnesota, plaintiffs have failed to establish that Minnesota would be a more convenient forum than defendants' proposed transferee fora. Further, plaintiffs have not formally moved to have this action transferred to Minnesota. In the absence of a formal motion and the required showing under 28 U.S.C. § 1404(a), which plaintiffs have failed to make, I cannot conclude that this action should be transferred to the District of Minnesota.

**VI.**

For the above reasons, I grant C.H. Robinson's motion and hereby transfer Case No. 06 C 6463 to the Northern District of Georgia, Case No. 06 C 6512 to the Western District of Louisiana, Case No. 06 C 6629 to the Middle District of Tennessee, and Case No. 06 C 6664 to the Central District of Illinois.

**ENTER ORDER.**

N.D.Ill.,2007.
Amorose v. C.H. Robinson Worldwide, Inc.
Slip Copy, 2007 WL 1099483 (N.D.Ill.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy

Page 1

Slip Copy, 2007 WL 2007977 (E.D.Pa.)

**(Cite as: Slip Copy)**

Simmens v. Coca Cola Co.
E.D.Pa.,2007.
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
Adam SIMMENS, on Behalf of Himself and All
Others Similarly Situated, Plaintiff,
v.
The COCA COLA COMPANY, Nestle USA, Inc.
and Beverage Partners Worldwide, Defendants.
**Civil Action No. 07-668.**

July 5, 2007.

Sherrie R. Savett, Berger & Montague, PC,
Philadelphia, PA, for Plaintiff.
Gita F. Rothschild, Mc Carter & English, Newark,
NJ, Patrick W. Kittredge, Kittredge Donley Elson
Fullem & Embick LLP, Philadelphia, PA, for
Defendants.

*ORDER AND MEMORANDUM*

*ORDER*

JAN E. DuBOIS, J.
**\*1 AND NOW,** this 3rd day of July, 2007, upon
consideration of Defendants' Motion to Transfer
Pursuant to 28 U.S.C. § 1404(a) (Document No. 12,
filed April 30, 2007); and Plaintiff's Memorandum of
Law in Opposition to Defendants' Motion to Transfer
Pursuant to 28 U.S.C. § 1404(a) (Document No. 30,
filed June 15, 2007), **IT IS ORDERED** that
Defendants' Motion to Transfer Pursuant to 28 U.S.C.
§ 1404(a) is **GRANTED.** The Clerk of the United
States District Court for the Eastern District of
Pennsylvania shall **TRANSFER** the case to the
United States District Court for the District of New
Jersey.

*MEMORANDUM*

**I. BACKGROUND**

Plaintiff filed this case as a class action arising out of
allegedly improper marketing of Enviga, a
carbonated green tea beverage by defendants The
Coca-Cola Company, Nestlé USA, Inc., and
Beverage Partners Worldwide. In advertising Enviga,
defendants represent that the beverage burns more
calories than it contains, resulting in negative calories

for the consumer.[FN1] Plaintiffs contend that the claims
made by defendants in marketing Enviga are not
supported by evidence that most consumers would
experience any calorie burning benefit.[FN2]

> FN1. These representations include
> advertising slogans such as " Be positive.
> Drink negaitve." and " Burning calories is
> now officially delicious." Compl. ¶ 29.

> FN2. The claim that consumption of Enviga
> results in negative calories is based on a
> study of " healthy normal weight 18-35 year
> olds" who consumed three cans of Enviga
> daily and were found to have increased their
> calorie burning by 60-100 calories. Compl. ¶
> 27. Plaintiff argues that " [d]efendants failed
> to disclose that there are no studies that
> show that in the vast majority of the
> population, who are not between ages 18
> and 35, or who are between ages of 18 to 35
> but are not of a healthy normal weight,
> Enviga provides any calorie burning
> benefit." Id.

