# EXHIBIT C

# (PART 1 OF 4)

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

KARIN DUDZIENSKI                          )
                                          )    Case No.  07CV3813
                   Plaintiff,             )
                                          )    Judge Shadur
       vs.                                )
                                          )    Magistrate Judge Denlow
BCBG MAX AZRIA GROUP, INC., a             )
California corporation, individually, and )
d/b/a BCBG Max Azria; BCBG                )
MAXAZRIA HOLDINGS, INC., a                )
California corporation, individually, and )
d/b/a BCBG Max Azria; BCBG                )
MAXAZRIA INTERNATIONAL                    )
HOLDINGS, INC., a California              )
corporation, individually, and d/b/a      )
BCBG Max Azria; and DOES 1-10,            )
                                          )
                   Defendants.            )

### DECLARATION OF SCOTT J. FERRELL IN SUPPORT OF
### DEFENDANTS' MOTION TO TRANSFER VENUE

I, Scott J. Ferrell, hereby declare as follows:

1.      I am a shareholder in the law firm of Call, Jensen & Ferrell, A Professional Corporation, lead outside trial counsel for BCBG Max Azria Group, Inc., also known as BCBG Max Azria ("BCBG"), and Max Rave, LLC ("Max Rave"), which is a division of BCBG and member of the BCBG family of companies.  I have personal knowledge of the facts set forth below and, if called upon to do so, I could and would testify competently thereto.

2.      The law firm of Call, Jensen & Ferrell represents BCBG and Max Rave in four (4) putative class action lawsuits, alleging violations of the Fair and Accurate Credit Transactions Act, 15 U.S.C. § 1681c(g), ("FACTA"), throughout the nation.

3.      On or about February 5, 2007, a putative nationwide class action complaint for violation of FACTA was filed in the United States District Court for the Northern District of California against Max Rave, entitled: *Hile v. Max Rave, LLC*, Case No. 07-CV-00738 (JSW) ("*Hile*").  A true and correct copy of the *Hile* complaint is attached hereto as Exhibit A.

1

4.      An answer in the *Hile* action was filed on May 14, 2007. A true and correct copy of the answer in *Hile* is attached hereto as Exhibit B. In addition, the parties in *Hile* have already exchanged their Fed. R. Civ. P. 26(a) initial disclosures and propounded written discovery. Attached hereto as Exhibit C is a true and correct copy of Max Rave's Fed. R. Civ. P. 26(a) initial disclosures in *Hile*. True and correct copies of the written discovery (requests for production of documents, requests for admission and interrogatories) propounded by the plaintiff in *Hile* are attached hereto as Exhibit D, Exhibit E, and Exhibit F, respectively.

5.      Mediation is scheduled in the *Hile* action for September 7, 2007, but has since been continued. A true and correct copy of the Notice of Appointment of Mediator is attached hereto as Exhibit G. Counsel for the plaintiff in the *Hile* action has expressed concern that other pending actions against Max Rave and/or BCBG may interfere with the parties' ability to reach a possible resolution of the case.

6.      The plaintiff in the *Hile* action has already served a deposition subpoena on non-party Visa, who is located in Foster City, California. Attached hereto as Exhibit H is a true and correct copy of the deposition subpoena served to Visa. The court in *Hile* has set a deadline of January 25, 2008 for the plaintiff in *Hile* to bring a motion for class certification.

7.      On or about June 5, 2007, a putative nationwide class action complaint for violation of FACTA was filed in the United States District Court for the Eastern District of Pennsylvania against BCBG, entitled: *Bathon v. BCBG Max Azria*, Case No. 07-2276 ("*Bathon*"). A true and correct copy of the *Bathon* complaint is attached as Exhibit I.

8.      Although there has yet to be any Fed. R. Civ. P. 26 conference in *Bathon*, the plaintiff in *Bathon* has already propounded written discovery to BCBG. True and correct copies of the written discovery (requests for production of documents, requests for admission and interrogatories) propounded by the plaintiff in *Bathon* are attached hereto as Exhibit J, Exhibit K, and Exhibit L, respectively.

9.      Counsel for the plaintiff in *Bathon* is already admitted *pro hac vice* in California and is currently litigating several other FACTA class actions in California. *See, e.g.*, Order on

2

Application of Non-Resident Attorney to Appear in a Specific Case, dated August 6, 2007, in *Rosenberg v. Big A Drug Stores, Inc.*, Case No. 07-3719 CJC (MLGx) (C.D. Cal.), a true and correct copy of which is attached hereto as <u>Exhibit M</u>.

10. On or about June 29, 2007, a putative nationwide class action complaint for violation of FACTA was filed against Max Rave in the United States District Court for the Northern District of Illinois, entitled: *Gueorguiev v. Max Rave, LLC, et al.*, Case No. 07-CV-3685 ("*Gueorguiev*"). A true and correct copy of the amended complaint which was filed on July 24, 2007 in *Gueorguiev* is attached hereto as <u>Exhibit N</u>.

11. An answer to the amended complaint was filed in *Gueorguiev* in August of 2007. A true and correct copy of Max Rave's answer is *Gueorguiev* is attached hereto as <u>Exhibit O</u>.

12. On or about July 6, 2007, another putative nationwide class action for violation of FACTA was filed against BCBG in the United States District Court for the Northern District of Illinois, entitled: *Dudzienski v. BCBG Max Azria Group, Inc., et al.*, Case No. 07-CV-3813 ("*Dudzienski*"). A true and correct copy of the complaint in *Dudzienski* is attached hereto as <u>Exhibit P</u>. Attached hereto as <u>Exhibit Q</u> is a true and correct copy of BCBG's Fed. R. Civ. P. 26(a) initial disclosures in *Dudzienski*.

13. BCBG and Max Rave intend to transfer venue in the *Bathon, Gueorgueiv* and *Dudzienski* actions to the United States District Court for the Northern District of California where the first-filed and related *Hile* action is already pending and where BCBG and Max Rave believe the actions should ultimately be consolidated.

14. Although the parties vary, the subject of the dispute in *Hile, Bathon, Gueorgueiv* and *Dudzienski* are the same.

15. In addition to the witnesses identified and discussed in the declaration of Ajit Patel, it is believed that Arianna Brooke, a former BCBG employee, may have knowledge and information relevant to these actions. Ms. Brooke is believed to live and work in San Francisco, California.

16.    If this action is transferred to the Northern District of California – where the first-filed *Hile* action is already pending, I believe that it is likely that the actions could be consolidated before one judge which would promote judicial efficiency. In addition, pre-trial discovery could be conducted in a more orderly and efficient manner. Witnesses could be saved the time and expense of appearing at trial in multiple courts in different judicial districts and the possibility of inconsistent results would be eliminated.

I declare under penalty of perjury pursuant to the laws of the State of California and the United States that the foregoing is true and correct. Executed this 31st day of August, 2007, at Newport Beach, California.

s/Scott J. Ferrell
Scott J. Ferrell

1  Eric A. Grover, Esq. (CSB# 136080)
   Jade Butman, Esq. (CSB# 235920)
2  Elizabeth A. Acevedo, Esq. (CSB# 227347)
   **KELLER GROVER LLP**
3  425 Second Street, Suite 500
   San Francisco, California 94107
4  Tel. (415) 543-1305
   Fax (415) 543-7681
5

6  Mark R. Thierman, Esq. (CSB# 72913)
   **THIERMAN LAW FIRM**
7  7287 Lakeside Drive
   Reno, Nevada 89511
8  Tel: (775) 284-1500

9
   Scott A. Miller, Esq. (CSB# 230322)
10 **LAW OFFICES OF SCOTT A. MILLER, A.P.C.**
   16133 Ventura Blvd. Suite 1200
11 Encino, California 91436
   Tel. (818) 788-8081
12
   Steven L. Miller, Esq. (CSB# 106023)
13 **STEVEN L. MILLER, A PROFESSIONAL LAW COPRORATION**
   16133 Ventura Blvd. Suite 1200
14 Encino, California 91436
   Tel. (818) 986-9900
15

16              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
17
   ZACHARY HILE, on behalf of himself and all )   Case No.:
18 others similarly situated,                  )
                                               )   **CLASS ACTION**
19         Plaintiff,                          )
                                               )   COMPLAINT FOR DAMAGES AND
20    v.                                       )   INJUNCTIVE RELIEF
                                               )
21 MAX RAVE, LLC and G+G RETAIL, INC.          )   [15 U.S.C. §§ 1681 et seq.]
                                               )
22         Defendants.                         )
                                               )   **DEMAND FOR JURY TRIAL**
23 _____  )
                                               )
24

25

Comes now Plaintiff Zachary Hile ("Plaintiff") on behalf of himself and all others similarly situated and alleges as follows:

## INTRODUCTION

1.    In 2003, Congress passed and the President signed, the Fair and Accurate Credit Transaction Act ("FACTA") to assist in the prevention of identity theft and credit and debit card fraud.  In the statement provided by the President during the signing of the bill, the President declared that:

> "This bill also confronts the problem of identity theft.  A growing number of Americans are victimized by criminals who assume their identities and cause havoc in their financial affairs.  With this legislation, the Federal Government is protecting our citizens by taking the offensive against identity theft."

2.    A main provision of FACTA (codified as 15 U.S.C. § 1681c(g) of the Fair Credit Reporting Act) provides that:

> "No person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction."

