# EXHIBIT C

# (PART 2 OF 4)

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that Plaintiff's receipt, attached to this request as Exhibit A, is a true and correct copy of a genuine receipt from one of Defendant's stores.

**REQUEST FOR ADMISSION NO. 2:**

Admit that Plaintiff's Exhibit A receipt is dated after December 4, 2006.

**REQUEST FOR ADMISSION NO. 3:**

Admit that Defendant printed the expiration date from Plaintiff's Plastic Payment Card on Plaintiff's Exhibit A receipt.

**REQUEST FOR ADMISSION NO. 7:**

Admit that Defendant printed more than the last five (5) digits of customers' Plastic Payment Card account numbers on Class A Devices.

**REQUEST FOR ADMISSION NO. 8:**

Admit that Defendant printed more than the last five (5) digits of customers' Plastic Payment Card account numbers on Class B Devices.

**REQUEST FOR ADMISSION NO. 9:**

Admit that Defendant printed the expiration date of customers' Plastic Payment Cards on Class A Devices.

**REQUEST FOR ADMISSION NO. 10:**

Admit that Defendant printed the expiration date of customers' Plastic Payment Cards on Class B Devices.

//

//

1

2

3 Dated: May 24, 2007                    KELLER GROVER LLP

4

5                                By:    _____

6                                       Eric A. Grover

7                                       Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | Eric A. Grover, Esq. (CSB# 136080)
Jade Butman, Esq. (CSB# 235920)
2 | **KELLER GROVER LLP**
425 Second Street, Suite 500
3 | San Francisco, California 94107
Tel. (415) 543-1305
4 | eagrover@kellergrover.com

5

6 | Mark R. Thierman, Esq. (CSB# 72913)
**THIERMAN LAW FIRM**
7 | 7287 Lakeside Drive
Reno, Nevada 89511
8 | Tel. (775) 284-1500
laborlawyer@pacbell.net

9

10 | Scott A. Miller (CSB# 230322)
**LAW OFFICES OF SCOTT A. MILLER, A.P.C.**
11 | 16133 Ventura Blvd., Suite 1200
Encino, California 91436
12 | Tel. (818) 788-8081
millaw@sbcglobal.net

13

14 | Steven L. Miller (CSB# 106023)
**STEVEN L. MILLER, PLC**
15 | 16133 Ventura Blvd., Suite 1200
Encino, California 91436
16 | Tel. (818) 986-8900
stevenlmiller@sbcglobal.net

17

18 | **Attorneys for Plaintiff**
Zachary Hile

19

**UNITED STATES DISTRICT COURT**

20

**NORTHERN DISTRICT OF CALIFORNIA**

21

22 | ZACHARY HILE, on behalf of himself and all others similarly situated,  ) Case No.: C 07-00738 JSW
   )
23 |            Plaintiff,  ) Complaint Filed: February 2, 2007
   )
24 |     v.  ) <u>CLASS ACTION</u>
   )
25 |    ) **PLAINTIFF'S FIRST SET OF**
MAX RAVE, LLC and G+G RETAIL, INC.,  ) **INTERROGATORIES TO**
26 |    ) **DEFENDANT**
   )
27 |            Defendants.  )

28

---

**EXHIBIT "F"**

1   **PROPOUNDING PARTY:** Plaintiff Zachary Hile

2   **RESPONDING PARTY:**    Defendant Max Rave, LLC

3   **SET NUMBER:**          One

4

5       **PLEASE TAKE NOTICE THAT** pursuant to Rule 33 of the Federal Code of Civil

6   Procedure, Zachary Hile hereby propounds his First Set of Interrogatories to Defendant, to

7   which Defendant must respond within thirty-five (35) days of this request.

8                               **Definitions**

9       The following terms and phrases shall be read, construed and interpreted as follows:

10

11      1.      "Communication" means the transmittal of information and includes, but is not

12  limited to, any formal or informal disclosure, contact, discussion or any other kind of written,

13  oral or electronic transfer or exchange of information, facts, ideas or opinions, between two or

14  more persons, however made.   This term includes, but is not limited to, all telephone

15  conversations, face to face conversations, meetings, visits, conferences, internal and external

16  discussions, and documents (including without limitation, electronic mail, *i.e.*, "e-mail").

17

18      2.      "Concerning" means anything directly or indirectly relating to, referring to,

19  alluding to, responding to, connected with, commenting on, in respect of, about, regarding,

20  discussing, showing, describing, mentioning, analyzing, studying, reflecting, evidencing,

21  containing or constituting, in whole or in part.

22      3.      The terms "document" or "documents" are used herein in the broadest sense

23  permissible under Fed.R.Civ.P. 34(a), and includes, without limitation, any "writing" as that

24  term is defined in Rule 1001 of the Federal Rules of Evidence, and any computer, mechanical,

25  photographic, printed, magnetic, audio, video and other electronic recordings or records and/or

26  other tangible records and forms of recorded information, however produced or reproduced,

27

28

including but not limited to: all letters, correspondence, inter-office communications, electronic correspondence such as "e-mail," and other communications recorded in any form or medium; records, memoranda, minutes, notes, telegrams, summaries, computer printouts or disks or any information retained in a computer database which can be reproduced; records of telephone calls and meetings, calendar and diary entries, notebooks, schedules, reports, studies, appraisals, analyses, lists, surveys, deeds; budgets, financial statements, ledgers, returns, financial projections, comparison between budgets, projections and actual results, working papers, financial calculations and other records of financial matters and commercial transactions; contracts, agreements, legal and accounting opinions, analyses and research; periodicals, charts, diagrams, graphs, and other drawings; interviews, speeches, transcripts, press releases, advertisements, brochures and books of account; plans and specifications; publications; photocopies, microfilm, and other copies or reproduction, and computer printouts; all drafts, outlines and proposals of any such documents (whether or not actually used), and all non-identical copies (whether different from the original by reason of notations made on such copies or otherwise) are separate documents within the meaning of the term. The term also includes information stored in, or accessible through, computer or other information retrieval systems, together with instructions and all materials necessary to retrieve, use or interpret such data.

4.    "Person" includes any natural person, corporate entity, partnership, association, joint venture, trust, government unit, agency, branch, commission or office or any subdivision or department thereof, including, but not limited to, all officials, representatives and employees of any government unit, agency, branch, commission or office, or any subdivision or department thereof.

5.    "United States" means the fifty states, the District of Columbia, and all territories, dependencies, or possessions of the United States of America.

6.    "You," "your" and/or "Defendant" means your corporate entity.

7.    "POS" means point of sale.

8.    "Transaction" means a POS retail transaction for the purchase of goods or services.

9.    "Circumstances" means condition, fact or event accompanying or leading up to causes of and/or negotiations or discussions over.

10.    "Set" means fixed, adopted, determined and/or established.

11.    "Policy" means any formal or informal, oral or written, guideline, procedure, plan, practice, program, strategy or guideline.

12.    "Rule" means any by-law, regulation (including without limitation any operating regulation), policy or guideline.

13.    "Bank" means any financial institution that issues or acquires Visa and/or MasterCard products as a member of Visa and/or MasterCard.

14.    "Credit Card" is an access device which enables the holder to effect transactions on credit for goods and services purchased, which are paid on behalf of the holder by the issuer of such device. The card also allows holders to obtain cash with credit extended by the issuer.  Examples of credit cards are the Visa and MasterCard credit cards issued by members of bank card associations, the Discover, Bravo and Private Issue cards issued by Morgan Stanley, Dean Witter & Co., and the Optima cards issued by American Express.