The Complaint was filed on February 20, 2007 " on
behalf of all consumers of Enviga nationally" and "
on behalf of a sub-class of consumers of Enviga
residing in Pennsylvania." Compl. ¶ 2. The
Complaint sets forth three counts against all
defendants: breach of express warranty (Count I),
breach of implied warranty of fitness for a particular
purpose (Count II), and violations of Pennsylvania's
Unfair Trade Practices and Consumer Protection Law
(" UTPCPL" ), 73 Pa. Cons.Stat. Ann. §§ 201-2, et
seq (Count III).[FN3]

> FN3. Specifically, the Complaint alleges
> that defendants represented that Enviga has
> characteristics, uses, or benefits that it does
> not have in violation of 73 P.S. § 201-
> 2(4)(v), and/or otherwise engaged in other
> fraudulent or deceptive conduct which
> created the likelihood of confusion or of
> misunderstanding in violation of 73 P.S. §
> 201-2(4)(xxi). Compl. ¶ 80.

Also on February 20, 2007, a nearly identical class
action " on behalf of all consumers of Enviga
nationally" and " on behalf of a sub-class of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 2

Slip Copy, 2007 WL 2007977 (E.D.Pa.)

**(Cite as: Slip Copy)**

consumers of Enviga residing in New Jersey," was filed in the District of New Jersey by the same attorneys who represent the plaintiff in this case. *Melfi v. The Coca-Cola Co.,* CA No. 07-828. Prior to the filing of either class action, on February 1, 2007, the Center for Science in the Public Interest filed suit against the same defendants in the District of New Jersey. *Center for Science in the Public Interest v. The Coca-Cola Co.,* CA No. 07-539. The three complaints are nearly identical in their recitation of the facts.

On April 30, 2007, defendants jointly filed a Motion to Transfer pursuant to § 1404(a) and a Motion to Dismiss Counts II and III of the Complaint. For the following reasons, defendants' Motion to Transfer pursuant to § 1404(a) is granted and this case is transferred to the District of New Jersey. Because the case will be transferred, the Court does not address the Motion to Dismiss. [FN4]

> FN4. Additionally, the Court notes that a nearly identical Motion to Dismiss is pending in the *Melfi* action.

## II. LEGAL STANDARD

The question before the Court is whether this case should be transferred to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). 28 U.S.C. § 1404(a) permits transfer on the ground of venue, and states: " For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Once a court determines that venue would be proper in another district, the court must consider " all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995). The party moving to transfer venue bears the burden of establishing the need for the transfer. *Id.; Miller v. Consol. Rail Corp.,* 196 F.R.D. 22, 24 (E.D.Pa.2000).

**\*2** The Third Circuit has set out a number of public and private interests to be considered when weighing a transfer pursuant to § 1404(a). *Jumara,* 55 F.3d at 879. " Private interests" include plaintiff's forum preference as manifested in the original choice; defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated

by their relative physical and financial condition; the convenience of the witnesses; and the location of books and records. *Id.* at 879. " Public interests" include the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879-80.

## III. DISCUSSION

Section 1404(a) requires the Court to answer two questions: (1) Could the case have been brought in the District of New Jersey? (2) Is a transfer in the interest of justice? With respect to the first question, a " district is one in which an action ' might have been brought' if that district has (1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue." *Yang v. Odom,* 409 F.Supp.2d 599, (citing *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 24 (3d Cir.1970)). The Court concludes that the District of New Jersey is a district where this action might have been brought. There is no dispute that the District of New Jersey has the requisite jurisdiction over this case and is a proper venue to adjudicate this case.

Accordingly, the Court must conclude whether a transfer is in the interests of justice. To make this determination, the Court will consider those relevant private and public interest factors that weigh in favor of and against a transfer.

### A. Factors Favoring Transfer

Defendants argue that, under *Jumara,* the dispositive factor in this case is the pendency of the related *Melfi* case in the proposed transferee court. Specifically, defendants argue that because the cases " arise from the same set of facts and occurrences," and in fact the cases " are virtually identical," transfer is appropriate. Def. Mot. Trans. at 12. Although not argued in the Motion, the Court notes that the *Center for Science in the Public Interest* case filed in the District of New Jersey also arises from the same set of facts and occurrences and *Melfi* and the instant case.