3.    The law gave merchants who accept credit card and/or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006.  Although Defendants Max Rave, LLC and G+G Retail, Inc. (hereinafter "Defendants") had up to three years to comply, Defendants have willfully violated this law and failed to protect Plaintiff and others similarly situated against identity theft and credit card and debit card fraud by continuing to print more than the last five digits of the card

1  number and/or the expiration date on receipts provided to debit card and credit card

2  cardholders transacting business with Defendants.

3       4.    Plaintiff, on behalf of himself and all others similarly situated, brings this

4  action against Defendants based on Defendants' violation of 15 U.S.C. §§ 1681 et seq.

5       5.    Plaintiff seeks, on behalf of himself and the class, statutory damages, punitive

6  damages, costs and attorneys fees, all of which are expressly made available by statute, 15

7  U.S.C. §§ 1681 et seq., and a permanent injunction enjoining Defendants from continuing

8  their unlawful practice of willfully violating FACTA's provisions intended to safeguard

9

10  against identity theft and credit and debit card fraud.

11           **JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

12       6.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and

13  15 U.S.C. §§ 1681p.

14       7.    Plaintiff's claims asserted herein arose in this judicial district and all

15  Defendants do business in this judicial district.

16       8.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b) and (c) and

17  1400(a) in that this is the judicial district in which a substantial part of the acts and omissions

18  giving rise to the claims occurred.

19       9.    Assignment to the San Francisco or Oakland Divisions is proper because a

20  substantial part of the conduct which gives rise to the claims asserted herein occurred in the

21  County of Conta Costa in that Plaintiff is a resident of the County of Alameda and transacted

22  business with Defendants in, California, County of Contra Costa.

23

24

25

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Hile v. Max Rave, LLC and G+G Retail, Inc.

3

**PARTIES**

10.    Plaintiff, Zachary Hile, is and at all times relevant hereto was a resident of the State of California, County of Alameda.

11.    Defendants Max Rave, LLC. and Defendant G+G Retail, Inc. ("Defendants") are corporations organized and existing under the laws of the State of Delaware with headquarters in New York and N. Bergen, New Jersey. Defendants operate stores in this district and throughout the United States.

**CLASS ALLEGATIONS**

12.    Plaintiff brings this class action on behalf of himself and all others similarly situated pursuant to Rules 23(a) and 23(b)(1)-23(b)(3) of the Federal Rules of Civil Procedure.

13.    Plaintiff seeks to represents two classes of persons to be defined as follows:

**CLASS A:**  All persons in the United States to whom, on or after January 1, 2005, Defendants provided, through use of a machine that was first put into use by Defendants on or after January 1, 2005, an electronically printed receipt at the point of a sale or transaction on which Defendants printed more than the last five digits of the person's credit card or debit card number and/or printed the expiration date of the person's credit or debit card.

**CLASS B:**  All persons in the United States to whom, on or after December 4, 2006, Defendants provided, through use of a machine that was being used by Defendants before January 1, 2005, an electronically printed receipt at the point of a sale or transaction on which Defendants printed more than the last five digits of the person's credit card or debit card number and/or printed the expiration date of the person's credit or debit card.

14.   Numerosity:   Each of the classes described above in paragraph 13 are so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court.

15.   Plaintiff is informed and believes, and thereon alleges, that there are, at minimum, hundreds of members of each of the respective classes described in paragraph 13.

16.   The exact size of CLASS A and CLASS B and the identities of the individual members thereof are ascertainable through Defendantss records, including but not limited to Defendantss sales and transaction records.

17.   Members of CLASS A and CLASS B may be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

18.   Typicality:   Plaintiff's claims are typical of the claims of the members of CLASS A and CLASS B. The claims of the Plaintiff and members of CLASS A and CLASS B are based on the same legal theories and arise from the same unlawful and willful conduct.

19.   Plaintiff and members of CLASS A and CLASS B were each customers of Defendants, each having made a purchase or transacted other business with Defendants at an applicable time on or after December 4, 2004 using a credit card and/or debit card.  At the point of such sale or transaction with Plaintiff and members of CLASS A and CLASS B, Defendants provided to Plaintiff and each member of CLASS A and CLASS B a receipt in violation of 15 U.S.C. § 1681c(g).

20.    <u>Common Questions of Fact and Law</u>: There is a well-defined community of interest and common questions of fact and law affecting the members of CLASS A and CLASS B.

21.    The questions of fact and law common to CLASS A and CLASS B predominate over questions which may affect individual members and include the following:

    (a)    Whether Defendants' conduct of providing Plaintiff and the members of CLASS A and CLASS B with a sales or transaction receipt whereon Defendants printed more than the last five digits of the credit card or debit card and/or the expiration date of the credit card violated the FACTA, 15 U.S.C. §§ 1681 et seq.;

    (b)    Whether Defendants' conduct was willful;

    (c)    Whether Plaintiff and members of CLASS A and CLASS B are entitled to statutory damages, punitive damages, costs and/or attorneys' fees for Defendants' acts and conduct;

    (d)    Whether Plaintiff and members of CLASS A and CLASS B are entitled to a permanent injunction enjoining Defendants from continuing to engage in their unlawful conduct.

22.    <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of CLASS A and CLASS B because his interests do not conflict with the interests of the members of CLASS A or CLASS B, the classes which Plaintiff seeks to represent.    Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of CLASS A and CLASS B and has no interests antagonistic to the members of CLASS A or CLASS B.

Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation.

23.    Superiority: A class action is superior to other available means for the fair and efficient adjudication of the claims of CLASS A and CLASS B. While the aggregate damages which may be awarded to the members of CLASS A and CLASS B are likely to be substantial, the damages suffered by individual members of CLASS A and CLASS B are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of CLASS A and CLASS B to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced by or against any member of CLASS A or CLASS B. The likelihood of the individual members of CLASS A and CLASS B prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of CLASS A and CLASS B. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

24.    Injunctive Relief: Defendants have acted on grounds generally applicable to the members of CLASS A and CLASS B, thereby making appropriate final injunctive relief with respect to the CLASS A and CLASS B as a whole.

## FIRST CAUSE OF ACTION

### For Violation of 15 U.S.C. § § 1681 et seq.

### (On Behalf of Plaintiff and the Members of CLASS A and CLASS B,

### Against Defendants)

25.     Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

26.     Plaintiff asserts this claim on behalf of himself and CLASS A and CLASS B against Defendants and each of them.

27.     Title 15 U.S.C. § 1681c(g)(1) provides that:

> "...no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number <u>or</u> the expiration date upon any receipt provided to the cardholder at the point of sale or transaction."

28.     With respect to machines that were first put into use after January 1, 2005, 15 U.S.C. 1681c(g)(3)(B) required compliance with the provisions of 15 U.S.C. 1681c(g)(1) on or after December 4, 2004.

29.     With respect to machines that were in use before January 1, 2005, 15 U.S.C. 1681c(g)(3)(B) required compliance with the provisions of 15 U.S.C. 1681c(g)(1) on or after December 4, 2006.

30.     Defendants transact business in the United States and accept credit cards and/or debit cars in the course of transacting business with persons such as Plaintiff and the members of CLASS A and CLASS B.  In transacting such business, Defendants uses cash registers

and/or other machines or devices that electronically print receipts for credit card and/or debit card transactions.

31.    On or after December 4, 2004, Defendants, at the point of sale or transaction with Plaintiff, provided Plaintiff with one or more electronically printed receipts on each of which Defendants printed more than the last five digits of Plaintiff's credit card or debit card and/or printed the expiration of Plaintiff's credit or debit card.

32.    On or after December 4, 2004, Defendants, at the point of a sale or transaction with members of CLASS A, provided, through use of a machine that was first put into use on or after January 1, 2005, each member of CLASS A with one or more electronically printed receipts, each of which Defendants printed, for each respective CLASS A member, more than the last five digits of such member's credit or debit card number and/or the expiration of such member's credit or debit card.

33.    On or after December 4, 2006, Defendants, at the point of a sale or transaction with members of CLASS B, provided, through use of a machine that was in by Defendants before January 1, 2005, each member of CLASS B with one or more electronically printed receipts, each of which Defendants printed, for each respective CLASS B member, more than the last five digits of such member's credit or debit card number and/or the expiration of such member's credit or debit card.

34.    As set forth above, FACTA was enacted in 2003 and gave merchants who accept credit card and/or debit cards up to three years to comply with its requirements, requiring compliance for all machines no later than December 4, 2006.

35.    Defendants and each of them knew of, or should have known of, and were informed about the law, including specifically FACTA's requirements concerning the

1  truncation of credit and debit card numbers and prohibition on printing of expiration dates.

2  For example, but without limitation, several years ago, on information and belief, VISA,

3  MasterCard, the PCI Security Standards Council (a consortium founded by VISA,

4  MasterCard, Discovery, American Express and JCB), companies that sell cash register and

5  other devices for the processing of credit or debit card payments, and other entities informed

6  Defendants and each of them about FACTA, including its specific requirements concerning

7  the truncation of credit card and debit card numbers and prohibition on the printing of

8  expiration dates, and Defendants' need to comply with same.