15.    "Charge Card" or "Travel and Entertainment Card" or "T&E Card" is an access device which enables the holder to purchase goods and services on credit to be paid on behalf

---

Plaintiff's First Set of Interrogatories to Defendants

4

Case No.: CV-00736 MMC

of the holder by the issuer of such device.  Examples of charge cards, travel and entertainment cards or T&E cards are the American Express, Green, Gold and Platinum cards as well as the Diners Club and Carte Blanche cards issued by Citibank.

16.    "Debit Card" is an access device which enables the holder, among other things, to effect a cash withdrawal from the holder's bank account at an ATM or make a purchase at a point of sale which is debited against one or more of the holder's bank accounts.

17.    "Plastic Payment Card" means a device which enables the holder to perform the functions or obtain the access provided by one or more of the cards defined above, *i.e.*, Credit Cards, Charge Cards, and Debit Cards.

18.    "Truncation" means the removing, hiding or disguising of account numbers and/or expiration dates from Plastic Payment Card receipts issued at the point of sale.

19.    "Retailer" means merchant.

20.    "Bank Card Acquiring Institution" or "Bank Card Merchant Institution" means a bank or other financial institution member of Visa and/or MasterCard that establishes agreements with retailers who will accept Visa and/or MasterCard branded Plastic Payment Cards as payment for the goods and services they sell.

21.    "Bank Card Issuing Institution" means a bank or other financial institution member of Visa and/or MasterCard that issues Visa and/or MasterCard branded Plastic Payment Cards to consumers for their use as access devices.

22.    An "Independent Sales Organization" (ISO), also called a Member Service Provider (MSP) is a company (not a MasterCard or Visa member) that is contracted by members to administer merchant and/or cardholder servicing.

23.    A "Third Party Processor" is an institution acting under contract with Plastic

1  Payment Card issuers or acquirers that process Plastic Payment Cards, among other electronic

2  transactions.

3      24.    "Device" means any machine used to accept Plastic Payment Cards at the POS

4  and to print receipts to be given to consumers.

5

6      25.    A "Class A Device" is a machine Defendant first put into use after January 1,

7  2005 at the POS to effect transactions by charging consumers' Plastic Payment Cards for goods

8  or services and then generating electronically printed receipts.

9      26.    A "Class B Device" is a machine Defendant first put into use before January 1,

10  2005 and continued to use after December 4, 2006 at the POS to effect transactions by charging

11  consumers' Plastic Payment Cards for goods or services and then generating electronically

12  printed receipts.

13                              **Instructions**

14

15      A.    Unless otherwise specified, the information requested is that which is

16  applicable (*e.g.*, had impact or effect, or in the case of documents, was effective, prepared,

17  written, sent, dated, received or utilized at any time) at any time through and including the

18  time of trial in this matter.

19      B.    Unless otherwise specified, the information requested is limited to the United

20  States (as defined above). For example, a request for the number of all plastic payment card

21  receipts issued at the POS is presumed to be confined to those that occurred at POS locations

22  in the United States.

23

24      C.    These requests include information that now is or ever was in the knowledge of

25  your present or former employees, representatives, agents, and persons consulted concerning

26  any factual matters or matters or opinions, or is otherwise available to you as either a practical

27  matter or as a matter of law.

28

---

Plaintiff's First Set of Interrogatories to Defendants          Case No.: CV-00736 MMC

6

D.     These requests shall be deemed to be continuing so as to require prompt, further, and supplemental production if you discover additional information or documents that should have been produced in response to these requests after the time of initial production or that come to exist after the time of initial production.

E.     For purposes of reading, interpreting or construing the scope of these requests, the terms used shall be given their most expansive and inclusive interpretation. This includes, without limitation, the following:

1.     Construing the terms "and" and "or" in the disjunctive or conjunctive, as necessary, to make the interrogatory more inclusive;

2.     Construing the singular form of any word to include the plural and the plural form to include the singular;

3.     Construing the past tense of the verb to include the present tense and the present tense to include the past tense;

4.     Construing the masculine form to include the feminine form, and

5.     Construing the term "date" to mean the exact day, month and year if ascertainable; if not, the closest approximation that can be made by means of relationship to other events, locations, or matters.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Please identify all retail stores operated by Defendant within the United States at any time after January 1, 2005, including the physical address of the stores and any other designation (*e.g.*, store number) used by Defendant to identify to each store.

---

**INTERROGATORY NO. 2:**

Identify all CLASS A DEVICES used in the stores identified in Interrogatory No. 1. In identifying the CLASS A DEVICES, state the device manufacturer, date of manufacture and model, the serial number, and the store identification as defined in Interrogatory No. 1. If no serial number is available for a device, Defendant shall identify each device by a uniformly designated numbering system of Defendant's choosing.

**INTERROGATORY NO. 3:**

Identify all CLASS B DEVICES used in the stores identified in Interrogatory No. 1. In identifying the CLASS B DEVICES, state the device manufacturer, date of manufacture and model, the serial number, and the store identification as defined in Interrogatory No. 1. If no serial number is available for a device, Defendant shall identify each device by a uniformly designated numbering system of Defendant's choosing.

**INTERROGATORY NO. 4:**

For all CLASS A DEVICES identified in response to Interrogatory No. 2, state the aggregate number of receipts provided to cardholders that were printed after January 1, 2005.

**INTERROGATORY NO. 5:**

For all CLASS B DEVICES identified in response to Interrogatory No. 3, state the aggregate number of receipts provided to cardholders that were printed after December 4, 2006.

**INTERROGATORY NO. 6:**

Of the aggregate number of CLASS A DEVICE receipts identified in response to Interrogatory Number No. 4, state the total number of receipts provided to cardholders that

---

when printed showed more than the last five (5) digits of the Plastic Payment Card account number <u>and</u> the expiration date of the Plastic Payment Card.

**INTERROGATORY NO. 7:**

Of the aggregate number of CLASS B DEVICE receipts identified in response to Interrogatory Number No. 5, state the total number of receipts provided to cardholders that when printed showed more than the last five (5) digits of the Plastic Payment Card account number <u>and</u> the expiration date of the Plastic Payment Card.

**INTERROGATORY NO. 8:**

Of the aggregate number of CLASS A DEVICE receipts identified in response to Interrogatory Number No. 4, state the total number of receipts provided to cardholders that when printed showed more than the last five (5) digits of the Plastic Payment Card account number <u>and</u> did not show the expiration date of the Plastic Payment Card.

**INTERROGATORY NO. 9:**

Of the aggregate number of CLASS B DEVICE receipts identified in response to Interrogatory Number No. 5, state the total number of receipts provided to cardholders that when printed showed more than the last five (5) digits of the Plastic Payment Card account number <u>and</u> did not show the expiration date of the Plastic Payment Card.

**INTERROGATORY NO. 10:**

Of the aggregate number of CLASS A DEVICE receipts identified in response to Interrogatory Number No. 4, state the total number of receipts provided to cardholders that when printed showed five (5) digits of the Plastic Payment Card account number or less <u>but</u> did show the expiration date of the Plastic Payment Card.

**INTERROGATORY NO. 11:**

Of the aggregate number of CLASS B DEVICE receipts identified in response to Interrogatory Number No. 5, state the total number of receipts provided to cardholders that when printed showed five (5) digits of the Plastic Payment Card account number or less but did show the expiration date of the Plastic Payment Card.

**INTERROGATORY NO. 12:**

State the date and means after December 4, 2003 by which Defendant first learned of the existence of any of the Truncation requirements of 15 U.S.C. § 1681(c)(g).

**INTERROGATORY NO. 13:**

State the date and means after January 1, 2005 by which Defendant first learned it printed a receipt provided to a cardholder that contained more the last five (5) digits of a Plastic Payment Card account number or the expiration date of a Plastic Payment Card.