The presence of related cases in the transferee forum

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 3

Slip Copy, 2007 WL 2007977 (E.D.Pa.)

**(Cite as: Slip Copy)**

is a strong factor in favor of transfer. *See, e.g., Schiller-Pfeiffer, Inc. v. County Home Prods., Inc.,* 2004 U.S. Dist. LEXIS 24180, *30 (E.D.Pa. Dec. 1, 2004) (holding that the presence of a related case in the transferee forum is a " strong reason" to grant a change of venue); *Weber v. Basic Comfort, Inc.,* 155 F.Supp.2d 283, 286 (E.D.Pa.2001) (" [C]ourts have found that the presence of related cases in the transferee forum is a reason to grant a transfer." ). " In fact, courts in this District have concluded that this factor alone is sufficient to warrant a transfer," even when the convenience of the parties and witnesses would point to a denial. *Schiller-Pfeiffer,* 2004 U.S. Dist. LEXIS 24180, at *13; *Ayling v. Travelers Property Casualty Corp.,* 1999 U.S. Dist. LEXIS 16716, *13 (E.D.Pa. Oct. 27, 1999); *see also, e.g., Southhampton Sports Zone, Inc.,* 2003 U.S. Dist. 18126, *5 (E.D.Pa. Sept. 10, 2003).

\*3 The Supreme Court has stated that " to permit a situation in which two cases involving precisely the same issues are simultaneously pending in two different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain Co. v. The Barge FBL-585,* 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960). Allowing two separate actions on behalf of the same class might lead to inconsistent results, even if the witnesses and documentary evidence were identical. *Ayling,* 1999 U.S. Dist. LEXIS 16716, at *14. This danger is of particular concern in this case as the pending Motion to Dismiss is nearly identical to a Motion to Dismiss pending in the *Melfi* action.

Moreover, transferring this action will benefit all parties because

the ... actions could be consolidated before one judge thereby promoting judicial efficiency, pretrial discovery could be conducted in an orderly manner, witnesses could be saved the time and expense of appearing at trial in more than one court, duplicative litigation involving the filing of records in both courts could be avoided eliminating unnecessary expense, and the possibility of inconsistent results could be avoided.

*Pall Corp. v. Bentley Lab, Inc.,* 523 F.Supp. 450, 453 (D.Del.1981). " Even though the claims of the two cases here are not exactly the same, they arise from the same set of facts and occurrences. If these actions were filed in the same district, consolidation would certainly be appropriate." *Schiller-Pfeiffer, Inc.,* 2004 U.S. Dist. LEXIS 24180, at *31.

Thus, the Court concludes that the pendency of two related cases in the District of New Jersey weighs strongly in favor of transferring this case.

**B. Factors Weighing Against Transfer**

Plaintiff argues that transfer is not necessary in this action and notes " it is precisely because this case and the New Jersey case [*Melfi* ] assert legal claims under their respective states' statutes that two separate complaints were filed on behalf of two separate subclasses." Pl.'s Resp. to Mot. to Trans. 3.

First, as noted by plaintiff, the Court must accord deference to plaintiff's initial choice of forum. However, defendants argue that as nominal representative of a purported nationwide class, plaintiff's choice of forum is entitled to minimum weight. *See Koster v. Lumbermen's Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) (" [W]here there are hundreds of potential plaintiffs ... all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." ). Moreover, the purported class in this case is largely coextensive with that named in the District of New Jersey class action. Accordingly, the Court concludes that this factor does not weigh against transfer.

Second, plaintiff's argument that " consideration of the convenience of the parties, witnesses, and counsel, and the location of relevant documents, weighs in favor of denying a transfer" is unpersuasive. Pl.'s Resp. 7. Given the close proximity between the District of New Jersey and the Eastern District of Pennsylvania, these considerations are neutral and do not weigh against transfer.