9

10  36.    In addition, on information and belief, many companies such as VISA and

11  MasterCard devised and implemented policies well before the operative date of FACTA's

12  requirements, wherein such companies as VISA and MasterCard and others required

13  Defendants (and informed Defendants of the FACTA requirements) to truncate credit card and

14  debit card numbers and prevent the printing of expiration dates on receipts. For example, on

15  March 6, 2003, VISA USA's CEO, Carl Pascarella, held a pres conference on Capitol Hill

16  with Senators Dianne Feinstein, Judd Gregg, Jon Corzine and Patrick Leahy, and publicly

17  announced VISA USA's new truncation policy to protect consumers from identity theft. At

18  the March 2003 press conference, Mr. Pascarella explained as follows:

19

20          "Today I am proud to announce an additional measure to combat
        identity theft and protect consumers. Our new receipt truncation policy will
        soon limit cardholder information on receipts to the last four digits of their
21      accounts.    The card's expiration date will be eliminated from receipts
        altogether. This is an added security measure for consumers that doesn't
22      require any action by the cardholder. We are proud to be the first payments
        brand to announce such move to protect cardholders' identities by restricting
23      access to their account information on receipts.

24          The first phase of this new policy goes into effect July 1, 2003 for all
25      new terminals. I would like to add, however, that even before this policy goes

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Hile v. Max Rave, LLC and G+G Retail, Inc.
10

into effect, many merchants have already voluntarily begun truncating receipts, thanks to groundwork that we began several years ago.

Receipt truncation is good news for consumers, and bad news for identity thieves. Identity thieves thrive on discarded receipts and documents containing consumers' information such as payment account numbers, addresses, social security numbers, and more. Visa's new policy will protect consumers by limiting the information these thieves can access."

37.    Despite knowing and being repeatedly informed about FACTA and the importance of truncating credit card and debit card numbers and preventing the printing of expiration dates on receipts, and despite having had up to more than three years to comply with FACTA's requirements, Defendants willfully violated and continue to violate FACTA's requirements by, *inter alia*, printing more than five digits of the card number and/or the expiration date upon the receipts provided to members of CLASS A and CLASS B – persons with whom Defendants transact business.

38.    Many of Defendants' business peers and competitors readily brought their credit and debit card receipt printing process in compliance with FACTA by, for example, programming their card machines and devices to prevent them from printing more than the least five digits of the card number and/or the expiration date upon the receipts provided to the cardholders. Defendants could have readily done the same.

39.    In contrast, Defendants willfully disregarded FACTA's requirements and continue to us cash registers or other machines or devices that print receipts in violation of FACTA.

40.    Defendants willfully violated FACTA in conscious disregard of the rights of Plaintiff and the members of CLASS A and CLASS B thereby exposing Plaintiff and the members of CLASS A and CLASS B to an increased risk of identity theft and credit and/or debit card fraud.

41.    As a result of Defendants' willful violations of FACTA, Defendants are liable to Plaintiff and each class member of CLASS A and CLASS B in the statutory damage amount of "not less than $100 and not more than $1000" for each violation.    15 U.S.C. 1681n(a)(1)(A).

42.    As a result of Defendants' willful violations of FACTA, Plaintiff and the members of CLASS A and CLASS B are entitled to recover costs of suit and their reasonable attorneys' fees. 15 U.S.C. 1681n(a)(3).

43.    As a result of Defendants' willful violations of FACTA, Plaintiff and the members of CLASS A and CLASS B are entitled to punitive damages.    15 U.S.C. 1681n(a)(2).

44.    Defendants' conduct is continuing and, unless restrained, Defendants will continue to engage in their unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of CLASS A and CLASS B, prays for:

1.    An order certifying CLASS A and CLASS B and appointing Plaintiff as the representative of CLASS A and CLASS B, and appointing the law firms representing Plaintiff as counsel for CLASS A and CLASS B;

2.    An award to Plaintiff and the members of CLASS A and CLASS B of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A) for Defendants' willful violations;

3.        An award to Plaintiff and the members of CLASS A and CLASS B of punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

4.        Payment of costs of suit herein incurred pursuant to, *inter alia*, 15 U.S.C. § 1681n(a)(3);

5.        Payment of reasonable attorneys' fees pursuant to, *inter alia*, 15 U.S.C. § 1681n(a)(3);

6.        A permanent injunction enjoining Defendants and each of them from engaging in their unlawful violations of FACTA; and

7.        For other and further relieve as the Court may deem proper.

Dated: February 5, 2007        KELLER GROVER LLP


By: _____
        Eric A. Grover
        Attorneys for Plaintiff


### JURY TRIAL DEMAND

Plaintiff, on behalf of himself and the putative members of CLASS A and CLASS B, demands a trial by jury on all claims and causes of action to which she is entitled to a jury trial.

Dated: February 5, 2007        KELLER GROVER LLP


By: _____
        Eric A. Grover
        Attorneys for Plaintiff

ORIGINAL
FILES

'07 14 PM 3: 45

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   Maryn Miller, Bar No. 161761
2   Max Rave, LLC Legal Department
    2761 Fruitland Avenue
3   Vernon, California 90058
    Tel: (323) 277-5394
4   Fax: (323) 277-5463
    maryam@lola.com
5
6   Attorney for Defendant
    Max Rave, LLC
7
8                    UNITED STATES DISTRICT COURT
9                   NORTHERN DISTRICT OF CALIFORNIA
10
11  ZACHARY HILE, on behalf of himself and      Case No. 07-CV-00738 (JSW)
12  all others similarly situated,
                                                 DEFENDANT MAX RAVE, LLC'S
13               Plaintiff,                       RESPONSE TO COMPLAINT
14          vs.
15  MAX RAVE, LLC and G+G RETAIL,                Complaint Filed:  February 5, 2007
16  INC.,                                        Trial Date:  None Set
17               Defendants.
18
19                              ANSWER
20       Defendant Max Rave, LLC ("Max Rave"), on behalf of itself and no other
21  defendant, responds as follows to the Complaint filed February 5, 2007 ("Complaint")
22  by Zachary Hile ("Plaintiff"):
23                          INTRODUCTION
24       1.    Answering paragraph 1 of the Complaint, Max Rave admits that Plaintiff
25  appears to quote a portion President Bush's statement.  Max Rave states that the
26  statement speaks for itself and on that basis denies any allegations inconsistent
27  therewith.  Except as expressly admitted, Max Rave denies all remaining allegations in
28  paragraph 1.

-1-
DEFENDANT MAX RAVE, LLC'S ANSWER TO FIRST AMENDED COMPLAINT

EXHIBIT "B"

1  Maryn Miller, Bar No. 161761
2  Max Rave, LLC Legal Department
   2761 Fruitland Avenue
3  Vernon, California 90058
   Tel: (323) 277-5394
4  Fax: (323) 277-5463
   marynm@lola.com
5
6  Attorney for Defendant
   Max Rave, LLC
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  ZACHARY HILE, on behalf of himself and | Case No. 07-CV-00738 (JSW)
12  all others similarly situated,
                                            | **DEFENDANT MAX RAVE, LLC'S**
13          Plaintiff,                      | **RESPONSE TO COMPLAINT**

14          vs.

15  MAX RAVE, LLC and G+G RETAIL,           | Complaint Filed:  February 5, 2007
16  INC.,                                   | Trial Date:   None Set

17          Defendants.

18

19                      **ANSWER**

20      Defendant Max Rave, LLC ("Max Rave"), on behalf of itself and no other

21  defendant, responds as follows to the Complaint filed February 5, 2007 ("Complaint")

22  by Zachary Hile ("Plaintiff"):

23                   **INTRODUCTION**

24      1.      Answering paragraph 1 of the Complaint, Max Rave admits that Plaintiff

25  appears to quote a portion President Bush's statement.  Max Rave states that the

26  statement speaks for itself and on that basis denies any allegations inconsistent

27  therewith.  Except as expressly admitted, Max Rave denies all remaining allegations in

28  paragraph 1.

1    2.    Answering paragraph 2 of the Complaint, Max Rave admits that Plaintiff
2    appears to quote portions of the Fair Credit Reporting Act ("FCRA"), 15, U.S.C. § 1681
3    *et seq.* Max Rave states that the FCRA speaks for itself and on that basis denies any
4    allegations inconsistent therewith. Except as expressly admitted, Max Rave denies all
5    remaining allegations in paragraph 2.

6    3.    Answering paragraph 3 of the Complaint, Max Rave admits Plaintiff
7    purports to provide the law's compliance deadline. Max Rave states that the FCRA
8    speaks for itself and on that basis denies any allegations inconsistent therewith. Except
9    as expressly admitted, Max Rave denies all remaining allegations in paragraph 3.

10    4.    Answering paragraph 4 of the Complaint, Max Rave admits Plaintiff
11    purports to bring this action on behalf of himself, and all others similarly situated.
12    Except as expressly admitted, Max Rave denies all remaining allegations in
13    paragraph 4.

14    5.    Answering paragraph 5 of the Complaint, Max Rave admits Plaintiff
15    purports to seek, on behalf of himself and the purported class, statutory damages,
16    punitive damages, costs and attorneys fees, and a permanent injunction. Except as
17    expressly admitted, Max Rave denies all remaining allegations in paragraph 5.

18    **JURISDICTION VENUE AND INTRADISTRICT ASSIGNMENT**

19    6.    Answering paragraph 6 of the Complaint, Max Rave admits that Plaintiff
20    purports that this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331
21    and 15 U.S.C. § 1681p.