**INTERROGATORY NO. 14:**

For the period December 4, 2003 to the present, state in detail the complete universe of actions, if any, that Defendant took to discontinue the printing of any cardholder receipt that contained more the last five (5) digits of a Plastic Payment Card account number or the expiration date of a Plastic Payment Card. In describing Defendant's actions, identify the people responsible for taking the actions by name, address, telephone number, title (if applicable), and dates of employment (if applicable) and then specify the particular actions taken by each person.

**INTERROGATORY NO. 15:**

If Defendant contends that no CLASS A or CLASS B DEVICES currently print receipts that are given to cardholders that show more than the last five (5) digits or expiration

1  date of the Plastic Payment Card account number, identify the date on which Defendant last

2  printed a receipt on each class of device that was given to a cardholder that showed more than

3  the last five (5) digits of the Plastic Payment Card account number.

**INTERROGATORY NO. 16:**

If Defendant contends that it did not ever violate 15 U.S.C. § 1681(c)(g), state all the

facts upon which this contention is based.

**INTERROGATORY NO. 17:**

If Defendant contends that it did not act willfully in giving cardholders receipts that

contained more than the last five (5) digits or the expiration date of the Plastic Payment Card

account number, state all facts upon which this contention is based.

**INTERROGATORY NO. 18:**

If Defendant contends that it did not act willfully in giving cardholders receipts that

contained the expiration date of the Plastic Payment Card account number, state all facts upon

which this contention is based.

**INTERROGATORY NO. 19:**

For the period December 4, 2003 to the present, identify all persons given the

responsibility and authority to ensure that Defendant complies with the Fair and Accurate

Credit Transactions Act ("FACTA") and comparable state laws, such as California Civil Code

§ 1747.09. For each person, include the name, address, telephone number, title (if applicable),

and dates of employment (if applicable).

**INTERROGATORY NO. 20:**

For the period December 4, 2003 through the present, describe all Communications

Defendant has had with anyone regarding the Truncation of Plastic Payment Card account

numbers and/or expiration dates from printed receipts issued at the POS to be given to cardholders. In describing the Communications, state the source of the Communication, by whom the Communication was received, the form of the Communication, the substance of the Communication and the date of the Communication.

**INTERROGATORY NO. 21:**

Identify the Bank Card Acquiring Institution, Third Party Processor, Independent Sales Organization, software and/or hardware vendor, or any other comparable party involved in any way with Defendant in the acceptance of Plastic Payment Cards at the POS to effect transactions.

**INTERROGATORY NO. 22:**

Identify all Communications Defendant had with the entities referenced in Interrogatory No. 21 regarding the Truncation of Plastic Payment Card account numbers and/or expiration dates from printed receipts issued at the POS. In describing the Communications, state the source of the Communication, by whom the Communication was received, the form of the Communication, the substance of the Communication and the date of the Communication.

**REQUEST FOR PRODUCTION NO. 23:**

Describe all Communications Defendant has with Visa, Mastercard, Discover, American Express, Bravo, Diner's Club, and Carte Blanche regarding the Truncation of Plastic Payment Card account numbers and/or expiration dates from printed receipts issued at the POS. In describing the Communications, state the source of the Communication, by whom the Communication was received, the form of the Communication, the substance of the Communication and the date of the Communication.

**INTERROGATORY NO. 24:**

For the period Dec. 4, 2003 to the present, please Please state whether Defendant has been subject to any penalties or fines by VISA or Mastercard for not properly truncating printed receipts that were provided to customers. As part of answering this interrogatory, state the date for every penalty or fine and the facts you understand Visa or Mastercard to have relied upon for each penalty or fine.

**INTERROGATORY NO. 25:**

For each of Defendant's responses to Plaintiff's Request for Admissions that is not an unqualified admission, state the number of the request and all facts upon which Defendant based its response, including the identity of the persons who have knowledge of the facts set forth.

Dated: May 24, 2007                              KELLER GROVER LLP


By: _EAGrover_
         Eric A. Grover
         Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## Northern District of California

|  |  |
|---|---|
| Hile, | 07-00738 JSW MED |
| Plaintiff(s), | **Notice of Appointment of Mediator** |
| v. | |
| Max Rave, LLC, | |
| Defendant(s). | |

TO COUNSEL OF RECORD:

The court notifies the parties and counsel that the Mediator assigned to this case is:

**Jessica M. Notini**
Notini Mediation Services
1306 Summit Road
Lafayette, CA 94549
925-938-5011
notini@pacbell.net

Counsel shall familiarize themselves with the requirements of ADR L.R. 6 which governs the Mediation program. The mediator will schedule a joint phone conference with counsel under ADR L.R. 6-6 and will set the date of the mediation session within the deadlines set by ADR L.R. 6-4 or the court order referring this action to mediation. The court permits the mediator to charge each party its pro rata share of the cost of the phone conference.

**Notice of Appointment of Mediator**
07-00738 JSW MED                    - 1 -

**EXHIBIT G**

1    Counsel are reminded that the written mediation statements required by the ADR

2    L.R. 6-7 shall NOT be filed with the court.

3

4    Dated: June 6, 2007

5                                     RICHARD W. WIEKING
                                     Clerk
6                                     by:    Claudia M. Forehand

7

8                                     _____
                                     ADR Case Administrator
9                                     415-522-2059
                                     Claudia_Forehand@cand.uscourts.gov

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
**Northern District of California**

---

**Notice of Appointment of Mediator**
07-00738 JSW MED                    - 2 -

06-07-'07 15:18    FROM-KELLER GROVER LLP    4155437861    T-462  P02/11  U-047

~AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

ZACHARY HILE, on behalf of himself and all others
similarly situated,
                V.

MAX RAVE, LLC

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  C 07-00738 JSW

TO:   Visa USA, Inc.
       900 Metro Center Blvd
       Foster City, CA 94044

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION   Keller Grover, LLP<br>425 Second Street, Suite 500, San Francisco, CA 94107 | DATE AND TIME<br>7/9/2007 9:00 am |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Schedule A attached hereto.

| PLACE    Keller Grover, LLP<br>425 Second Street, Suite 500, San Francisco, CA 94107 | DATE AND TIME<br>6/28/2007 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>6/7/2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Jeffrey F. Keller, Keller Grover LLP, 425 Second Street, Suite 500, San Francisco, CA 94107.  (415) 543-1305

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

**EXHIBIT H**

06-07-'07 15:18  FROM-KELLER GROVER LLP        4155437861            T-462  P03/11  U-047

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|         | DATE | PLACE |
|---------|------|-------|
| SERVED  |      |       |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                  DATE

SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

1

**SCHEDULE A**

2  I.    **INSTRUCTIONS**

3       1.    In responding to these requests, you shall produce all responsive documents which are in

4             your possession, custody or control or in the possession, custody or control of your

5             predecessors, successors, parents, subsidiaries, divisions, or affiliates, or any of your

6             respective directors, officers, managing agents, agents, employees, attorneys, accountants,

7             or other representatives.  A document shall be deemed to be within your control if you have

8             the right to secure the document or a copy of the document from another person having

9             possession or custody of the document.

10

11      2.    Pursuant to the Federal Rules of Civil Procedure, you are to produce for inspection and

12            copying by plaintiffs original documents as they are kept in the usual course of business, or

13            you shall organize and label them to correspond with the categories in these requests.

14

15      3.    If any responsive document was, but is no longer in your possession or subject to your

16            control, state whether it is (a) missing or lost; (b) destroyed; (c) transferred voluntarily or

17            involuntarily to others; or (d) otherwise disposed of, and in each instance identify the name

18            and address of its current or last known custodian, and the circumstances surrounding such

19            disposition.