\*4 Plaintiff's most compelling argument against transfer is the fact that this case involves a purported Pennsylvania sub-class and a claim under Pennsylvania's UTPCPL. Although courts have held that it is desirable for issues of state law to be determined by a local federal court, *Howell v. Shaw Industries,* 1993 U.S. Dist. LEXIS 13562, *19 (E.D.Pa. Oct. 1, 1993), Pennsylvania subclass and Pennsylvania state law claims are not sufficient to weigh against transfer. In a similar case in which plaintiffs sought certification of a nationwide class and asserted claims under the Pennsylvania UTPCPL,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 2007977 (E.D.Pa.)

**(Cite as: Slip Copy)**

Judge John R. Padova noted that because " class actions often require a federal court to apply the law of all fifty states," the UTPCPL claim alone did not weigh in favor of a transfer. *Rosen v. Fidelity Fixed Income Trust,* 1995 U.S. Dist. LEXIS 13877, *24 (E.D.Pa. Sept. 18, 1995). On that issue, Judge Padova noted that " either court can competently apply the law of any state." *Id.; see also Howell,* 1993 U.S. Dist. LEXIS 13784, at *19-20. Accordingly, as both this Court and the District of New Jersey can competently adjudicate plaintiff's claims, the Court concludes that this factor does not weigh against a transfer.

### IV. CONCLUSION

In sum, after reviewing the relevant private and public interest factors, the Court concludes that defendants have demonstrated that the balance of fairness and convenience weighs strongly in favor of transfer of this case to the District of New Jersey. Accordingly, defendants' Motion to Transfer pursuant to § 1404(a) is granted and this case is transferred to the District of New Jersey.

E.D.Pa.,2007.
Simmens v. Coca Cola Co.
Slip Copy, 2007 WL 2007977 (E.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                        Page 1

Slip Copy, 2007 WL 1810530 (N.D.Ill.)

**(Cite as: Slip Copy)**

**C**

Mleczek v. Aspen Skiing Co., LLC

N.D.Ill.,2007.

Only the Westlaw citation is currently available.

United States District Court,N.D. Illinois,Eastern
Division.

Agnes MLECZEK, Plaintiff,

v.

ASPEN SKIING COMPANY, LLC, a Colorado
LLC, Bell Mountain Partners, an Illinois Limited
Partnership, Bell Highland Corporation, an Illinois
Corporation, Unknown Skiing Company, Donni
Cochran, Individually and as Agent of Aspen Skiing
Company, LLC, and Unknown Agent, Defendant.

**No. 07 C 0238.**

June 20, 2007.

Timothy M. Murphy, The Law Offices of Timothy
Murphy, Michelle C. Youkhana, Youkhana &
Associates, Ltd., Chicago, IL, for Plaintiff.
Douglas C. Crone, Mitchell Alan Orpett, Tribler
Orpett & Meyer, P.C., Chicago, IL, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

WAYNE R. ANDERSEN, District Judge.

**\*1** This matter is before the court on the motions of
defendants Aspen Skiing Company, LLC (" Aspen
LLC" ), Bell Mountain Partners Limited Partnership
(" Bell Partnership" ), and Bell Highlands
Corporation (" Bell Corp." ) to transfer this case to
the United States District Court for the District of
Colorado pursuant to 28 U.S.C. § 1404(a) and by
Aspen LLC to dismiss for lack of personal
jurisdiction. For the following reasons, the motion to
transfer venue is granted, and Aspen LLC's motion is
accordingly denied as moot.

### *BACKGROUND*

Plaintiff Agnes Mleczek filed a claim for eighteen
counts or negligence, breach of contract, and breach
of duty against the defendants after she fell while
skiing in Snowmass, Colorado on a slope allegedly
managed by Aspen LLC, Defendant Donni Cochran,
a ski instructor, is alleged to have negligently
instructed Mleczek which caused her to sustain
several injuries.

Aspen LLC is a limited liability company organized
under Colorado law with its principal place of
business in Aspen, Colorado. Bell Partnership is the
manager of Aspen LLC. Bell Corp. is the general
partner of Bell Partnership. Both Bell defendants
claim that they are not involved in any of the day-to-
day business or organizational decisions involved in
the operation of Aspen LLC.