22    7.    Answering paragraph 7 of the Complaint, Max Rave admits it does
23    business in this judicial district. Max Rave is without sufficient information to form a
24    belief as to the truth of the remaining allegations contained in paragraph 7 of the
25    Complaint, and therefore denies those allegations contained therein.

26    8.    Answering paragraph 8 of the Complaint, Max Rave admits that Plaintiff
27    purports venue is proper under 28 U.S.C. § 1331(b) and (c), and 1400(a). Max Rave is
28    without sufficient information to form a belief as to the truth of the remaining

DEFENDANT MAX RAVE'S ANSWER TO COMPLAINT

1 allegations contained in paragraph 8 of the Complaint, and therefore denies those

2 allegations contained therein.

3     9.     Answering paragraph 9 of the Complaint, Max Rave is without sufficient

4 information to form a belief as to the truth of the allegations contained in paragraph 9 of

5 the Complaint, and therefore denies those allegations contained therein.

6                                    **PARTIES**

7     10.     Answering paragraph 10 of the Complaint, Max Rave is without sufficient

8 information to form a belief as to the truth of the allegations contained in paragraph 10

9 of the Complaint, and therefore denies those allegations contained therein.

10     11.     Answering paragraph 11 of the Complaint, Max Rave admits that it is a

11 limited liability company organized and existing under the laws of the State of

12 Delaware and that it operates stores in this district and throughout the United States.

13 Except as expressly admitted, Max Rave denies all the remaining allegations in

14 paragraph 11.

15                              **CLASS ALLEGATIONS**

16     12.     Answering paragraph 12 of the Complaint, Max Rave admits that Plaintiff

17 purports to bring this action on behalf of himself and all other persons similarly

18 situated.  Except as expressly admitted, Max Rave denies all the remaining allegations

19 in paragraph 12.

20     13.     Answering paragraph 13 of the Complaint, Max Rave admits that Plaintiff

21 purports to seek to represent two classes as defined.  Except as expressly admitted, Max

22 Rave denies all the remaining allegations in paragraph 13.

23     14.     Answering paragraph 14 of the Complaint, Max Rave states that paragraph

24 14 alleges legal conclusions that are not subject to admission or denial.  To the extent

25 that facts are alleged in paragraph 14, Max Rave is without sufficient information to

26 form a belief of any remaining factual allegations contained in paragraph 14, and

27 therefore denies those allegations on that basis.  Max Rave denies that this is a class

28 action will benefit both parties and this Court.

1    15.    Answering paragraph 15 of the Complaint, Max Rave is without sufficient
2    information to form a belief as to the truth of the allegations contained in paragraph 15
3    of the Complaint, and therefore denies those allegations contained therein.

4    16.    Answering paragraph 16 of the Complaint, Max Rave is without sufficient
5    information to form a belief as to the truth of the allegations contained in paragraph 16
6    of the Complaint, and therefore denies those allegations contained therein

7    17.    Answering paragraph 17 of the Complaint, Max Rave is without sufficient
8    information to form a belief as to the truth of the allegations contained in paragraph 17
9    of the Complaint, and therefore denies those allegations contained therein.

10    18.    Answering paragraph 18 of the Complaint, Max Rave states that paragraph
11    18 alleges legal conclusions that are not subject to admission or denial.  To the extent
12    that facts are alleged in paragraph 18, Max Rave is without sufficient information to
13    form a belief of any remaining factual allegations contained in paragraph 18, and
14    therefore denies those allegations on that basis.

15    19.    Answering paragraph 19 of the Complaint, Max Rave admits that it may
16    have on one or more occasions printed the expiration date and/or more than the last five
17    digits of a credit or debit card.  Except as expressly admitted, Max Rave denies all the
18    remaining allegations in paragraph 19.

19    20.    Answering paragraph 20, Max Rave states that paragraph 20 alleges legal
20    conclusions that are not subject to admission or denial.  To the extent that facts are
21    alleged in paragraph 20, Max Rave is without sufficient information to form a belief of
22    any remaining factual allegations contained in paragraph 20, and therefore denies those
23    allegations on that basis.

24    21.    Answering paragraph 21 of the Complaint, Max Rave denies there are
25    questions of fact and law common to the Plaintiff's purported class that predominate
26    over questions that may affect individual members.  Max Rave is without sufficient
27    information to form a belief as to the truth of the remaining allegations contained in
28    paragraph 21 of the Complaint, and therefore denies those allegations contained therein.

- 4 -

1     22.    Answering paragraph 22 of the Complaint, Max Rave states that paragraph

2    22 alleges legal conclusions that are not subject to admission or denial.  To the extent

3    that facts are alleged in paragraph 22, Max Rave is without sufficient information to

4    form a belief of any remaining factual allegations contained in paragraph 22, and

5    therefore denies those allegations on that basis.

6     23.    Answering paragraph 23 of the Complaint, Max Rave denies that a class

7    action is the superior method to other available means in this action.  Max Rave is

8    without sufficient information to form a belief as to the truth of the remaining

9    allegations contained in paragraph 23 of the Complaint, and therefore denies those

10    allegations contained therein.

11     24.    Answering paragraph 24 of the Complaint, Max Rave is denies the

12    allegations contained therein.

13                    **FIRST CAUSE OF ACTION**

14     25.    In response to the allegations contained in paragraph 25 of the Complaint,

15    Max Rave hereby incorporates by this reference each and every response to paragraphs

16    1 through 24 of this Answer as if fully set forth herein.

17     26.    Answering paragraph 26 of the Complaint, Max Rave admits that Plaintiff

18    purports to assert this claim on behalf of himself and other purported class members.

19     27.    Answering paragraph 27 of the Complaint, Max Rave admits that Plaintiff

20    appears to quote portions of 15 U.S.C. § 1681c(g)(1).  Max Rave states that the statute

21    speaks for itself and on that basis denies any allegations inconsistent therewith.  Except

22    as expressly admitted, Max Rave denies all remaining allegations in paragraph 27.

23     28.    Answering paragraph 28 of the Complaint, Max Rave admits Plaintiff

24    purports to provide the law's compliance deadline.  Max Rave states that the FCRA

25    speaks for itself and on that basis denies any allegations inconsistent therewith.  Except

26    as expressly admitted, Max Rave denies all remaining allegations in paragraph 28.

27     29.    Answering paragraph 29 of the Complaint, Max Rave admits Plaintiff

28    purports to provide the law's compliance deadline.  Max Rave states that the FCRA

1   speaks for itself and on that basis denies any allegations inconsistent therewith.  Except

2   as expressly admitted, Max Rave denies all remaining allegations in paragraph 29.

3       30.    Answering paragraph 30 of the Complaint, Max Rave admits that Max

4   Rave conducts business in the United States and accepts credit cards and/or debit cards

5   in the course of transacting business, and uses cash registers and/or other machines or

6   devices that electronically print receipts.  Except as expressly admitted, Max Rave

7   denies all the remaining allegations in paragraph 31.

8       31.    Answering paragraph 31 of the Complaint, until Max Rave obtains

9   discovery from Plaintiff, it is without sufficient information to form a belief as to the

10  truth of the allegations contained in paragraph 31, and therefore denies those allegations

11  on that basis.

12      32.    Answering paragraph 32 of the Complaint, Max Rave admits that it may

13  have on one or more occasions printed the expiration date and/or more than the last five

14  digits of a credit or debit card.  Except as expressly admitted, Max Rave denies all the

15  remaining allegations in paragraph 32.

16      33.    Answering paragraph 33 of the Complaint, Max Rave admits that it may

17  have on one or more occasions printed the expiration date and/or more than the last five

18  digits of a credit or debit card.  Except as expressly admitted, Max Rave denies all the

19  remaining allegations in paragraph 33.

20      34.    Answering paragraph 34 of the Complaint, Max Rave admits Plaintiff

21  purports to provide FACTA's compliance deadline.  Max Rave states that FACTA

22  speaks for itself and on that basis denies any allegations inconsistent therewith.  Except

23  as expressly admitted, Max Rave denies all remaining allegations in paragraph 34.

24      35.    Answering paragraph 35 of the Complaint, Max Rave denies each and

25  every allegation contained in paragraph 35 of the Complaint.

26      36.    Answering paragraph 36 of the Complaint, Max Rave is without sufficient

27  information to form a belief as to the truth of the allegations contained in paragraph 36

28  of the Complaint, and therefore denies those allegations contained therein.

1    37.    Answering paragraph 37 of the Complaint, Max Rave denies each and

2    every allegation contained in paragraph 37 of the Complaint.

3    38.    Answering paragraph 38 of the Complaint, Max Rave is without sufficient

4    information to form a belief as to the truth of the allegations contained in paragraph 38

5    of the Complaint, and therefore denies those allegations contained therein.

6    39.    Answering paragraph 39 of the Complaint, Max Rave denies each and

7    every allegation contained in paragraph 39 of the Complaint.

8    40.    Answering paragraph 40 of the Complaint, Max Rave denies each and

9    every allegation contained in paragraph 40 of the Complaint.

10    41.    Answering paragraph 41 of the Complaint, Max Rave denies each and

11    every allegation contained in paragraph 41 of the Complaint.