20      4.    If any document responsive to these requests is withheld under a claim of privilege or upon

21            any other ground, as to each such document, identify the privilege being asserted and

22            provide the following information in sufficient detail to permit the court to rule on your

23            claim:

24

25            a.    the date, author, primary addressee and secondary addressees or persons copied,

26

including the relationship of those persons to the client and/or author of the document;

    b.    a brief description sufficient to identify the type, subject matter and purpose of the document;

    c.    all persons to whom its contents have been disclosed; and

    d.    the party who is asserting the privilege.

5.    If a portion of any document responsive to these requests is withheld under claim of privilege pursuant to Instruction 4, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

6.    You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instructions 4 and 5 above) regardless of whether you consider the entire document to be relevant or responsive to the requests.

7.    The singular shall include the plural, and the disjunctive shall include the conjunctive, and vice versa.

8.    "And" shall include the term "or," and the term "or" shall include the term "and," such that each document request calls for the production of the greatest number of documents.

## II.    DEFINITIONS

The following terms and phrases shall be read, construed and interpreted as follows:

1.    "Communication" means the transmittal of information and includes, but is not limited to, any formal or informal disclosure, contact, discussion or any other kind of written, oral or electronic transfer or exchange of information, facts, ideas or opinions, between two or more persons, however made. This term includes, but is not limited to, all telephone conversations, face to face conversations,

Visa USA, Doc. Schedule A          - 2 -

1  meetings, visits, conferences, internal and external discussions, and documents (including without

2  limitation, electronic mail, i.e., "e-mail").

3      2.      "Concerning" means anything directly or indirectly relating to, referring to, alluding to,

4  responding to, connected with, commenting on, in respect of, about, regarding, discussing, showing,

5  describing, mentioning, analyzing, studying, reflecting, evidencing, containing or constituting, in whole or

6  in part.

7

8      3.      The terms "document" or "documents" are used herein in the broadest sense permissible

9  under Fed. R. Civ. P. 34(a), and includes, without limitation, any "writing" as that term is defined in Rule

10  1001 of the Federal Rules of Evidence, and any computer, mechanical, photographic, printed, magnetic,

11  audio, video and other electronic recordings or records and/or other tangible records and forms of

12  recorded information, however produced or reproduced, including but not limited to: all letters,

13  correspondence, inter-office communications, electronic correspondence such as "e-mail," and other

14  communications recorded in any form or medium; records, memoranda, minutes, notes, telegrams,

15  summaries, computer printouts or disks or any information retained in a computer database which can be

16  reproduced; records of telephone calls and meetings, calendar and diary entries, notebooks, schedules,

17  reports, studies, appraisals, analyses, lists, surveys, deeds; budgets, financial statements, ledgers, returns,

18  financial projections, comparison between budgets, projections and actual results, working papers,

19  financial calculations and other records of financial matters and commercial transactions; contracts,

20  agreements, legal and accounting opinions, analyses and research; periodicals, charts, diagrams, graphs,

21  and other drawings; interviews, speeches, transcripts, press releases, advertisements, brochures and books

22  of account; plans and specifications; publications; photocopies, microfilm, and other copies or

23  reproduction, and computer printouts; all drafts, outlines and proposals of any such documents (whether

24

25

26

Visa USA, Doc. Schedule A                  - 3 -

1  or not actually used), and all non-identical copies (whether different from the original by reason of

2  notations made on such copies or otherwise) are separate documents within the meaning of the term.  The

3  term also includes information stored in, or accessible through, computer or other information retrieval .

4  systems, together with instructions and all materials necessary to retrieve, use or interpret such data.

5      4.    "You," and or "your" means your business entity.

6

7      5.    "POS" means point of sale.

8      6.    "Transaction" means a POS retail transaction for the purchase of goods or services.

9      7.    "Policy" means any formal or informal, oral or written, guideline, procedure, plan, practice,

10  program, strategy or guideline.

11      8.    "Rule" means any by-law, regulation (including without limitation any operating

12  regulation), policy or guideline.

13      9.    "Plastic Payment Card" means a device which enables the holder to perform the functions

14

15  or obtain the access provided by credit cards, charge cards and debit cards.

16      10.    "Truncation" means the removing, hiding or disguising of account numbers and/or

17  expiration dates from plastic payment card receipts issued at the POS.

18      11.    "Retailer" means merchant.

19      12.    The "relevant time period" means from January 1, 2003 to present.

20  **III.    DOCUMENTS REQUESTED**

21

22  **Request No. 1:**

23      All documents concerning any communication you had with MAX RAVE, LLC, concerning the

24  truncation of account numbers and/or expiration dates from plastic payment card receipts issued at the

25  POS, during the relevant time period.

26

Visa USA, Doc. Schedule A                              - 4 -

1  **Request No. 2:**

2       All documents concerning any efforts you engaged in to educate retailers, the public, media and/or

3  consumers concerning truncation of account numbers and/or expiration dates from plastic payment card

4  receipts issued at the POS, during the relevant time period.

5  **Request No. 3:**

6       All documents concerning any rule or/and policy you have concerning the truncation of account

7  numbers and/or expiration dates from plastic payment card receipts issued at the point of sale, including,

8

9  but not limited to, the benefits of, the rationale and/reasons for truncation, during the relevant time period.

10 **Request No. 4:**

11      All documents concerning any penalties or fines You levied as a consequence of [insert

12 Defendant]'s failure to properly truncate account numbers and/or expiration dates from plastic payment

13

14 card receipts issued at the point of sale, during the relevant time period.

15 **Request No. 5:**

16      All documents concerning 15 U.S.C. § 1681(c)(g), during the relevant time period.

17

18

19

20

21

22

23

24

25

26

Visa USA, Doc. Schedule A                    - 5 -

1          **PROOF OF SERVICE**

2          I, Stephanie Shattuck, am employed in the County of San Francisco, State of California. I

3    am over the age of eighteen and not a party to the within action. My business address is 425

4    Second Street, Suite 500, San Francisco, California 94107. On June 7, 2007, I served the

5    foregoing document(s):

6                              **SUBPOENA IN A CIVIL CASE**

7    on the interested party(ies) below, using the following means:

8                              Eric William Benisek
9                        **MORGAN MILLER BLAIR LC**
10                            1331 N California Blvd
                                 Suite 200
11                           Walnut Creek, CA 94596
                             Tel: (925) 937-3600
12                           Fax: (925) 943-1106

13   ☒      (BY UNITED STATES MAIL) I enclosed the document(s) in a sealed envelope or
14   package addressed to the respective address(es) of the party(ies) stated above and placed the
     envelope(s) for collection and mailing, following our ordinary business practices. I am familiar
15   with the firm's practice of collection and processing correspondence for mailing. It is deposited
     with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that
16   on motion of party served, service is presumed invalid if postal cancellation date or postage
17   meter date is more than one day after date of deposit for mailing of affidavit.

18   ☐      (BY OVERNIGHT DELIVERY) I placed a true copy in a sealed envelope addressed as
19   indicated above this date. I am familiar with the firm's practice of collection and processing
     correspondence for Federal Express delivery. It is deposited in a Federal Express depository on
20   that same day in the ordinary course of business for delivery to the parties above the next
21   business day.

22   ☐      (BY PERSONAL SERVICE) I delivered such envelope(s) by hand to the office(s) of the
23   addressee(s).

24   ☐      (BY MESSENGER SERVICE) I served the documents by placing them in an envelope
25   or package addressed to the respective address(es) of the party(ies) stated above and providing
     them to a professional messenger service for delivery.
26

27

28                                      1

1  ☒      (BY FACSIMILE)  Based on an agreement of the parties to accept service by fax

2  transmission, from fax machine telephone number (415) 543-7861, I faxed a full and complete

3  copy of the above-referenced document(s) to the party(ies) at the indicated fax numbers above.