On February 16, 2007, Aspen LLC, Bell Partnership,
and Bell Corp, filed this motion to transfer venue.
Aspen LLC also filed a motion to dismiss for lack of
personal jurisdiction pursuant to Rule 12(b) (2) of the
Federal Rules of Civil Procedure.

### *DISCUSSION*

28 U.S.C. § 1404(a) provides, " [f]or the convenience
of parties and witnesses, in the interest of justice, a
district court may transfer any civil action to any
other district or division where it might have been
brought." This section aims " to prevent the waste '
of time, energy and money' and ' to protect litigants,
witnesses and the public against unnecessary
inconvenience and expense[.]' " *Van Dusen v.
Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d
945 (1964) (quoting *Continental Grain Co. v. Barge.
F.B.L.*, 364 U.S. 19, 26, 27, 80 S.Ct. 1470, 4 L.Ed.2d
1540 (1964)). The movant bears the burden of proof
to demonstrate that, the transfer is clearly favorable,
*Heller Fin., Inc. v. Midwhey Powder Co.* 883 F.2d
1286, 1293 (7th Cir.1989), which can be met only
through identifying specific circumstances, *Coffey v.
Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th
Cir.1986). The court must examine each motion on a
case-by-case basis, each by its own facts. *Id.* at 219.
District courts have the power to use broad discretion
in weighing the factors to determine if transfer is
proper. *Id.* To show that the transferee venue is as
convenient as the transferor venue will not meet the
movant's burden. *Id.* at 220.

Transfer is appropriate when venue is proper in the
transferor and transferee districts, and when the
transfer will serve the convenience of the parties and
witnesses and will promote the interest of justice.
*Amoco Oil Co. v. Mobil Oil Corp.*, 90 F.Supp.2d 958,
959 (N.D.Ill.2000); *United Air Lines, Inc. v. Mesa
Airlines, Inc.*, 8 F.Supp.2d 796, 798 (N.D.Ill.1998).
Although defendant Aspen LLC has filed a motion

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                Page 2

Slip Copy, 2007 WL 1810530 (N.D.Ill.)

**(Cite as: Slip Copy)**

challenging this court's personal jurisdiction over it, neither the plaintiff nor defendants have questioned the validity of either venue in this motion. Therefore, the court will focus on whether the defendants have met the burden to show the District of Colorado to be clearly more convenient to the parties and witnesses and in the interest of justice.

**\*2** The convenience of the parties and witnesses is assessed through a series of private interest factors, while the promotion of justice addresses public interest factors. *Anchor Wall Systems v. R & D Concrete Prod., Inc.,* 55 F.Supp.2d 871, 873 (N.D.Ill.1999).

### A. Convenience to Parties and Witnesses-Private Interest Factors

The defendants bear the burden to show that the transferee district is " clearly more convenient" than the transferor district. *Heller,* 883 F.2d at 1293 (citing *Coffey,* 796 F.2d at 219-20); *Amoco,* 90 F.Supp.2d at 960. The factors the court should consider in determining whether the venue will be more convenient include the plaintiff's choice of forum, the convenience of the parties, the convenience of the witnesses, the situs of material events, and the location of documents and other evidence. *United,* 8 F.Supp.2d at 798.

#### 1. Plaintiffs Choice of Forum and Situs of the Events

A plaintiff's choice of forum should receive a high amount of deference, but it " is not absolute," *Amoco,* 90 F.Supp.2d at 960. When the situs of the events is not within the plaintiffs choice of forum, then the factor will only receive limited weight. *Chicago, Rock Island and Pac. R.R. Co. v. Igoe,* 220 F.2d 299, 304 (7th Cir.1955); *Anchor,* 55 F.Supp.2d at 874 (discussing that when the plaintiff's forum lacks relevance to the issue in the case, the deference it receives will be greatly lessened). Mleczek has alleged that a significant event occurred when the defendants mailed an advertisement to her in Illinois, but the plaintiff has failed to attach the advertisement. Further, her complaint states that the causes of action occurred on the day of the accident in Colorado which is within the transferee forum. Therefore the deference normally given to the plaintiff's choice will not be given in this case.