12    42.    Answering paragraph 42 of the Complaint, Max Rave denies each and

13    every allegation contained in paragraph 42 of the Complaint.

14    43.    Answering paragraph 43 of the Complaint, Max Rave denies each and

15    every allegation contained in paragraph 43 of the Complaint.

16    44.    Answering paragraph 44 of the Complaint, Max Rave denies each and

17    every allegation contained in paragraph 44 of the Complaint.

18    ## SEPARATE AFFIRMATIVE DEFENSES

19    ### FIRST SEPARATE DEFENSE

20    **(Alleged Statutory Damages Violate Due Process)**

21    45.    The statutory damages Plaintiff seeks would be disproportionate to the

22    harm alleged, excessive, and would violate Max Rave's rights under the due process

23    clauses of the United States and applicable state Constitutions.

24    ### SECOND SEPARATE DEFENSE

25    **(Vague Statute Violates Due Process)**

26    46.    The statute upon which Plaintiff alleges his Complaint is based on,

27    15 U.S.C. § 1681c(g), is unconstitutionally vague and ambiguous on its face and as

28    applied to Max Rave, does not provide sufficient notice as to what constitutes a

1  violation, and enforcement of the statute would violate Max Rave's rights under the due

2  process clauses of the United States and applicable state Constitutions.

3                          **THIRD SEPARATE DEFENSE**

4         **(Alleged Punitive Damages Violate Constitutional Provisions)**

5         47.    Plaintiff's claims for punitive or exemplary damages are barred

6  because such relief would violate Max Rave's constitutional rights under

7  provisions of the United States and applicable state Constitutions.

8                          **FOURTH SEPARATE DEFENSE**

9                                **(Mistake)**

10        48.    The Complaint is barred in whole or in part to the extent that any conduct

11  engaged in by Max Rave was based on a mistake of fact or law.

12                          **FIFTH SEPARATE DEFENSE**

13                               **(Laches)**

14        49.    The Complaint is barred and/or recovery is limited or excluded by the

15  doctrine of laches.

16                          **SIXTH SEPARATE DEFENSE**

17                           **(Unjust Enrichment)**

18        50.          The Complaint is barred and/or recovery is limited by the

19  equitable doctrine of unjust enrichment.

20                         **SEVENTH SEPARATE DEFENSE**

21                          **(Statute of Limitations)**

22        51.    The Complaint is barred by the applicable statutes of limitation including,

23  but not limited to, 15 U.S.C. § 1681p, to the extent the Complaint seeks relief from

24  alleged misconduct by Max Rave before two years prior to the commencement of this

25  action.

26                          **EIGHTH SEPARATE DEFENSE**

27                      **(Superseding or Intervening Cause)**

28        52.    The loss, injury or damage, if any, incurred by Plaintiff was the result of

- 8 -

1   superseding or intervening causes arising from negligent or willful acts or omissions by

2   parties which Max Rave neither controlled nor had the right to control, and said losses,

3   injuries, or damages were not proximately or legally caused by any act, omission, or

4   other conduct by Max Rave.

## PRAYER

6       WHEREFORE, Max Rave prays judgment as follows:

7       1.    The case no longer continue as a purported class action;

8       2.    That Plaintiff takes nothing by way of his Complaint;

9       3.    That Judgment be rendered in favor of Max Rave and against Plaintiff and

10      that the Complaint be dismissed with prejudice;

11      4.    That Max Rave be awarded its costs of suit incurred in the defense of this

12      action;

13      5.    That Max Rave be awarded its attorneys' fees of suit incurred in the

14      defense of this action; and

15      6.    For such other relief as this Court deems proper.

16  Dated:  May 14, 2007     Max Rave, LLC Legal Department

19  By:_____

20      MARYN L. MILLER

21      Attorneys for Defendant Max Rave, LLC

DEFENDANT MAX RAVE'S ANSWER TO COMPLAINT

PROOF OF SERVICE BY U.S. MAIL

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I, Stacey Claflin, am employed in the County of Los Angeles, State of California, am over the age of 18 and not a party to the within action. My business address is 2761 Fruitland Avenue, Vernon, California 90058. I am readily familiar with the practice for the collection and processing of United States Postal Service mail; pursuant to that practice, envelopes placed for collection at designated locations during designated hours are deposited with the United States Postal Service with first class postage thereon fully prepaid that same day in the ordinary course of business

On May 14, 2007 I served the foregoing document described as **Defendant's Answer to Complaint** on the interested parties in this action by placing a true copy thereof in sealed envelopes addressed as follows:

> Eric Grover, Esq.
> Keller Grover, LLP
> 425 Second Street, Suite 500
> San Francisco, CA 94107
> Tel: 415-543-1305
> Fax: 415-543-7861

and by then sealing and placing said envelope(s) for collection at a designated location at 2761 Fruitland Avenue, Vernon, California 90058 during designated hours, for mailing on the above date, following ordinary business practice.

I declare that I am employed in the office of a member of the Bar of this Court at whose direction this service was made.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed May 14, 2007 at Vernon, California.

_____
Stacey Claflin

DEFENDANT MAX RAVE'S ANSWER TO COMPLAINT

MARYN L. MILLER /CA SB #161761
MAX RAVE, LLC.
2761 FRUITLAND AVENUE
VERNON, CALIFORNIA 90058
(323) 277-5394 (PHONE)
(323) 277-5463 (FACSIMILE)
marynm@bcbg.com

RICHARD C. VASQUEZ /CA SB # 127228
ERIC W. BENISEK /CA SB # 209520
STEPHEN C. STEINBERG /CA SB # 230656
Morgan Miller Blair, a Law Corporation
1331 N. California Blvd., Suite 200
Walnut Creek, CA  94596-4544
Telephone:     (925) 937-3600
Facsimile:      (925) 943-1106
rvasquez@mmblaw.com
ebenisek@mmblaw.com
ssteinberg@mmblaw.com

*Counsel for Defendant Max Rave, LLC.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACHARY HILE, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>MAX RAVE, LLC and G+G RETAIL, INC.,<br><br>       Defendants. | Case No.: C 07-00738 JSW<br>Complaint Filed: February 5, 2007<br><br>**MAX RAVE, LLC'S RULE 26 INITIAL DISCLOSURES**<br><br>Date:    May 23, 2007<br>Judge:  Hon. Jeffrey S. White |

MORGAN
MILLER
BLAIR,
AW
ORPORATION

**EXHIBIT "C"**

I.     **DEFENDANT MAX RAVE LLC'S RULE 26(A)(1) INITIAL DISCLOSURES**

Defendant Max Rave, LLC ("MAX"), makes the following initial disclosures pursuant to Fed. R. Civ. P. 26.

A.     **WITNESSES (FRCP 26(a)(1)(A))**

(The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.)

| Name | Contact Information | Subject Matter |
|---|---|---|
| Billie Parsons, VP Finance, BCBG Max Azria | c/o Morgan Miller Blair | MAX purchase of the assets G+G Retail, Inc. in 2006 |
| Brian Fleming, CFO, BCBG Max Azria | c/o Morgan Miller Blair | MAX purchase of the assets G+G Retail, Inc. in 2006 |
| Russell Bowers, former BCBG employee | unknown | MAX purchase of the assets G+G Retail, Inc. in 2006 |
| Sam Busceti, Director IP, Max Rave | c/o Morgan Miller Blair | MAX's efforts to modernize G+G Retail, Inc.'s point-of-sale upon first learning of the FACTA issue. |
| Ajit Patel, CIO, BCBG Max Azria | c/o Morgan Miller Blair | MAX's efforts to modernize G+G Retail, Inc.'s point-of-sale upon first learning of the FACTA issue. |

B.     **DOCUMENTS (Fed. R. Civ. P. 26(a)(1)(B))**

([A] copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment)

1.     Asset Purchase Agreement Documents for MAX purchase of G+G, Retail, Inc.'s assets.

    a.   Transactional documents;

    b.   Due diligence documents;

2.     MAX efforts to modernize G+G, Retail, Inc.'s point-of-sale upon first learning of FACTA issue.

    a.   Communications regarding when MAX first discovered FACTA issue;

MORGAN
MILLER
BLAIR,
LAW
CORPORATION

2

RULE 26 INITIAL DISCLOSURES                    CASE NO. C 07-00738 JSW
MMB:10604-001:793619.1

1           b.   Communications regarding efforts to solve FACTA issue;

2           c.   Expenses incurred by MAX to modernize point-of-sale machines at all MAX

3              locations.

4    **C.    DAMAGES (Fed. R. Civ. P. 26(a)(1)(C))**

5    (A computation of any category of damages claimed by the disclosing party, making available for

6    inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged
or protected from disclosure, on which such computation is based, including materials bearing on

7    the nature and extent of injuries suffered.)

8        Discovery is ongoing, and MAX will update this category as plaintiff's and/or the class

9    damages, if any, becomes more determinable.

10    **D.    INSURANCE (Fed. R. Civ. P. 26(a)(1)(D))**

11        MAX is presently unaware of any insurance that would cover plaintiff's and/or the class'

12    claims.