4  ☐      (BY ELECTRONIC MAIL)  Based on a court order or an agreement of the parties to

   accept service by email, I caused the document(s) to be sent to the respective email address(es) of

5  the party(ies) as stated above.  I did not receive, within a reasonable amount of time after the

6  transmission, any electronic message or other indication that the transmission was unsuccessful.

7  ☐      (STATE)  I declare under penalty of perjury under the laws of the State of California that

8  the foregoing is true and correct.

9  ☒      (FEDERAL)  I declare that I am employed in the office of a member of the bar of this court

10  at whose direction the service was made.

11

12                                   *Stephanie Shattuck* (signature)

                                     Stephanie Shattuck

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                        2

06-07-'07 15:19  FROM-KELLER GROVER LLP      4155437861          T-462  P11/11  U-047

**KELLER GROVER, LLP**
425 SECOND ST., STE. 500
SAN FRANCISCO, CA 94107
(415) 543-1305

CITIBANK, N.A.  BR. #303
SAN FRANCISCO, CA 94111
90-7118-3211

6/7/2007

PAY TO THE
ORDER OF    Visa USA, Inc.                                         $ **55.00

Fifty-Five and 00/100************************************************************************************* DOLLAR

Visa USA, Inc.
900 Metro Center Blvd.
Foster City, CA  94044

MEMO

⑈006161⑈ ⑆321171184⑆ 2020389 23⑈

---

**KELLER GROVER, LLP**                                                        61(

| | Visa USA, Inc. | | | | 6/7/2007 | | |
|---|---|---|---|---|---|---|---|
| Date | Type | Reference | | Original Amt. | Balance Due | Discount | Payment |
| 6/7/2007 | Bill | | | 55.00 | 55.00 | | 55.00 |
| | | | | | Check Amount | | 55.00 |

*Max Rave*

Business Checking                                                            55.00

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JENNIFER BATHON**<br>**on behalf of herself and all others**<br>**similarly situated** | ) )<br>)<br>) | |
| **Plaintiff,** | )<br>) | **Civil Action No.** |
| **vs.** | )<br>) | |
| **BCBG MAXAZRIA,** | )<br>) | |
| **Defendant.** | )<br>) | **CLASS ACTION** |

<u>CLASS ACTION COMPLAINT</u>

## I.   <u>Preliminary Statement</u>

1.      This is a consumer class action based upon Defendant's violation of section 1681c(g) of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*, *as amended* (the "FCRA"). This section of the FCRA, like many others, was designed to combat the rising tide of identity theft experienced throughout the nation in recent years.   It requires that companies which accept credit and debit cards restrict the information that they print on sales receipts. Such a practice, if followed, reduces an identity thief's ability to obtain valuable account information relating to a consumer.   Despite the simple steps necessary to comply, and despite abundant notice, Defendants have simply chosen to ignore complying with the FCRA. As such, consumers who purchase goods and services from Defendants receive none of the benefits that section 1681c(g) was designed to confer, and are uniformly burdened with an elevated risk of identity theft.

## II.   <u>Jurisdiction and Venue</u>

2.      Jurisdiction of this Court arises under 15 U.S.C. § 1681p, 28 U.S.C. §§ 1331 and 1337.

3.      Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## III.   <u>Parties</u>

4.      Plaintiff Jennifer Bathon is a Pennsylvania resident.

**EXHIBIT I**

5.     Defendant BCBG MAXAZRIA is a retail business entity that regularly conducts business in the Eastern District of Pennsylvania at 1601 Walnut Street, Philadelphia, Pennsylvania 19103. Defendant's headquarters are located at 2671 Fruitland Avenue, Vernon, CA 90058.

## IV.     Factual Allegations

### A.     Defendant's Practice

6.     In 2003, the Fair and Accurate Credit Transactions Act ("FACTA") was enacted by Congress, and signed into law by President George W. Bush. One of FACTA's primary purposes was to amend the FCRA through the addition of identity theft protections for consumers.

7.     One FACTA provision was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a consumer's credit or debit account from a receipt which the consumer discarded or lost. Codified at 15 U.S.C. §1681c(g), this provision provides as follows:

> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

(This section shall hereafter be referred to as the "Receipt Provision."). This section applies to any "device that electronically prints receipts" ("Devices") for point of sale transactions. 15 U.S.C. §1681c(g)(3).

8.     FACTA gave companies a generous three-year cushion within which to comply with the Receipt Provision.

9.     Notwithstanding the fact that they have had over three years to comply, Defendant continues to issue receipts at the point of sale transactions which contain the expiration date of the consumer's credit card, in direct violation of the Receipt Provision.

2

10. Notwithstanding the Receipt Provision, Defendant continues to deliberately, willfully, intentionally, recklessly and negligently violate FACTA by issuing receipts which do not comply with the FCRA.

11. Defendant's practice not only violates the law, it exacts harm by exposing consumers' sensitive account information and subjecting each affected consumer to an ongoing and elevated risk of becoming the victim of identity theft.

12. The Federal Trade Commission Bureau of Consumer Protection recently published an alert stating that a debit or credit card receipt containing more than the last five digits of an account number and/or the card's expiration date is a "'golden ticket' for fraudsters and identity thieves." Federal Trade Commission Bureau of Consumer Protection Division of Consumer & Business Education, *Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts* (May 2007).

**B.     The Experience of the Representative Plaintiff**

13. On or about May 20, 2007, Plaintiff purchased clothing at one of Defendant's retail stores. To pay for her purchase, Plaintiff used her credit card. Following the transaction, Plaintiff received a receipt, which included both the last four numbers of Plaintiff's credit card as well as its expiration date.

14. At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

15. At all times pertinent hereto, the conduct of the Defendant, as well as that of its agents, servants and/or employees, was willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

3

## V.  Class Action Allegations

16.    Plaintiff brings this action individually and as a class action for Defendant's violation of section 1681c(g) of the FCRA, pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, on behalf of the following Class:  All persons in the United States to whom, on or after December 4, 2006 and continuing through the resolution of this case, Defendant provided an electronically printed receipt at the point of sale or transaction on which Defendant printed more than the last five digits of the person's credit card or debit card number and/or printed the expiration date of the person's credit or debit card.

17.    . The Class is so numerous that joinder of all members is impracticable.  Although the precise number of Class members is known only to Defendant, Plaintiff avers upon information and belief that the Class numbers in the hundreds if not thousands, as referenced above.

18.    There are questions of law and fact that are not only common to the Class, but which predominate over any questions affecting only individual Class members.    The predominating questions include, but are not limited to:

(a)    Whether the Defendant willfully violated section 1681c(g) of the FCRA by failing to provide consumers, who used their credit and debit cards in point of sale transaction(s) with Defendant, with electronically printed receipts that complied with the Receipt Provision.

(b)    Whether the Defendant willfully violated section 1681c(g) of the FCRA by putting cash registers and or other Devices into place on or after January 1, 2005, that electronically printed receipts at the point of sale that failed to comply with the Receipt Provision.

(c)    Whether the Defendant and its agents should be enjoined from further engaging in such improper conduct.

4

(d)    The proper measure of statutory damages.

19.    Plaintiff's claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories.

20.    Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is committed to vigorously litigating this matter. Further, Plaintiff has secured counsel experienced in handling consumer class actions. Neither Plaintiff nor her counsel have any interests which might cause them not to vigorously pursue this claim.

21.    This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

22.    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

23.    Whether Defendant failed to comply with the Receipt Provision as detailed by 15 U.S.C. § 1681c(g) can be easily determined by a review of Defendant's policies and a ministerial inspection of Defendant's business records.

24.    A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small as the maximum statutory damages are limited to $1,000.00 under the FCRA. Management of the Class claims is likely to present significantly

5

fewer difficulties than those presented in many individual claims. The identities of the Class members may be obtained from Defendant's records.