#### 2. Convenience of the Parties

All of the named defendants are either located in Colorado or Illinois, but all Illinois defendants have asked for a transfer to Colorado. Mleczek is an Illinois resident, but has already demonstrated willingness and case to travel when she originally visited Colorado where the causes of action have allegedly occurred. Further, the defendants have cited employees in Colorado who will serve as witnesses and who are under their control, and if the venue is not transferred it will cost the defendants to obtain the employees' testimony in Illinois because they will have to pay the travel expenses. Mleczek, on the other hand, has not cited any witnesses or evidence that would cost her to transport to Colorado if venue were transferred. She has only cited the fact that she is a resident in this district. Therefore, while it will cost both sides to travel to the other parties' preferred forum, the defendants will have additional costs if the motion is denied and thus, this factor favors transfer,

#### 3. Convenience of Witnesses

The court will consider only non-party witnesses who have been specifically cited by the parties in weighing this factor. The court will not consider the location of expert witnesses, even though their opinion may be required in this case, because they are paid witnesses unlike other non-party witnesses and the parties can require their attendance. *Amoco,* 90 F.Supp.2d at 961 (citing *Karrels v. Adolph Coors Co.,* 699 F.Supp. 172, 176 (N.D.Ill.1988)), Most likely, any witnesses called would be ones who are located in Colorado, including the possibility of medical personnel who responded to the accident as well as any ski patrollers. The plaintiff has not named a single possible witness who is located in Illinois, and therefore the gain in convenience to the defendants' witnesses would not be obtained at the expense of the plaintiff's witnesses. Since many possible non-party witnesses are located in Colorado and none in Illinois, this factor favors transfer.

#### 4. Location and Ease of Access to Documents and Evidence

**\*3** When property will play a considerable role in the determination of the outcome of the case, courts have recognized the importance of the ability to view the premise and can order a transfer to allow the viewing. *E.g. Amoco,* 90 F.Supp.2d at 961. Because the plaintiff has claimed in her negligence charge that the slope may have been poorly maintained, this court views the ability to examine the site as extremely

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                        Page 3

Slip Copy, 2007 WL 1810530 (N.D.Ill.)

**(Cite as: Slip Copy)**

important to ruling on this factor. Any medical records will be located in Colorado at the Aspen Valley Hospital, as well as any contracts Mleczek signed before skiing under the alleged supervision of an employee of the defendants, While the paperwork involved seems small and could easily be transported, access to the properly where the accident occurred seems significant, and therefore favors transfer to Colorado.

With regard to these private interest factors, transfer is clearly favored.

### B. Interest of Justice-Public Interest Factors

To determine if the interest of justice would be served with a transfer, the court should consider the interest in a speedy trial, in adjudicating related cases together, and in having the case tried by a judge familiar with the law at issue. _Heller,_ 883 F.2d at 1293, The court should also consider the interest of the community in resolving the case in its own district, _Anchor,_ 55 F.Supp.2d at 875, as well as the availability of a compulsory process to obtain the attendance of unwilling witnesses, _Chicago,_ 220 F.2d at 304. These factors may be determinative of whether a transfer should be issued, even if the private interest factors favor a different outcome. _Coffey,_ 796 F.2d at 221. No other related cases are currently being litigated and neither side has identified a witness who will be reluctant to attend trial at either forum, so the court will not consider these factors in its determination,

### 1. A Speedy Trial

The two most important statistics for the court to consider are the " median months from filing to disposition" and the " median months from filing to trial." _Amoco,_ 90 F.Supp.2d at 962. Here, the median time from filing to disposition in the Northern District of Illinois is 6.5 months, while in the District of Colorado it is 8.8 months, and the median months from filing to trial in the Northern District of Illinois is 26.4 months while in the District of Colorado it is 32 months. _See_ Federal Court Management Statistics, http:// www.uscourts.gov/cgi-bin/cmsd2006.pl. Therefore, this factor gives slight weight to denying the motion to transfer.