13

14                     Respectfully submitted,

15    Dated: July 2, 2007           MORGAN MILLER BLAIR, A LAW CORPORATION

16

17                     /s/ ERIC W. BENISEK

18

19                     ERIC W. BENISEK
                 *Counsel for Max Rave, LLC*

20

21

22

23

24

25

26

27

28

                                                                3

**RULE 26 INITIAL DISCLOSURES**           **CASE NO. C 07-00738 JSW**
MMB:10604-001:793619.1

1

**PROOF OF SERVICE**
*Hile v. Max Rave.*

2

**USDC, Northern District of California Case No. C 07-00738 JSW**

3

I am employed in the County of Contra Costa, State of California. I am over the age of 18 years,
and not a party to the within action. My business address is: 1331 N. California Boulevard, Suite 200,
Walnut Creek, California. On the date set forth below I served the foregoing document described as:

4

5

6

- **MAX RAVE, LLC'S RULE 26 INITIAL DISCLOSURES**

on the parties or attorneys for parties in this action who are identified below, using the following means of
service. (If more than one means of service is checked, the means of service used for each party is
indicated on the attached service list.)

7

8

9

| | |
|---|---|
| Eric A. Grover, Esq. | *Counsel for Plaintiff Zachary Hile* |
| Jade Butman, Esq. | Tel:   (415) 543-1305 |
| Elizabeth A. Acevedo, Esq. | Fax:   (415) 543-7681 |
| Keller Grover LLP | eagrover@kellergrover.com |
| 425 Second Street, Suite 500 | |
| San Francisco, CA 94107 | |

10

11

12

___X___   **BY MAIL.** I placed a true and correct copy of the aforementioned document in a sealed
envelope individually addressed to each of the parties and caused each such envelope to
be deposited with the U.S. Postal Service and/or picked up by an authorized
representative, on that same day with fees fully prepaid at Walnut Creek, California, in
the ordinary course of business.

13

14

15

___X___   **(State)** I declare under penalty of perjury under the laws of the State of California that
the foregoing is true and correct.

16

17

Executed on July 2, 2007, at Walnut Creek, California.

18

19

20

TONIA TORRES

21

...

26

27

28

2

**MARCI PIERCE RESPONSE TO PLTS' SUPPLEMENTAL INTERROGATORIES**      05-02326
MMB:10604-001:794624.1

Eric A. Grover, Esq. (CSB# 136080)
Jade Butman, Esq. (CSB# 235920)
**KELLER GROVER LLP**
425 Second Street, Suite 500
San Francisco, California 94107
Tel. (415) 543-1305
eagrover@kellergrover.com

Mark R. Thierman, Esq. (CSB# 72913)
**THIERMAN LAW FIRM**
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500
laborlawyer@pacbell.net

Scott A. Miller (CSB# 230322)
**LAW OFFICES OF SCOTT A. MILLER, A.P.C.**
16133 Ventura Blvd., Suite 1200
Encino, California 91436
Tel. (818) 788-8081
millaw@sbcglobal.net

Steven L. Miller (CSB# 106023)
**STEVEN L. MILLER, PLC**
16133 Ventura Blvd., Suite 1200
Encino, California 91436
Tel. (818) 986-8900
stevenlmiller@sbcglobal.net

**Attorneys for Plaintiff**
Zachary Hile

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACHARY HILE, on behalf of himself and all others similarly situated, | ) ) ) Case No.: C 07-00738 JSW |
| Plaintiff, | ) Complaint Filed: February 2, 2007 ) ) |
| v. | ) CLASS ACTION ) |
| MAX RAVE, LLC and G+G RETAIL, INC., | ) **PLAINTIFF'S FIRST REQUEST** ) **FOR PRODUCTION OF** |
| Defendants. | ) **DOCUMENTS TO DEFENDANT** ) |

**Exhibit D**

1
2
3    **PROPOUNDING PARTY:** Plaintiff Zachary Hile
4    **RESPONDING PARTY:**   Defendant Max Rave, LLC
5    **SET NUMBER:**         One
6
7    **PLEASE TAKE NOTICE THAT** pursuant to Rule 34 of the Federal Code of Civil
8    Procedure, Plaintiff Zachary Hile hereby propounds his First Request for Production of
9    Documents to Defendant, to which Defendant must respond within thirty-five (35) days of
     mailing.
10                                        **Definitions**
11       The following terms and phrases shall be read, construed and interpreted as follows:
12       1.    "Communication" means the transmittal of information and includes, but is not
13   limited to, any formal or informal disclosure, contact, discussion or any other kind of written,
14   oral or electronic transfer or exchange of information, facts, ideas or opinions, between two or
15   more persons, however made.   This term includes, but is not limited to, all telephone
16   conversations, face to face conversations, meetings, visits, conferences, internal and external
17   discussions, and documents (including without limitation, electronic mail, *i.e.*, "e-mail").
18       2.    "Concerning" means anything directly or indirectly relating to, referring to,
19   alluding to, responding to, connected with, commenting on, in respect of, about, regarding,
20   discussing, showing, describing, mentioning, analyzing, studying, reflecting, evidencing,
21   containing or constituting, in whole or in part.
22       3.    The terms "document" or "documents" are used herein in the broadest sense
23   permissible under Fed.R.Civ.P. 34(a), and includes, without limitation, any "writing" as that
24   term is defined in Rule 1001 of the Federal Rules of Evidence, and any computer, mechanical,
25   photographic, printed, magnetic, audio, video and other electronic recordings or records
26   and/or other tangible records and forms of recorded information, however produced or
27   reproduced, including but not limited to: all letters, correspondence, inter-office
28   communications, electronic correspondence such as "e-mail," and other communications

---

recorded in any form or medium; records, memoranda, minutes, notes, telegrams, summaries, computer printouts or disks or any information retained in a computer database which can be reproduced; records of telephone calls and meetings, calendar and diary entries, notebooks, schedules, reports, studies, appraisals, analyses, lists, surveys, deeds; budgets, financial statements, ledgers, returns, financial projections, comparison between budgets, projections and actual results, working papers, financial calculations and other records of financial matters and commercial transactions; contracts, agreements, legal and accounting opinions, analyses and research; periodicals, charts, diagrams, graphs, and other drawings; interviews, speeches, transcripts, press releases, advertisements, brochures and books of account; plans and specifications; publications; photocopies, microfilm, and other copies or reproduction, and computer printouts; all drafts, outlines and proposals of any such documents (whether or not actually used), and all non-identical copies (whether different from the original by reason of notations made on such copies or otherwise) are separate documents within the meaning of the term. The term also includes information stored in, or accessible through, computer or other information retrieval systems, together with instructions and all materials necessary to retrieve, use or interpret such data.

     4.    "Person" includes any natural person, corporate entity, partnership, association, joint venture, trust, government unit, agency, branch, commission or office or any subdivision or department thereof, including, but not limited to, all officials, representatives and employees of any government unit, agency, branch, commission or office, or any subdivision or department thereof.

     5.    "United States" means the fifty states, the District of Columbia, and all territories, dependencies, or possessions of the United States of America.

     6.    "You," "your" and/or "Defendant" means your corporate entity.

     7.    "POS" means point of sale.

     8.    "Transaction" means a POS retail transaction for the purchase of goods or services.

9.    "Circumstances" means condition, fact or event accompanying or leading up to causes of and/or negotiations or discussions over.

10.    "Set" means fixed, adopted, determined and/or established.

11.    "Policy" means any formal or informal, oral or written, guideline, procedure, plan, practice, program, strategy or guideline.

12.    "Rule" means any by-law, regulation (including without limitation any operating regulation), policy or guideline.

13.    "Bank" means any financial institution that issues or acquires Visa USA ("Visa") and/or MasterCard Worldwide ("MasterCard") products as a member of Visa and/or MasterCard.

14.    "Credit Card" is an access device which enables the holder to effect transactions on credit for goods and services purchased, which are paid on behalf of the holder by the issuer of such device. The card also allows holders to obtain cash with credit extended by the issuer.  Examples of credit cards are the Visa and MasterCard credit cards issued by members of bank card associations, the Discover, Bravo and Private Issue cards issued by Morgan Stanley, Dean Witter & Co., and the Optima cards issued by American Express.

15.    "Charge Card" or "Travel and Entertainment Card" or "T&E Card" is an access device which enables the holder to purchase goods and services on credit to be paid on behalf of the holder by the issuer of such device.  Examples of charge cards, travel and entertainment cards or T&E cards are the American Express, Green, Gold and Platinum cards as well as the Diners Club and Carte Blanche cards issued by Citibank.

16.    "Debit Card" is an access device which enables the holder, among other things, to effect a cash withdrawal from the holder's bank account at an ATM or make a purchase at a POS which is debited against one or more of the holder's bank accounts.

17.    "Plastic Payment Card" means a device which enables the holder to perform the functions or obtain the access provided by one or more of the cards defined above, *i.e.*, Credit Cards, Charge Cards, and Debit Cards.

18.    "Truncation" means the removing, hiding or disguising of account numbers and/or expiration dates from Plastic Payment Card receipts issued at the POS.

19.    "Retailer" means merchant.

20.    "Bank Card Acquiring Institution" or "Bank Card Merchant Institution" means a bank or other financial institution member of Visa and/or MasterCard that establishes agreements with retailers who will accept Visa and/or MasterCard branded Plastic Payment Cards as payment for the goods and services they sell.

21.    "Bank Card Issuing Institution" means a bank or other financial institution member of Visa and/or MasterCard that issues Visa and/or MasterCard branded Plastic Payment Cards to consumers for their use as access devices.