## VI.    Claims

### Count One - FCRA

25.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

26.    Title 15 U.S.C. §1681c(g) states as follows:

> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

27.    Defendant employs the use of Devices for point of sale transactions.

28.    On or after December 4, 2006, Plaintiff and members of the Class were provided receipt(s) by Defendant that failed to comply with the Receipt Provision.

29.    Defendant was aware, on or before December 4, 2006, of both the Receipt Provision as well as the need to comply with said provision.

30.    In anticipation of the December 4, 2006 deadline, many credit card companies, including but not limited to VISA and MasterCard, advised companies of the need for compliance with the Receipt Provision. Additionally, many credit card companies, such as VISA and MasterCard, implemented policies well in advance of the December 4, 2006 deadline, to ensure the compliance with the Receipt Provision, by themselves, as well as that of their customers.

31.    Also in anticipation of the December 4, 2006 deadline and the Receipt Provision, the majority of Defendant's peers and competitors took the necessary steps to bring their business practices in line with FACTA.

6

32.  Notwithstanding FACTA's grace period, to prepare for FACTA and its accompanying provisions, including but not limited to the Receipt Provision; knowledge of the Receipt Provision and FACTA as a whole; the repeated reminders of FACTA and its accompanying provisions; and the actions of Defendant's peers and competitors, Defendant knowingly, willfully, intentionally, and recklessly violated and continues to violate the FCRA and the Receipt Provision. In turn, Plaintiff and members of the Class continue to be exposed to an elevated risk of identity theft.

33.  As a result of Defendant's willful violations of the FCRA, Defendant is liable to Plaintiff and members of the Class pursuant to 15 U.S.C. § 1681n.

## VII.   Jury Trial Demand

34.  Plaintiff demands trial by jury on all issues so triable.

## VIII.   Prayer For Relief

WHEREFORE, Plaintiff seeks judgment in favor of herself and the Class for the following relief:

(a)   An order certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and her counsel to represent the Class;

(b)   Statutory damages for willful violation of the FCRA in an amount between $100.00 and $1,000.00 per Class member;

(c)   Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n of the FCRA;

(d)   An order enjoining Defendant from continuing to violate the Receipt Provision;

(e)   An order directing Defendant to hereafter electronically print receipts from point of sales transactions in compliance with 15 U.S.C. § 1681c(g); and

(f)    Such other and further relief as may be necessary, just and proper.

DONOVAN SEARLES, LLC

Dated: June 5, 2007                         By:    s/ David A. Searles
                                                   David A. Searles
                                                   1845 Walnut Street, Suite 1100
                                                   Philadelphia, PA 19103
                                                   (215) 732-6067

                                                   FRANCIS & MAILMAN, P.C.
                                                   JAMES A. FRANCIS
                                                   MARK D. MAILMAN
                                                   Land Title Building, 19th Floor
                                                   100 South Broad Street
                                                   Philadelphia, PA 19110
                                                   (215) 735-8600

                                                   Attorneys for Plaintiff and the Class

8

## SUMMONS IN A CIVIL ACTION

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER BATHON, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED<br><br>v.<br><br>BCBG MAXAZRIA | CIVIL ACTION NO. 07-2276<br><br>TO: (NAME AND ADDRESS OF DEFENDANT)<br><br>BCBG MAXAZRIA<br>2671 Fruitland Avenue<br>Vernon, CA 90058 |

### YOU ARE HEREBY SUMMONED and required to serve upon

Plaintiff's Attorney (Name and Address)

DAVID A. SEARLES, ESQ.
1845 WALNUT STREET
SUITE 1100
PHILA., PA 19103

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

| | |
|---|---|
| Michael E. Kunz, Clerk of Court | Date: JUNE 5, 2007 |

(By) Deputy Clerk

*Crystal Wardlaw*

CRYSTAL WARDLAW

**United States District Court**
Eastern District Of Pennsylvania
United States Courthouse
Independence Mall West
601 Market Street
Philadelphia, PA 19106-1797

*Chambers of*
*Harvey Bartle, III.*
*Chief Judge*

*Clerk's Office*
*Room 2609*
*Telephone*
*(215)597-7704*

*Michael E. Kunz*
*Clerk of Court*

### NOTICE OF RIGHT TO CONSENT TO EXERCISE OF JURISDICTION
### BY A UNITED STATES MAGISTRATE JUDGE

The district judges of this Court have found that the United States magistrate judges are experienced judicial officers who have regularly handled the disposition of hundreds of civil cases through motions and trials and are fully qualified to try any civil cases arising before this Court.

In accordance with the provisions of 28 U.S.C. §636(c), you are hereby notified that pursuant to Local Rules 72.1(h), the United States magistrate judges of this district, in addition to their other duties, may, upon the consent of all the parties in a civil case, conduct any or all proceedings in a civil case, including a jury or non-jury trial, and order the entry of a final judgement. Appropriate consent forms for this purpose are available from the clerk of court.

Your decision to consent, or not to consent, to the referral of your case to a United States magistrate judge for disposition is entirely voluntary and should be communicated solely to the clerk of the district court. Only if all the parties in the case consent to the reference to a magistrate judge will either the judge or magistrate judge be informed of your decision. **If you decide to consent, <u>your case will receive a date certain for trial</u>**.

No action eligible for arbitration will be referred by consent of the parties until the arbitration has been concluded and trail *de novo* demanded pursuant to Local Rules 53.2 , Paragraph 7. The Court may, for good cause shown, or on its own motion, or under extraordinary circumstances shown by any party, vacate a reference of a civil matter to a magistrate judge.

When a case is referred to a magistrate judge for all further proceedings, including the entry of final judgement, the final judgement shall be appealed directly to the Court of Appeals for the Third Circuit in the same manner as an appeal from any other judgement of a district court.

Nothing herein shall be construed to be a limitation of any party's right to seek review by the Supreme Court of the United States.

HARVEY BARTLE, III.
CHIEF JUDGE

MICHAEL E. KUNZ
CLERK OF COURT

Civ. 635(1/06)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

**RECEIVED**

AUG 2 0 2007

CALL, JENSEN & FERRELL

| | |
|---|---|
| JENNIFER BATHON<br>on behalf of herself and all others<br>similarly situated<br><br>    **Plaintiff,**<br><br> **vs.**<br><br>BCBG MAXAZRIA,<br><br>    **Defendant.** | )<br>)<br>)<br>)<br>)  C.A. No. 07-2276<br>)<br>)<br>)<br>)<br>)<br>)  **CLASS ACTION**<br>) |

## PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT BCBG MAXAZRIA

   Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff requests that

Defendant produce within (30) days, the documents herein described for inspection and copying

at the offices of Donovan Searles LLC, 1845 Walnut Street, Suite 1100, Philadelphia, PA  19103

within thirty (30) days following service of these Document Requests or such shorter time as

may be set by the Court.

### DEFINITIONS

   The following terms and phrases shall be read, construed and interpreted as follows:

   1.  "Communication" means the transmittal of information and includes, but is not

limited to, any formal or informal disclosure, contact, discussion or any other kind of written,

oral or electronic transfer or exchange of information, facts, ideas or opinions, between two or

more persons, however made.  This term includes, but is not limited to, all telephone

conversations, face to face conversations, meetings, visits, conferences, internal and external

discussions, and documents (including without limitation, electronic mail, *i.e.*, "e-mail").

   2.  "Concerning" means anything directly or indirectly relating to, referring to,

alluding to, responding to, connected with, commenting on, in respect of, about, regarding,

1

<b>EXHIBIT J</b>

discussing, showing, describing, mentioning, analyzing, studying, reflecting, evidencing, containing or constituting, in whole or in part.