### 2. Familiarity of Venue with the Applicable Law

Courts frequently answer questions based upon a

different state's law. (However, a court located within the jurisdiction of the law to be interpreted is preferred. _See Coffey,_ 796 F.2d at 221.) Here, the defendants have pointed to specific Colorado laws, including the Colorado Ski Safety Act, and laws governing Colorado limited liability companies, which may play a determinative role in the case. Although the Northern District of Illinois is perfectly capable of applying Colorado law, the District of Colorado encounters it more frequently. We therefore find that the applicable law in this case favors transferring venue.

### 3. Interest of the Community in the Case

*4 Even though the causes of action seem to have only a small connection to the current venue because the complaint alleges that they all occurred in Colorado, Mleczek is a resident of Illinois, which has an interest in adjudicating the rights of its citizens. However, Colorado has an equal interest in interpreting its own laws and hearing a case which involves an event that took place within its jurisdiction, and therefore this factor doesn't favor transfer or retention.

The public interest in this case favors a transfer.

### CONCLUSION

For the foregoing reasons, the defendants' motion to transfer [12] is granted, and this matter is transferred to the United States District Court for the District of Colorado. Accordingly, Aspen LLC's motion to dismiss for lack of personal jurisdiction [10] is denied as moot,

It is so ordered.

N.D.Ill.,2007.
Mleczek v. Aspen Skiing Co., LLC
Slip Copy, 2007 WL 1810530 (N.D.Ill.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2002 WL 31890062 (N.D.Ill.)

(Cite as: Not Reported in F.Supp.2d)

ᛗ
Undertow Software, Inc. v. Advanced Tracking
Technologies, Inc.
N.D.Ill.,2002.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
UNDERTOW SOFTWARE, INC. Plaintiff,
v.
ADVANCED TRACKING TECHNOLOGIES, INC.
and Paul M. Glass Defendants
**No. 02 C 8065.**

Dec. 30, 2002.

Following denial of stay, 2002 WL 31769274,
defendant filed **motion** to **transfer** civil action. The
District Court, Shadur, Senior Judge, held that
convenience of parties and witnesses and interest of
justice called for the retention of jurisdiction in
Illinois, rather than transfer of action to Texas.

Motion denied.
West Headnotes
**Federal Courts 170B ⚖══106.5**

170B Federal Courts
    170BII Venue
        170BII(B) Change of Venue
            170BII(B)1 In General; Venue Laid in
Proper Forum
                170Bk106 Determination in Particular
Transferable Actions
                    170Bk106.5 k. In General. Most
Cited Cases
    (Formerly 170Bk106)
Convenience of parties and witnesses and interest of
justice called for the retention of jurisdiction in
Illinois, rather than transfer of action to Texas;
required absence of single active employee of
plaintiff from Illinois during any litigation
proceedings carried on in Texas would essentially
paralyze plaintiff's operation, while no such disability
would attend defendant's defense of the action in
Illinois, and four Texas-based defense witnesses were
controlled by defendant, while all five material
witnesses identified by plaintiff were Illinois
residents who were not currently controlled by
plaintiff. 28 U.S.C.A. § 1404(a).

*MEMORANDUM OPINION AND ORDER*
**SHADUR**, Senior J.
**\*1** Advanced Tracking Technologies, Inc. ("
Advanced" ) has moved alternatively for the
dismissal of this action under Fed.R.Civ.P. (" Rule" )
12(b)(1) and 12(b)(3) or for a 28 U.S.C. (" Rule" )
Section 1404(a)" ) transfer to a District Court in
Texas.[FN1] Both Advanced and Undertow Software,
Inc. (" Undertow" ) have submitted further filings in
response to this Court's December 12, 2002
memorandum order, so that the issues are ripe for
decision.

> FN1. Although co-defendant Paul Glass
> joined in Advanced's motion, this
> memorandum opinion and order will ignore
> his participation in light of the automatic
> stay ascribable to Glass' bankruptcy filing.