22.    An "Independent Sales Organization" (ISO), also called a Member Service Provider (MSP) is a company (not a MasterCard or Visa member) that is contracted by members to administer merchant and/or cardholder servicing.

23.    A "Third Party Processor" is an institution acting under contract with Plastic Payment Card issuers or acquirers that process Plastic Payment Cards, among other electronic transactions.

24.    "Device" means any machine used to accept Plastic Payment Cards at the POS and to print receipts to be given to consumers.

25.    A "Class A Device" is a machine Defendant first put into use after January 1, 2005 at the POS to effect transactions by charging consumers' Plastic Payment Cards for goods or services and then generating electronically printed receipts.

26.    A "Class B Device" is a machine Defendant first put into use before January 1, 2005 and continued to use after December 4, 2006 at the POS to effect transactions by charging

consumers' Plastic Payment Cards for goods or services and then generating electronically printed receipts.

**Instructions**

A.    Unless otherwise specified, the information requested is that which is applicable (*e.g.*, had impact or effect, or in the case of documents, was effective, prepared, written, sent, dated, received or utilized at any time) at any time through and including the time of trial in this matter.

B.    Unless otherwise specified, the information requested is limited to the United States (as defined above).  For example, a request for the number of all plastic payment card receipts issued at the POS is presumed to be confined to those that occurred at POS locations in the United States.

C.    These requests include information that now is or ever was in the knowledge of your present or former employees, representatives, agents, and persons consulted concerning any factual matters or matters or opinions, or is otherwise available to you as either a practical matter or as a matter of law.

D.    These requests shall be deemed to be continuing so as to require prompt, further, and supplemental production if you discover additional information or documents that should have been produced in response to these requests after the time of initial production or that come to exist after the time of initial production.

E.    For purposes of reading, interpreting or construing the scope of these requests, the terms used shall be given their most expansive and inclusive interpretation.  This includes, without limitation, the following:

1.    Construing the terms "and" and "or" in the disjunctive or conjunctive, as necessary, to make the interrogatory more inclusive;

2.    Construing the singular form of any word to include the plural and the plural form to include the singular;

1

2        3.    Construing the past tense of the verb to include the present tense and

3the present tense to include the past tense;

4        4.    Construing the masculine form to include the feminine form, and

5        5.    Construing the term "date" to mean the exact day, month and year if

6 ascertainable; if not, the closest approximation that can be made by means of relationship to

7 other events, locations, or matters.

8        F.    These requests include all requested documents that now are, or ever were, in

9 your possession, custody, or control. This request also includes all requested documents that

10 now are, or ever were, in the possession, custody or control of your employees, agents,

11 representatives, officers, directors, or any other person acting or purporting to act on behalf of

12 you, as well as persons consulted concerning any factual matters or matters or opinions, or

13 otherwise available to you as either a practical matter or as a matter of law, including without

 limitation all attorneys and accountants utilized by you.

14        G.    If any document was, but no longer is, in your possession, custody, or control,

15 identify the document with particularity -- stating the nature of the document (*e.g.,* letter,

16 memorandum, notes), the date on which it was prepared, the date it was sent, the date it was

17 received, the identity and title of the person or persons sending it, the identity and title of the

18 person or persons to whom it was sent (*i.e.,* all recipients, including "cc's" and subsequently

19 routed persons), a statement as to whom each such person represented or purportedly

20 represented, the subject matter of the document, and a description of the place where the

21 document is presently kept or, if it has been lost, destroyed, transferred, or otherwise disposed

22 of, explain the circumstances surrounding disposition of the document and the date it

23 occurred.

24        H.    With respect to any document falling within the demands and as to which you

25 are unwilling to produce or are withholding for any reason including, but not limited to,

 unavailability or privilege, you are requested to produce at the time and place described above

26

27

28

a complete list identifying each such document, together with each and every reason for the non-production of each and every document.

        1.     Each document should be identified by stating the nature of the document (*e.g.*, letter, memorandum, notes), the date on which it was prepared, the date it was sent, the date it was received, the identity and title of the person or persons sending it, the identity and title of the person or persons to whom it was sent (*i.e.*, all recipients, including "cc's" and subsequently routed persons), a statement as to whom each such person represented or purportedly represented, the subject matter of the document, and a description of the place where the document is presently kept.

        2.     The list identifying any such document shall also include: (a) each privilege claimed, and (b) a precise statement of the facts upon which the claim of privilege is based.

        I.     If any objection is made to any document request, all documents covered by that request but not subject to the objection should be produced.

        J.     Documents should be produced as they are kept in the usual course of business, and should include a copy of the file folder in which they originated. Documents that in their original condition were stapled, clipped, or otherwise fastened together shall be produced in such form or produced with a notation specifying the original binding condition of the documents, in a form agreeable to plaintiffs. Documents attached to each other or contained in a file, folder, similar binder, file drawer, physical location (*e.g.*, "Person X's office") should not be separated and should be produced in a manner that demonstrates the relationship of the documents (and various files) to one another as kept in the normal course of business.

        K.     For each document, file, or larger grouping of files (as appropriate), you should identify the person in whose possession particular documents or files were kept in the ordinary course of business at the time that the documents were either prepared, generated, received, reviewed or utilized in the ordinary course of business. In the event that certain documents

have been stored in archives or other storage locations, you should provide a list or index that adequately identifies the original custodian of the documents.

L.     Where it is impossible to produce particular documents as they were kept in the ordinary course of business, an explanation for the impossibility to so provide those particular documents in such a manner shall be provided, and all such documents shall be marked or otherwise identified with the numbers of the specific production request(s) to which each such document is affiliated.

M.     All documents that respond, in whole or in part, to any part of any request for documents shall be produced in their entirety, including all attachments and enclosures, as they are kept in the ordinary course of business. If any information specified in this request appears on any page of any document, all pages of the document shall be produced in response to this request. Only one copy should be produced of documents that are identical, indicating the person or group of persons in whose files the identical copies of the document were located in the ordinary course of business. Moreover, documents that bear additional endorsements, handwritten notations, have notes attached to the copy, or differ in any way from the original are not to be considered "identical" and are therefore considered separate documents.

N.     Any document demand that requests the production of "documents sufficient to show" requires you to determine the smallest amount of documents necessary to be shown to provide all the information requested and which you are willing to certify as accurate and complete in response to the request. If the information is available in electronically stored data in machine-readable format, then production in that manner, in the format described in the following paragraph, is deemed to be the "documents sufficient to show."

O.     In producing documents consisting of electronically stored data in machine-readable form in response to any request, provide such data in a form that does not require specialized or proprietary hardware or software (except where approved in advance by plaintiffs). Data files should be produced in EXCEL format, or in sequential format, also

known as ASCII files or flat files, with the data fields in fixed-column positions. For each data file provided, the following information should be included: a record layout, and a short narrative description of the contents of the file that includes a description of the origin of the data, the custodian of the data in the ordinary course of business, and the individuals that participated in the compilation of the data file. For each data file provided, the following information should also be included: translation of any coded fields, the number of records in the file, and a printout of the first 100 records (and last 10 records, including totals) in report format. A record layout must contain the following pieces of information: name of the field, starting and ending position on the record, length of the field, and characteristics of the field (*e.g.*, packed decimal, zoned decimal, alphanumeric). The magnetic media should be CD-ROM, and must include a text file explaining the contents and format of the data disks. Do not convert the data between formats. Compression utilities are acceptable so long as the utility is provided and such provision does not violate licensing or copyright laws.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

All documents identifying all retail locations operated by Defendant within the United States after January 1, 2005.

**REQUEST FOR PRODUCTION NO. 2:**

All documents identifying CLASS A DEVICES, specifying the stores identified in Request for Production No. 1 in which they were used.

**REQUEST FOR PRODUCTION NO. 3:**

All documents identifying CLASS B DEVICES, specifying the stores identified in Request for Production No. 1 in which they were used.

**REQUEST FOR PRODUCTION NO. 4:**

All documents concerning the total number of receipts that were printed after January 1, 2005 from CLASS A DEVICES.

**REQUEST FOR PRODUCTION NO. 5:**

All documents concerning the total number of receipts that were printed after December 4, 2006 from CLASS B DEVICES.

**REQUEST FOR PRODUCTION NO. 6:**

For all CLASS A DEVICES, all documents concerning customer receipts printed with more than the last 5 digits of customers' plastic payment card account number and with the expiration dates of the plastic payment cards.

**REQUEST FOR PRODUCTION NO. 7:**

For all CLASS B DEVICES, all documents concerning customer receipts printed with more than the last 5 digits of customers' plastic payment card account number and with the expiration dates of the plastic payment cards.

**REQUEST FOR PRODUCTION NO. 8:**

For all CLASS A DEVICES, all documents concerning customer receipts printed with more than the last 5 digits of customers' plastic payment card account numbers but not the expiration dates of the plastic payment cards.

**REQUEST FOR PRODUCTION NO. 9:**

For all CLASS B DEVICES, all documents concerning customer receipts printed with more than the last 5 digits of customers' plastic payment card account numbers but not the expiration dates of the plastic payment cards.

**REQUEST FOR PRODUCTION NO. 10:**

For all CLASS A DEVICES, all documents concerning customer receipts printed with 5 or less digits of customers' plastic payment card account number but with the expiration date of the plastic payment card.