3.    The terms "document" or "documents" are used herein in the broadest sense permissible under Fed.R.Civ.P. 34(a), and includes, without limitation, any "writing" as that term is defined in Rule 1001 of the Federal Rules of Evidence, and any computer, mechanical, photographic, printed, magnetic, audio, video and other electronic recordings or records and/or other tangible records and forms of recorded information, however produced or reproduced, including but not limited to: all letters, correspondence, inter-office communications, electronic correspondence such as "e-mail," and other communications recorded in any form or medium; records, memoranda, minutes, notes, telegrams, summaries, computer printouts or disks or any information retained in a computer database which can be reproduced; records of telephone calls and meetings, calendar and diary entries, notebooks, schedules, reports, studies, appraisals, analyses, lists, surveys, deeds; budgets, financial statements, ledgers, returns, financial projections, comparison between budgets, projections and actual results, working papers, financial calculations and other records of financial matters and commercial transactions; contracts, agreements, legal and accounting opinions, analyses and research; periodicals, charts, diagrams, graphs, and other drawings; interviews, speeches, transcripts, press releases, advertisements, brochures and books of account; plans and specifications; publications; photocopies, microfilm, and other copies or reproduction, and computer printouts; all drafts, outlines and proposals of any such documents (whether or not actually used), and all non-identical copies (whether different from the original by reason of notations made on such copies or otherwise) are separate documents within the meaning of the term. The term also includes information stored in, or accessible through, computer or other information retrieval systems, together with instructions and all materials necessary to retrieve, use or interpret such data.

4.    "Person" includes any natural person, corporate entity, partnership, association, joint venture, trust, government unit, agency, branch, commission or office or any subdivision or department thereof, including, but not limited to, all officials, representatives and employees of

2

any government unit, agency, branch, commission or office, or any subdivision or department thereof.

     5.    "United States" means the fifty states, the District of Columbia, and all territories, dependencies, or possessions of the United States of America.

     6.    "You," "your" and/or "Defendant" means your corporate entity.

     7.    "POS" means point of sale.

     8.    "Transaction" means a POS retail transaction for the purchase of goods or services.

     9.    "Circumstances" means condition, fact or event accompanying or leading up to causes of and/or negotiations or discussions over.

     10.    "Set" means fixed, adopted, determined and/or established.

     11.    "Policy" means any formal or informal, oral or written, guideline, procedure, plan, practice, program, strategy or guideline.

     12.    "Rule" means any by-law, regulation (including without limitation any operating regulation), policy or guideline.

     13.    "Bank" means any financial institution that issues or acquires Visa USA ("Visa") and/or MasterCard Worldwide ("MasterCard") products as a member of Visa and/or MasterCard.

     14.    "Credit Card" is an access device which enables the holder to effect transactions on credit for goods and services purchased, which are paid on behalf of the holder by the issuer of such device. The card also allows holders to obtain cash with credit extended by the issuer. Examples of credit cards are the Visa and MasterCard credit cards issued by members of bank card associations, the Discover, Bravo and Private Issue cards issued by Morgan Stanley, Dean Witter & Co., and the Optima cards issued by American Express.

     15.    "Charge Card" or "Travel and Entertainment Card" or "T&E Card" is an access device which enables the holder to purchase goods and services on credit to be paid on behalf of the holder by the issuer of such device. Examples of charge cards, travel and entertainment cards

or T&E cards are the American Express, Green, Gold and Platinum cards as well as the Diners Club and Carte Blanche cards issued by Citibank.

16.    "Debit Card" is an access device which enables the holder, among other things, to effect a cash withdrawal from the holder's bank account at an ATM or make a purchase at a POS which is debited against one or more of the holder's bank accounts.

17.    "Plastic Payment Card" means a device which enables the holder to perform the functions or obtain the access provided by one or more of the cards defined above, *i.e.*, Credit Cards, Charge Cards, and Debit Cards.

18.    "Truncation" means the removing, hiding or disguising of account numbers and/or expiration dates from Plastic Payment Card receipts issued at the POS.

19.    "Retailer" means merchant.

20.    "Bank Card Acquiring Institution" or "Bank Card Merchant Institution" means a bank or other financial institution member of Visa and/or MasterCard that establishes agreements with retailers who will accept Visa and/or MasterCard branded Plastic Payment Cards as payment for the goods and services they sell.

21.    "Bank Card Issuing Institution" means a bank or other financial institution member of Visa and/or MasterCard that issues Visa and/or MasterCard branded Plastic Payment Cards to consumers for their use as access devices.

22.    An "Independent Sales Organization" (ISO), also called a Member Service Provider (MSP) is a company (not a MasterCard or Visa member) that is contracted by members to administer merchant and/or cardholder servicing.

23.    A "Third Party Processor" is an institution acting under contract with Plastic Payment Card issuers or acquirers that process Plastic Payment Cards, among other electronic transactions.

24.    "Device" means any machine used to accept Plastic Payment Cards at the POS and to print receipts to be given to consumers.

25.    A "Class A Device" is a machine Defendant first put into use after January 1,

2005 at the POS to effect transactions by charging consumers' Plastic Payment Cards for goods or services and then generating electronically printed receipts.

26.    A "Class B Device" is a machine Defendant first put into use before January 1, 2005 and continued to use after December 4, 2006 at the POS to effect transactions by charging consumers' Plastic Payment Cards for goods or services and then generating electronically printed receipts.

### INSTRUCTIONS

A.    Unless otherwise specified, the information requested is that which is applicable (*e.g.*, had impact or effect, or in the case of documents, was effective, prepared, written, sent, dated, received or utilized at any time) at any time through and including the time of trial in this matter.

B.    Unless otherwise specified, the information requested is limited to the United States (as defined above).  For example, a request for the number of all plastic payment card receipts issued at the POS is presumed to be confined to those that occurred at POS locations in the United States.

C.    These requests include information that now is or ever was in the knowledge of your present or former employees, representatives, agents, and persons consulted concerning any factual matters or matters or opinions, or is otherwise available to you as either a practical matter or as a matter of law.

D.    These requests shall be deemed to be continuing so as to require prompt, further, and supplemental production if you discover additional information or documents that should have been produced in response to these requests after the time of initial production or that come to exist after the time of initial production.

E.    For purposes of reading, interpreting or construing the scope of these requests, the terms used shall be given their most expansive and inclusive interpretation.  This includes, without limitation, the following:

1.    Construing the terms "and" and "or" in the disjunctive or conjunctive, as

necessary, to make the interrogatory more inclusive;

    2.    Construing the singular form of any word to include the plural and the plural form to include the singular;

    3.    Construing the past tense of the verb to include the present tense and the present tense to include the past tense;

    4.    Construing the masculine form to include the feminine form, and

    5.    Construing the term "date" to mean the exact day, month and year if ascertainable; if not, the closest approximation that can be made by means of relationship to other events, locations, or matters.

    F.    These requests include all requested documents that now are, or ever were, in your possession, custody, or control. This request also includes all requested documents that now are, or ever were, in the possession, custody or control of your employees, agents, representatives, officers, directors, or any other person acting or purporting to act on behalf of you, as well as persons consulted concerning any factual matters or matters or opinions, or otherwise available to you as either a practical matter or as a matter of law, including without limitation all attorneys and accountants utilized by you.

    G.    If any document was, but no longer is, in your possession, custody, or control, identify the document with particularity -- stating the nature of the document (*e.g.,* letter, memorandum, notes), the date on which it was prepared, the date it was sent, the date it was received, the identity and title of the person or persons sending it, the identity and title of the person or persons to whom it was sent (*i.e.,* all recipients, including "cc's" and subsequently routed persons), a statement as to whom each such person represented or purportedly represented, the subject matter of the document, and a description of the place where the document is presently kept or, if it has been lost, destroyed, transferred, or otherwise disposed of, explain the circumstances surrounding disposition of the document and the date it occurred.