To begin with, Advanced's Supp. Br. 3-4 essentially
concedes the dismissal issue in light of the company's
maintenance of interactive websites accessible in
Illinois and its sales of relevant products to Illinois
customers. This Court (like Advanced) will therefore
focus on the Section 1404(a) motion.

In that respect, the first listed statutory criterion ("
convenience of parties" ) points strongly in
Undertow's direction. In addition to the normal
preference that is given to a plaintiff's choice of
forum (although not as weighty a factor as in forum
non-conveniens cases), Undertow has identified a
dramatic difference in the size of the employment
complement of the two corporations: It essentially
has a single active employee (its President Steven
Peskaitis (" Peskaitis" )), whose required absence
from Illinois during any litigation proceedings carried
on in Texas would essentially paralyze its operation,
while no such disability will attend Advanced's
defense of this action in this District Court.

As for " convenience ... of witnesses," which is often
the most important single factor in the Section
1404(a) balancing process, it too favors Undertow by
a wide margin. In that respect the caselaw looks
primarily at witnesses whom the litigants do not
control directly, as they do their own corporate
officers and employees. Although Advanced has
identified four Texas-based witnesses, not one of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 2

Not Reported in F.Supp.2d, 2002 WL 31890062 (N.D.Ill.)

(Cite as: Not Reported in F.Supp.2d)

them is in the independent witness category-Advanced can readily deliver all of them for deposition or for trial. By contrast, all five material witnesses identified by Undertow (apart from Peskaitis himself) are Illinois residents who are *former* Undertow employees and are therefore not currently controlled by it.

Finally, it is conventional wisdom that the " interest of justice" criterion-the third element specified in Section 1404(a)-embodies the congeries of factors that *Gulf Oil Corp. v.. Gilbert,* 330 U.S. 501, 508-09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) looked to in the forum non-conveniens context. It is not necessary to tick off all of those factors,[FN2] but two of them are worthy of comment:

> FN2. Neither litigant has attempted to do so, and this Court is disinclined to do their work for them. More importantly, even a brief review of those criteria indicates that most of them do not (either individually or collectively) come down especially hard on one or the other of the balance scales.

1. Each side emphasizes the documents that are located at its home base, a consideration that is sometimes viewed as a component of what *Gulf Oil* terms as the " relative ease of access to sources of proof."   But in these more modern days of photocopying, faxing and other electronic means of retrieval, that factor is a nonstarter (except perhaps in an especially document-rich case, where cost of reproduction may bulk large).

*2 2. Advanced's Supp. Br. 5 quarrels with this Court's citation of *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) for the proposition that the law of this transferor court would remain applicable in the event of a Section 1404(a) transfer. This Court was of course well aware when it cited *Van Dusen* (one of the few opinions written by its former partner Justice Arthur Goldberg that remains alive and well after nearly four decades) that the case dealt with diversity jurisprudence and hence with *Erie v. Tompkins* principles. But even though this Court is always happy to be educated, in this instance Advanced's counsel are dead wrong in discounting the applicability of *Van Dusen* on that ground. Here is what the very case cited by Advanced, *Eckstein v. Balcor Film Investors,* 8 F.3d 1121, 1127 (7th Cir.1993), said on the issue:
When the law of the United States is geographically non-uniform, a transferee court should use the rule of

the transferee forum in order to implement the central conclusion of *Van Dusen* and *Ferens:* that a transfer under § 1404(a) accomplishes " but a change of courtrooms." *Van Dusen,* 376 U.S. at 639, 84 S.Ct. at 821

Under that approach, a Texas District Court would have to explore Seventh Circuit jurisprudence to see whether it differed from that in the Fifth Circuit and, if so, would then have to follow the Seventh Circuit's decision law (just as *Van Dusen* and *Eckstein* teach). This Court will confront no such extra hurdle if the case is retained here.

In summary, the comparative analysis required for Section 1404(a) purposes calls for the retention rather than transfer of this action. Advanced's motion is denied in its entirety.

N.D.Ill.,2002.
Undertow Software, Inc. v. Advanced Tracking Technologies, Inc.
Not Reported in F.Supp.2d, 2002 WL 31890062 (N.D.Ill.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.