**REQUEST FOR PRODUCTION NO. 11:**

For all CLASS B DEVICES, all documents concerning customer receipts printed with 5 or less digits of customers' plastic payment card account numbers but with the expiration dates of the plastic payment cards.

**REQUEST FOR PRODUCTION NO 12:**

All documents concerning the date and means by which Defendant first learned of the existence of the Fair and Accurate Credit Transaction Act (FACTA).

**REQUEST FOR PRODUCTION NO 13:**

For the period January 1, 2005 to the present, all documents concerning the date and means by which Defendant first learned it printed a receipt that contained more than the last 5 digits of a customer's plastic payment card account number and/or the expiration date of the plastic payment card.

**REQUEST FOR PRODUCTION NO. 14:**

For the period December 4, 2003 to the present, all documents concerning any steps Defendant took to stop printing more than the last 5 digits of customers' plastic payment card account numbers and/or the expiration dates of the plastic payment cards.

**REQUEST FOR PRODUCTION NO. 15:**

For the period December 4, 2003 to the present, all documents concerning complaints customers made to Defendant that they became victims of credit card fraud or identity theft because they used a plastic payment card at one of Defendant's retail locations to effect a transaction.

**REQUEST FOR PRODUCTION NO. 16:**

All documents concerning any investigation taken by Defendant in response to reports of credit card fraud or identity theft referenced in Request for Production No. 15.

**REQUEST FOR PRODUCTION NO. 17:**

All documents that support the contention that Defendant no longer prints receipts which contain more than the last 5 digits of the customer's plastic payment card account number and/or the expiration date.

**REQUEST FOR PRODUCTION NO. 18:**

All documents that support the contention that Defendant did not violate 15 U.S.C. § 1681(c)(g).

**REQUEST FOR PRODUCTION NO. 19:**

All documents that support the contention that Defendant did not act willfully in printing receipts that contained more than the last 5 digits of customers' plastic payment card account numbers and/or the expiration dates.

**REQUEST FOR PRODUCTION NO. 20:**

All documents concerning Defendant's corporate form, structure and/or governance, including without limitation Defendant's articles of incorporation, bylaws, operating regulations, resolutions of Defendant's board of directors and organizational charts (for the Defendant's entire organization).

**REQUEST FOR PRODUCTION NO. 21:**

For the period December 4, 2003 to the present, all agendas, board presentations and minutes for, and all documents sufficient to show attendees at, all meetings of Defendant's board of directors and Defendant's executive committee, as well as any meetings or working sessions of committees or subcommittees concerning the Defendant's policies and actions relating to the truncation of data on plastic payment cards.

**REQUEST FOR PRODUCTION NO. 22**

For the period December 4, 2003 to the present, all documents concerning who is or has been responsible and given authority by Defendant to ensure that Defendant complies with FACTA and comparable state laws, or any other rule or policy requiring the truncation of plastic payment card cardholder account numbers and/or expiration date.

**REQUEST FOR PRODUCTION NO. 23:**

For the period December 4, 2003 to the present, all documents concerning who is or has been responsible and given authority by Defendant to represent the Defendant in interactions with any of the following: Visa, Mastercard, Discover, American Express, Bravo, Diner's Club, Carte Blanche, Bank Card Acquiring Institutions, Third Party Processors, Independent Sales Organizations, software and/or hardware vendors, or any other comparable

party involved in any way with Defendant in the acceptance of plastic payment cards at the POS to effect transactions.

**REQUEST FOR PRODUCTION NO. 24:**

For the period December 4, 2003 to the present, all documents concerning corporate policy and action taken over truncation, including, without limitation, communications both within the corporate hierarchy, communications reaching out to outside parties, and all documents concerning the development, adoption, implementation, installation, upgrading, maintenance and servicing of hardware and software used in the devices issuing receipts.

**REQUEST FOR PRODUCTION NO. 25:**

For the period December 4, 2003 to the present, all documents that identify, relate or refer to any trade associations of which Defendant is or has been a member.

**REQUEST FOR PRODUCTION NO. 26:**

Documents relating to all communications to or from Defendant and the trade associations identified in Request for Production No. 25. regarding the truncation of data on plastic payment cards.

**REQUEST FOR PRODUCTION NO. 27:**

For the period December 4, 2003 to the present, all communications concerning truncation that Defendant had with any Bank Card Acquiring Institution, Third Party Processor, Independent Sales Organization, software and/or hardware vendor. or any other comparable party involved in any way with Defendant in the acceptance of plastic payment cards at the POS to effect transactions.

**REQUEST FOR PRODUCTION NO. 28:**

For the period December 4, 2003 to the present, all documents relating to all communications Defendant had with Visa. Mastercard, Discover, American Express, Bravo, Diner's Club. and Carte Blanche concerning truncation.

**REQUEST FOR PRODUCTION NO. 29**

For the period December 4, 2003 to the present, all documents concerning any penalties or fines VISA or Mastercard levied against Defendant for not properly truncating printed receipts.

**REQUEST FOR PRODUCTION NO. 30**

For the period December 4, 2003 to the present, all communications Defendant had with the Federal Trade Commission or any other federal or state entity concerning truncation.

**REQUEST FOR PRODUCTION NO. 31:**

For the period December 4, 2003 to the present, all documents concerning any customer complaints, penalties or fines Defendant received from the Federal Trade Commission or any other state or federal body concerning to truncation.

**REQUEST FOR PRODUCTION NO. 32:**

If Defendant contends that Plaintiff is not an adequate class representative, all documents that support this contention.

**REQUEST FOR PRODUCTION NO. 33:**

For each of Defendant's responses to Plaintiff's Requests for Admissions that is not an unqualified admission, all documents upon which Defendant bases its response.

**REQUEST FOR PRODUCTION NO. 34:**

For the period December 4, 2003 to the present, all documents concerning any contracts entered into by Defendant with any of the following: Visa, MasterCard, Discover, American Express, Bravo, Diner's Club, Carte Blanche, Bank Card Acquiring Institutions, Third Party Processors, Independent Sales Organizations, software and/or hardware vendors, or any other comparable party involved in any way with Defendant in the acceptance of plastic payment cards at the POS to effect transactions.

1

2  **REQUEST FOR PRODUCTION NO. 35:**

3        For the period December 4, 2003 to the present, all documents concerning truncation

4  of customers' plastic payment card account numbers and/or the expiration dates of the plastic

5  payment cards.

6  Dated: May 24, 2007                   **KELLER GROVER LLP**

7

8                      By: _____
                               Eric A. Grover

9

10                           Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Eric A. Grover, Esq. (CSB# 136080)
Jade Butman, Esq. (CSB# 235920)
**KELLER GROVER LLP**
425 Second Street, Suite 500
San Francisco, California 94107
Tel. (415) 543-1305
eagrover@kellergrover.com

Mark R. Thierman, Esq. (CSB# 72913)
**THIERMAN LAW FIRM**
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500
laborlawyer@pacbell.net

Scott A. Miller (CSB# 230322)
**LAW OFFICES OF SCOTT A. MILLER, A.P.C.**
16133 Ventura Blvd., Suite 1200
Encino, California 91436
Tel. (818) 788-8081
millaw@sbcglobal.net

Steven L. Miller (CSB# 106023)
**STEVEN L. MILLER, PLC**
16133 Ventura Blvd., Suite 1200
Encino, California 91436
Tel. (818) 986-8900
stevenlmiller@sbcglobal.net

**Attorneys for Plaintiff**
Zachary Hile

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACHARY HILE, on behalf of himself and all others similarly situated. | Case No.: C 07-00738 JSW |
| | Complaint Filed: February 2, 2007 |
|     Plaintiff, | CLASS ACTION |
|     v. | **PLAINTIFF'S REQUESTS FOR ADMISSION [SET ONE]** |
| MAX RAVE, LLC and G+G RETAIL, INC., | |
|     Defendants. | |

**EXHIBIT "E"**

1

2   **PROPOUNDING PARTY**: Plaintiff Zachary Hile

3   **RESPONDING PARTY**:    Defendant Max Rave, LLC

4   **SET NUMBER**:    One

5

6   **PLEASE TAKE NOTICE THAT** pursuant to Rule 36 of the Federal Code of Civil

7   Procedure, Plaintiff Zachary Hile requests that Defendant Max Rave, LLC respond to the

8   following Requests for Admission under oath and within thirty three (33) days after service of

9   this request.

10                              **Definitions**

11  The following terms and phrases shall be read, construed and interpreted as follows:

12      1.    "Plastic Payment Card" means a device which enables the holder to perform

13  the functions or obtain the access provided by various credit vehicles, such as credit cards,

14  charge cards, and debit cards.

15      2.    A "Class A Device" is a machine Defendant used/uses at the POS to effect

16  transactions by charging customers' Plastic Payment Cards for goods or services and then

17  generating electronically printed receipts that Defendant first put into use on or after January

18  1, 2005.

19      3.    A "Class B Device" is a machine Defendant used/uses at the POS to effect

20  transactions by charging customers' Plastic Payment Cards for goods or services and then

21  generating electronically printed receipts that Defendant first put into use before January 1,

22  2005 and continued to use after December 4, 2006.

23

24  //

25  //

26  //

27

28

Plaintiff's Requests for Admission [Set One]          Case No.: C 07-00738 JSW

2