    H.    With respect to any document falling within the demands and as to which you are unwilling to produce or are withholding for any reason including, but not limited to,

unavailability or privilege, you are requested to produce at the time and place described above a complete list identifying each such document, together with each and every reason for the non-production of each and every document.

1.    Each document should be identified by stating the nature of the document (*e.g.*, letter, memorandum, notes), the date on which it was prepared, the date it was sent, the date it was received, the identity and title of the person or persons sending it, the identity and title of the person or persons to whom it was sent (*i.e.*, all recipients, including "cc's" and subsequently routed persons), a statement as to whom each such person represented or purportedly represented, the subject matter of the document, and a description of the place where the document is presently kept.

2.    The list identifying any such document shall also include: (a) each privilege claimed, and (b) a precise statement of the facts upon which the claim of privilege is based.

I.    If any objection is made to any document request, all documents covered by that request but not subject to the objection should be produced.

J.    Documents should be produced as they are kept in the usual course of business, and should include a copy of the file folder in which they originated. Documents that in their original condition were stapled, clipped, or otherwise fastened together shall be produced in such form or produced with a notation specifying the original binding condition of the documents, in a form agreeable to plaintiffs. Documents attached to each other or contained in a file, folder, similar binder, file drawer, physical location (*e.g.*, "Person X's office") should not be separated and should be produced in a manner that demonstrates the relationship of the documents (and various files) to one another as kept in the normal course of business.

K.    For each document, file, or larger grouping of files (as appropriate), you should identify the person in whose possession particular documents or files were kept in the ordinary course of business at the time that the documents were either prepared, generated, received, reviewed or utilized in the ordinary course of business. In the event that certain documents have

7

been stored in archives or other storage locations, you should provide a list or index that adequately identifies the original custodian of the documents.

L.    Where it is impossible to produce particular documents as they were kept in the ordinary course of business, an explanation for the impossibility to so provide those particular documents in such a manner shall be provided, and all such documents shall be marked or otherwise identified with the numbers of the specific production request(s) to which each such document is affiliated.

M.    All documents that respond, in whole or in part, to any part of any request for documents shall be produced in their entirety, including all attachments and enclosures, as they are kept in the ordinary course of business. If any information specified in this request appears on any page of any document, all pages of the document shall be produced in response to this request. Only one copy should be produced of documents that are identical, indicating the person or group of persons in whose files the identical copies of the document were located in the ordinary course of business. Moreover, documents that bear additional endorsements, handwritten notations, have notes attached to the copy, or differ in any way from the original are not to be considered "identical" and are therefore considered separate documents.

N.    Any document demand that requests the production of "documents sufficient to show" requires you to determine the smallest amount of documents necessary to be shown to provide all the information requested and which you are willing to certify as accurate and complete in response to the request. If the information is available in electronically stored data in machine-readable format, then production in that manner, in the format described in the following paragraph, is deemed to be the "documents sufficient to show."

O:    In producing documents consisting of electronically stored data in machine-readable form in response to any request, provide such data in a form that does not require specialized or proprietary hardware or software (except where approved in advance by plaintiffs). Data files should be produced in EXCEL format, or in sequential format, also known as ASCII files or flat files, with the data fields in fixed-column positions. For each data file

8

provided, the following information should be included: a record layout, and a short narrative description of the contents of the file that includes a description of the origin of the data, the custodian of the data in the ordinary course of business, and the individuals that participated in the compilation of the data file. For each data file provided, the following information should also be included: translation of any coded fields, the number of records in the file, and a printout of the first 100 records (and last 10 records, including totals) in report format. A record layout must contain the following pieces of information: name of the field, starting and ending position on the record, length of the field, and characteristics of the field (*e.g.*, packed decimal, zoned decimal, alphanumeric). The magnetic media should be CD-ROM, and must include a text file explaining the contents and format of the data disks. Do not convert the data between formats. Compression utilities are acceptable so long as the utility is provided and such provision does not violate licensing or copyright laws.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

### REQUEST FOR PRODUCTION NO. 1:

All documents identifying all retail locations operated by Defendant within the United States after January 1, 2005.

### REQUEST FOR PRODUCTION NO. 2:

All documents identifying CLASS A DEVICES, specifying the stores identified in Request for Production No. 1 in which they were used.

### REQUEST FOR PRODUCTION NO. 3:

All documents identifying CLASS B DEVICES, specifying the stores identified in Request for Production No. 1 in which they were used.

### REQUEST FOR PRODUCTION NO. 4:

All documents concerning the total number of receipts that were printed after January 1, 2005 from CLASS A DEVICES.

**REQUEST FOR PRODUCTION NO. 5:**

All documents concerning the total number of receipts that were printed after December 4, 2006 from CLASS B DEVICES.

**REQUEST FOR PRODUCTION NO. 6:**

For all CLASS A DEVICES, all documents concerning customer receipts printed with more than the last 5 digits of customers' plastic payment card account number and with the expiration dates of the plastic payment cards.

**REQUEST FOR PRODUCTION NO. 7:**

For all CLASS B DEVICES, all documents concerning customer receipts printed with more than the last 5 digits of customers' plastic payment card account number and with the expiration dates of the plastic payment cards.

**REQUEST FOR PRODUCTION NO. 8:**

For all CLASS A DEVICES, all documents concerning customer receipts printed with more than the last 5 digits of customers' plastic payment card account numbers but not the expiration dates of the plastic payment cards.

**REQUEST FOR PRODUCTION NO. 9:**

For all CLASS B DEVICES, all documents concerning customer receipts printed with more than the last 5 digits of customers' plastic payment card account numbers but not the expiration dates of the plastic payment cards.

**REQUEST FOR PRODUCTION NO. 10:**

For all CLASS A DEVICES, all documents concerning customer receipts printed with 5 or less digits of customers' plastic payment card account number but with the expiration date of the plastic payment card.

**REQUEST FOR PRODUCTION NO. 11:**

For all CLASS B DEVICES, all documents concerning customer receipts printed with 5 or less digits of customers' plastic payment card account numbers but with the expiration dates of the plastic payment cards.

**REQUEST FOR PRODUCTION NO 12:**

All documents concerning the date and means by which Defendant first learned of the existence of the Fair and Accurate Credit Transaction Act (FACTA).

**REQUEST FOR PRODUCTION NO 13:**

For the period January 1, 2005 to the present, all documents concerning the date and means by which Defendant first learned it printed a receipt that contained more than the last 5 digits of a customer's plastic payment card account number and/or the expiration date of the plastic payment card.

**REQUEST FOR PRODUCTION NO. 14:**

For the period December 4, 2003 to the present, all documents concerning any steps Defendant took to stop printing more than the last 5 digits of customers' plastic payment card account numbers and/or the expiration dates of the plastic payment cards.

**REQUEST FOR PRODUCTION NO. 15:**

For the period December 4, 2003 to the present, all documents concerning complaints customers made to Defendant that they became victims of credit card fraud or identity theft because they used a plastic payment card at one of Defendant's retail locations to effect a transaction.

**REQUEST FOR PRODUCTION NO. 16:**

All documents concerning any investigation taken by Defendant in response to reports of credit card fraud or identity theft referenced in Request for Production No. 15.

**REQUEST FOR PRODUCTION NO. 17:**

All documents that support the contention that Defendant no longer prints receipts which contain more than the last 5 digits of the customer's plastic payment card account number and/or the expiration date.

**REQUEST FOR PRODUCTION NO. 18:**

All documents that support the contention that Defendant did not violate 15 U.S.C. § 1681(c)(g).