# EXHIBIT C

# (PART 3 OF 4)

**REQUEST FOR PRODUCTION NO. 19:**

All documents that support the contention that Defendant did not act willfully in printing receipts that contained more than the last 5 digits of customers' plastic payment card account numbers and/or the expiration dates.

**REQUEST FOR PRODUCTION NO. 20:**

All documents concerning Defendant's corporate form, structure and/or governance, including without limitation Defendant's articles of incorporation, bylaws, operating regulations, resolutions of Defendant's board of directors and organizational charts (for the Defendant's entire organization).

**REQUEST FOR PRODUCTION NO. 21:**

For the period December 4, 2003 to the present, all agendas, board presentations and minutes for, and all documents sufficient to show attendees at, all meetings of Defendant's board of directors and Defendant's executive committee, as well as any meetings or working sessions of committees or subcommittees concerning the Defendant's policies and actions relating to the truncation of data on plastic payment cards.

**REQUEST FOR PRODUCTION NO. 22**

For the period December 4, 2003 to the present, all documents concerning who is or has been responsible and given authority by Defendant to ensure that Defendant complies with FACTA and comparable state laws, or any other rule or policy requiring the truncation of plastic payment card cardholder account numbers and/or expiration date.

**REQUEST FOR PRODUCTION NO. 23:**

For the period December 4, 2003 to the present, all documents concerning who is or has been responsible and given authority by Defendant to represent the Defendant in interactions with any of the following: Visa, MasterCard, Discover, American Express, Bravo, Diner's Club, Carte Blanche, Bank Card Acquiring Institutions, Third Party Processors, Independent Sales Organizations, software and/or hardware vendors, or any other comparable party involved in any way with Defendant in the acceptance of plastic payment cards at the POS to effect transactions.

## REQUEST FOR PRODUCTION NO. 24:

For the period December 4, 2003 to the present, all documents concerning corporate policy and action taken over Truncation, including, without limitation, communications both within the corporate hierarchy, communications reaching out to outside parties, and all documents concerning the development, adoption, implementation, installation, upgrading, maintenance and servicing of hardware and software used in the devices issuing receipts.

## REQUEST FOR PRODUCTION NO. 25:

For the period December 4, 2003 to the present, all documents that identify, relate of refer to any trade associations of which Defendant is or has been a member.

## REQUEST FOR PRODUCTION NO. 26:

Documents relating to all communications to or from Defendant and the trade associations identified in Request for Production No. 25 regarding the Truncation of data on Plastic Payment Cards.

## REQUEST FOR PRODUCTION NO. 27:

For the period December 4, 2003 to the present, all communications concerning truncation that Defendant had with any Bank Card Acquiring Institution, Third Party Processor, Independent Sales Organization, software and/or hardware vendor, or any other comparable party involved in any way with Defendant in the acceptance of Plastic Payment Cards at the POS to effect transactions.

## REQUEST FOR PRODUCTION NO. 28:

For the period December 4, 2003 to the present, all documents relating to all communications Defendant had with Visa, MasterCard, Discover, American Express, Bravo, Diner's Club, and Carte Blanche concerning Truncation.

## REQUEST FOR PRODUCTION NO. 29

For the period December 4, 2003 to the present, all documents concerning any penalties or fines VISA or MasterCard levied against Defendant for not properly truncating printed receipts.

**REQUEST FOR PRODUCTION NO. 30**

For the period December 4, 2003 to the present, all communications Defendant had with the Federal Trade Commission or any other federal or state entity concerning Truncation.

**REQUEST FOR PRODUCTION NO. 31:**

For the period December 4, 2003 to the present, all documents concerning any customer complaints, penalties or fines Defendant received from the Federal Trade Commission or any other state or federal body concerning Truncation.

**REQUEST FOR PRODUCTION NO. 32:**

If Defendant contends that Plaintiff is not an adequate class representative, all documents that support this contention.

**REQUEST FOR PRODUCTION NO. 33:**

For each of Defendant's responses to Plaintiff's Requests for Admissions that is not an unqualified admission, all documents upon which Defendant bases its response.

**REQUEST FOR PRODUCTION NO. 34:**

For the period December 4, 2003 to the present, all documents concerning any contracts entered into by Defendant with any of the following: Visa, MasterCard, Discover, American Express, Bravo, Diner's Club, Carte Blanche, Bank Card Acquiring Institutions, Third Party Processors, Independent Sales Organizations, software and/or hardware vendors, or any other comparable party involved in any way with Defendant in the acceptance of plastic payment cards at the POS to effect transactions.

**REQUEST FOR PRODUCTION NO. 35:**

For the period December 4, 2003 to the present, all documents, including, but not limited to magazine or newspaper articles or other forms of writing or reporting, concerning truncation of customers' Plastic Payment Card account numbers and/or the expiration dates of the Plastic Payment Cards.

Dated: August 17, 2007

**DONOVAN SEARLES, LLC**

By:

David A. Searles
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
(215) 732-6067

**FRANCIS & MAILMAN, P.C.**
James A. Francis
100 South Broad Street, 19th Floor
Philadelphia, PA 19110
(215) 735-8600

Attorneys for Plaintiff and the Class

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served on the date below, by first class mail, on the following:

Stephen G. Harvey
PEPPER HAMILTON LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103

Rafik Mattar
CALL, JENSEN & FERRELL
610 Newport Center, Suite 700
Newport Beach, CA 92660

Date: August 17, 2007

David A. Searles

<table>
<tr><td>

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

</td></tr>
</table>

**RECEIVED**

AUG 2 0 2007

CALL, JENSEN & FERRELL

| | | |
|---|---|---|
| JENNIFER BATHON<br>on behalf of herself and all others<br>similarly situated | ) ) ) ) | |
| Plaintiff, | ) | C.A. No. 07-2276 |
| vs. | ) | |
| BCBG MAXAZRIA, | ) ) | |
| Defendant. | ) | CLASS ACTION |

## PLAINTIFF'S REQUESTS FOR ADMISSIONS DIRECTED TO DEFENDANT BCBG MAXAZRIA

Plaintiff Jennifer Bathon, pursuant to Federal Rule of Civil Procedure 36, hereby requests that Defendant BCBG Maxazria admit the following matters under oath within 30 days after service hereof.

### DEFINITIONS

The following terms and phrases shall be read, construed and interpreted as follows:

1.  "Plastic Payment Card" means a device which enables the holder to perform the functions or obtain the access provided by various credit vehicles, such as credit cards, charge cards, and debit cards.

2.  A "Class A Device" is a machine Defendant used/uses at the POS to effect transactions by charging customers' Plastic Payment Cards for goods or services and then generating electronically printed receipts that Defendant first put into use on or after January 1, 2005.

3.  A "Class B Device" is a machine Defendant used/uses at the POS to effect transactions by charging customers' Plastic Payment Cards for goods or services and then

**EXHIBIT K**

generating electronically printed receipts that Defendant first put into use before January 1, 2005 and continued to use after December 4, 2006.

## INSTRUCTIONS

If any of your responses to this set of Requests for Admissions is anything other than an unqualified admission, then for each such response:

    a.      State the number of the Request;

    b.      State all facts upon which you base your response;

    c.      Identify all persons who have knowledge of such facts; and

    d.      Identify all documents that support your response.

## REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1:

Admit that Plaintiff's receipt, attached to this request as Exhibit A, is a true and correct copy of a genuine receipt from one of Defendant's stores.

### REQUEST FOR ADMISSION NO. 2:

Admit that Plaintiff's Exhibit A receipt is dated after December 4, 2006.

### REQUEST FOR ADMISSION NO. 3:

Admit that Defendant printed the expiration date from Plaintiff's Plastic Payment Card on Plaintiff's Exhibit A receipt.

### REQUEST FOR ADMISSION NO. 4:

Admit that Defendant has printed more than the last five (5) digits of customers' Plastic Payment Card account numbers on Class A Devices.

2

**REQUEST FOR ADMISSION NO. 5:**

Admit that Defendant has printed more than the last five (5) digits of customers' Plastic Payment Card account numbers on Class B Devices.

**REQUEST FOR ADMISSION NO. 6:**

Admit that Defendant has printed the expiration date of customers' Plastic Payment Cards on Class A Devices.

**REQUEST FOR ADMISSION NO. 7:**

Admit that Defendant has printed the expiration date of customers' Plastic Payment Cards on Class B Devices.

**REQUEST FOR ADMISSION NO. 8:**

Admit that at all times since January 1, 2005, the BCBG store located at 241 Fort Evans Road, Leesburg, VA 20176 has been staffed by employees of Defendant BCBG Maxazria.

**REQUEST FOR ADMISSION NO. 9:**

Admit that Defendant was aware, prior to May 20, 2007, of litigation commenced concerning the removing, hiding or disguising of account numbers and/or expiration dates from Plastic Payment Card receipts.

**DONOVAN SEARLES, LLC**

Dated: August 17, 2007          By:    _____
David A. Searles
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
(215) 732-6067

**FRANCIS & MAILMAN, P.C.**
James A. Francis
100 South Broad Street, 19th Floor
Philadelphia, PA 19110
(215) 735-8600

Attorneys for Plaintiff and the Class

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served on the date below, by first

class mail, on the following:

Stephen G. Harvey
PEPPER HAMILTON LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103

Rafik Mattar
CALL, JENSEN & FERRELL
610 Newport Center, Suite 700
Newport Beach, CA 92660

Date: August 17, 2007

David A. Searles

14

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

**RECEIVED**

AUG 2 0 2007

| | |
|---|---|
| JENNIFER BATHON<br>on behalf of herself and all others<br>similarly situated | ) )<br>)<br>) |
| Plaintiff, | ) |
| vs. | ) )<br>) |
| BCBG MAXAZRIA, | ) )<br>) |
| Defendant. | ) )<br>) |

CALL, JENSEN & FERRELL

C.A. No. 07-2276

**CLASS ACTION**

## PLAINTIFF'S FIRST SET OF INTERROGATORIES DIRECTED TO DEFENDANT BCBG MAXAZRIA

TO:     BCBG MAXAZRIA, Defendant

FROM:     JENNIFER BATHON, Plaintiff

Plaintiff, JENNIFER BATHON, by her undersigned attorneys, pursuant to Federal Rules

33, requests that Defendant BCBG MAXAZRIA serve written responses, under oath, to the

following interrogatory questions within thirty (30) days of the date of service. Service of the

written responses shall be made upon the undersigned counsel at Donovan Searles, LLC, 1845

Walnut Street, Suite 1100, Philadelphia, PA 19103.

### DEFINITIONS

The following terms and phrases shall be read, construed and interpreted as follows:

1.     "Communication" means the transmittal of information and includes, but is not

limited to, any formal or informal disclosure, contact, discussion or any other kind of written,

oral or electronic transfer or exchange of information, facts, ideas or opinions, between two or

more persons, however made.    This term includes, but is not limited to, all telephone

**EXHIBIT L**

conversations, face to face conversations, meetings, visits, conferences, internal and external discussions, and documents (including without limitation, electronic mail, *i.e.,* "e-mail").

2.    "Concerning" means anything directly or indirectly relating to, referring to, alluding to, responding to, connected with, commenting on, in respect of, about, regarding, discussing, showing, describing, mentioning, analyzing, studying, reflecting, evidencing, containing or constituting, in whole or in part.

3.    The terms "document" or "documents" are used herein in the broadest sense permissible under Fed.R.Civ.P. 34(a), and includes, without limitation, any "writing" as that term is defined in Rule 1001 of the Federal Rules of Evidence, and any computer, mechanical, photographic, printed, magnetic, audio, video and other electronic recordings or records and/or other tangible records and forms of recorded information, however produced or reproduced, including but not limited to: all letters, correspondence, inter-office communications, electronic correspondence such as "e-mail," and other communications recorded in any form or medium; records, memoranda, minutes, notes, telegrams, summaries, computer printouts or disks or any information retained in a computer database which can be reproduced; records of telephone calls and meetings, calendar and diary entries, notebooks, schedules, reports, studies, appraisals, analyses, lists, surveys, deeds; budgets, financial statements, ledgers, returns, financial projections, comparison between budgets, projections and actual results, working papers, financial calculations and other records of financial matters and commercial transactions; contracts, agreements, legal and accounting opinions, analyses and research; periodicals, charts, diagrams, graphs, and other drawings; interviews, speeches, transcripts, press releases, advertisements, brochures and books of account; plans and specifications; publications; photocopies, microfilm, and other copies or reproduction, and

2

computer printouts; all drafts, outlines and proposals of any such documents (whether or not actually used), and all non-identical copies (whether different from the original by reason of notations made on such copies or otherwise) are separate documents within the meaning of the term. The term also includes information stored in, or accessible through, computer or other information retrieval systems, together with instructions and all materials necessary to retrieve, use or interpret such data.

4.      "Person" includes any natural person, corporate entity, partnership, association, joint venture, trust, government unit, agency, branch, commission or office or any subdivision or department thereof, including, but not limited to, all officials, representatives and employees of any government unit, agency, branch, commission or office, or any subdivision or department thereof.

5.      "United States" means the fifty states, the District of Columbia, and all territories, dependencies, or possessions of the United States of America.

6.      "You," "your" and/or "Defendant" means your corporate entity.

7.      "POS" means point of sale.

8.      "Transaction" means a POS retail transaction for the purchase of goods or services.

9.      "Circumstances" means condition, fact or event accompanying or leading up to causes of and/or negotiations or discussions over.

10.     "Set" means fixed, adopted, determined and/or established.

11.     "Policy" means any formal or informal, oral or written, guideline, procedure, plan, practice, program, strategy or guideline.

3

12.    "Rule" means any by-law, regulation (including without limitation any operating regulation), policy or guideline.

13.    "Bank" means any financial institution that issues or acquires Visa and/or MasterCard products as a member of Visa and/or MasterCard.

14.    "Credit Card" is an access device which enables the holder to effect transactions on credit for goods and services purchased, which are paid on behalf of the holder by the issuer of such device. The card also allows holders to obtain cash with credit extended by the issuer. Examples of credit cards are the Visa and MasterCard credit cards issued by members of bank card associations, the Discover, Bravo and Private Issue cards issued by Morgan Stanley, Dean Witter & Co., and the Optima cards issued by American Express.

15.    "Charge Card" or "Travel and Entertainment Card" or "T&E Card" is an access device which enables the holder to purchase goods and services on credit to be paid on behalf of the holder by the issuer of such device.  Examples of charge cards, travel and entertainment cards or T&E cards are the American Express, Green, Gold and Platinum cards as well as the Diners Club and Carte Blanche cards issued by Citibank.

16.    "Debit Card" is an access device which enables the holder, among other things, to effect a cash withdrawal from the holder's bank account at an ATM or make a purchase at a point of sale which is debited against one or more of the holder's bank accounts.

17.    "Plastic Payment Card" means a device which enables the holder to perform the functions or obtain the access provided by one or more of the cards defined above, *i.e.,* Credit Cards, Charge Cards, and Debit Cards.

18.    "Truncation" means the removing, hiding or disguising of account numbers and/or expiration dates from Plastic Payment Card receipts issued at the point of sale.

19.    "Retailer" means merchant.

20.    "Bank Card Acquiring Institution" or "Bank Card Merchant Institution" means a bank or other financial institution member of Visa and/or MasterCard that establishes agreements with retailers who will accept Visa and/or MasterCard branded Plastic Payment Cards as payment for the goods and services they sell.

21..    "Bank Card Issuing Institution" means a bank or other financial institution member of Visa and/or MasterCard that issues Visa and/or MasterCard branded Plastic Payment Cards to consumers for their use as access devices.

22.    An "Independent Sales Organization" (ISO), also called a Member Service Provider (MSP) is a company (not a MasterCard or Visa member) that is contracted by members to administer merchant and/or cardholder servicing.

23.    A "Third Party Processor" is an institution acting under contract with Plastic Payment Card issuers or acquirers that process Plastic Payment Cards, among other electronic transactions.

24.    "Device" means any machine used to accept Plastic Payment Cards at the POS and to print receipts to be given to consumers.

25.    A "Class A Device" is a machine Defendant first put into use after January 1, 2005 at the POS to effect transactions by charging consumers' Plastic Payment Cards for goods or services and then generating electronically printed receipts.

26.    A "Class B Device" is a machine Defendant first put into use before January 1, 2005 and continued to use after December 4, 2006 at the POS to effect transactions by charging consumers' Plastic Payment Cards for goods or services and then generating electronically printed receipts.

5

## INSTRUCTIONS

A.    Unless otherwise specified, the information requested is that which is applicable (*e.g.*, had impact or effect, or in the case of documents, was effective, prepared, written, sent, dated, received or utilized at any time) at any time through and including the time of trial in this matter.

B.    Unless otherwise specified, the information requested is limited to the United States (as defined above). For example, a request for the number of all plastic payment card receipts issued at the POS is presumed to be confined to those that occurred at POS locations in the United States.

C.    These requests include information that now is or ever was in the knowledge of your present or former employees, representatives, agents, and persons consulted concerning any factual matters or matters or opinions, or is otherwise available to you as either a practical matter or as a matter of law.

D.    These requests shall be deemed to be continuing so as to require prompt, further, and supplemental production if you discover additional information or documents that should have been produced in response to these requests after the time of initial production or that come to exist after the time of initial production.

E.    For purposes of reading, interpreting or construing the scope of these requests, the terms used shall be given their most expansive and inclusive interpretation. This includes, without limitation, the following:

1.    Construing the terms "and" and "or" in the disjunctive or conjunctive, as necessary, to make the interrogatory more inclusive;

6

2.    Construing the singular form of any word to include the plural and the plural form to include the singular;

3.    Construing the past tense of the verb to include the present tense and the present tense to include the past tense;

4.    Construing the masculine form to include the feminine form, and

5.    Construing the term "date" to mean the exact day, month and year if ascertainable; if not, the closest approximation that can be made by means of relationship to other events, locations, or matters.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Please identify all retail stores operated by Defendant within the United States at any time after January 1, 2005, including the physical address of the stores and any other designation (*e.g.*, store number) used by Defendant to identify to each store.

### INTERROGATORY NO. 2:

Identify all CLASS A DEVICES used in the stores identified in Interrogatory No. 1. In identifying the CLASS A DEVICES, state the device manufacturer, date of manufacture and model, the serial number, and the store identification as defined in Interrogatory No. 1. If no serial number is available for a device, Defendant shall identify each device by a uniformly designated numbering system of Defendant's choosing.

### INTERROGATORY NO. 3:

Identify all CLASS B DEVICES used in the stores identified in Interrogatory No. 1. In identifying the CLASS B DEVICES, state the device manufacturer, date of manufacture and model, the serial number, and the store identification as defined in Interrogatory No. 1. If no

7

serial number is available for a device, Defendant shall identify each device by a uniformly designated numbering system of Defendant's choosing.

**INTERROGATORY NO. 4:**

For all CLASS A DEVICES identified in response to Interrogatory No. 2, state the aggregate number of receipts provided to cardholders that were printed after January 1, 2005.

**INTERROGATORY NO. 5:**

For all CLASS B DEVICES identified in response to Interrogatory No. 3, state the aggregate number of receipts provided to cardholders that were printed after December 4, 2006.

**INTERROGATORY NO. 6:**

Of the aggregate number of CLASS A DEVICE receipts identified in response to Interrogatory Number No. 4, state the total number of receipts provided to cardholders that when printed showed more than the last five (5) digits of the Plastic Payment Card account number and the expiration date of the Plastic Payment Card.

**INTERROGATORY NO. 7:**

Of the aggregate number of CLASS B DEVICE receipts identified in response to Interrogatory Number No. 5, state the total number of receipts provided to cardholders that when printed showed more than the last five (5) digits of the Plastic Payment Card account number and the expiration date of the Plastic Payment Card.

**INTERROGATORY NO. 8:**

Of the aggregate number of CLASS A DEVICE receipts identified in response to Interrogatory Number No. 4, state the total number of receipts provided to cardholders that

8

when printed showed more than the last five (5) digits of the Plastic Payment Card account number <u>and</u> did not show the expiration date of the Plastic Payment Card.

**INTERROGATORY NO. 9:**

Of the aggregate number of CLASS B DEVICE receipts identified in response to Interrogatory Number No. 5, state the total number of receipts provided to cardholders that when printed showed more than the last five (5) digits of the Plastic Payment Card account number <u>and</u> did not show the expiration date of the Plastic Payment Card.

**INTERROGATORY NO. 10:**

Of the aggregate number of CLASS A DEVICE receipts identified in response to Interrogatory Number No. 4, state the total number of receipts provided to cardholders that when printed showed five (5) digits of the Plastic Payment Card account number or less <u>but</u> did show the expiration date of the Plastic Payment Card.

**INTERROGATORY NO. 11:**

Of the aggregate number of CLASS B DEVICE receipts identified in response to Interrogatory Number No. 5, state the total number of receipts provided to cardholders that when printed showed five (5) digits of the Plastic Payment Card account number or less <u>but</u> did show the expiration date of the Plastic Payment Card.

**INTERROGATORY NO. 12:**

State the date and means after December 4, 2003 by which Defendant first learned of the existence of any of the Truncation requirements of 15 U.S.C. § 1681(c)(g).

**INTERROGATORY NO. 13:**

State the date and means after January 1, 2005 by which Defendant first learned it printed a receipt provided to a cardholder that contained more the last five (5) digits of a Plastic Payment Card account number or the expiration date of a Plastic Payment Card.

**INTERROGATORY NO. 14:**

For the period December 4, 2003 to the present, state in detail the complete universe of actions, if any, that Defendant took to discontinue the printing of any cardholder receipt that contained more the last five (5) digits of a Plastic Payment Card account number or the expiration date of a Plastic Payment Card. In describing Defendant's actions, identify the people responsible for taking the actions by name, address, telephone number, title (if applicable), and dates of employment (if applicable) and then specify the particular actions taken by each person.

**INTERROGATORY NO. 15:**

If Defendant contends that no CLASS A or CLASS B DEVICES currently print receipts that are given to cardholders that show more than the last five (5) digits <u>or</u> expiration date of the Plastic Payment Card account number, identify the date on which Defendant last printed a receipt on each class of device that was given to a cardholder that showed more than the last five (5) digits of the Plastic Payment Card account number.

**INTERROGATORY NO. 16:**

If Defendant contends that it did not ever violate 15 U.S.C. § 1681(c)(g), state all the facts upon which this contention is based.

10

**INTERROGATORY NO. 17:**

If Defendant contends that it did not act willfully in giving cardholders receipts that contained more than the last five (5) digits or the expiration date of the Plastic Payment Card account number, state all facts upon which this contention is based.

**INTERROGATORY NO. 18:**

If Defendant contends that it did not act willfully in giving cardholders receipts that contained the expiration date of the Plastic Payment Card account number, state all facts upon which this contention is based.

**INTERROGATORY NO. 19:**

For the period December 4, 2003 to the present, identify all persons given the responsibility and authority to ensure that Defendant complies with the Fair and Accurate Credit Transactions Act ("FACTA") and comparable state laws. For each person, include the name, address, telephone number, title (if applicable), and dates of employment (if applicable).

**INTERROGATORY NO. 20:**

For the period December 4, 2003 through the present, describe all Communications Defendant has had with anyone regarding the Truncation of Plastic Payment Card account numbers and/or expiration dates from printed receipts issued at the POS to be given to cardholders. In describing the Communications, state the source of the Communication, by whom the Communication was received, the form of the Communication, the substance of the Communication and the date of the Communication.

11

**INTERROGATORY NO. 21:**

Identify the Bank Card Acquiring Institution, Third Party Processor, Independent Sales Organization, software and/or hardware vendor, or any other comparable party involved in any way with Defendant in the acceptance of Plastic Payment Cards at the POS to effect transactions.

**INTERROGATORY NO. 22:**

Identify all Communications Defendant had with the entities referenced in Interrogatory No. 21 regarding the Truncation of Plastic Payment Card account numbers and/or expiration dates from printed receipts issued at the POS. In describing the Communications, state the source of the Communication, by whom the Communication was received, the form of the Communication, the substance of the Communication and the date of the Communication.

**REQUEST FOR PRODUCTION NO. 23:**

Describe all Communications Defendant had with Visa, Mastercard, Discover, American Express, Bravo, Diner's Club, and Carte Blanche regarding the Truncation of Plastic Payment Card account numbers and/or expiration dates from printed receipts issued at the POS. In describing the Communications, state the source of the Communication, by whom the Communication was received, the form of the Communication, the substance of the Communication and the date of the Communication.

**INTERROGATORY NO. 24:**

Please state whether Defendant has been subject to any penalties or fines by VISA or Mastercard for not properly truncating printed receipts that were provided to customers. As

part of answering this interrogatory, state the date for every penalty or fine and the facts you

understand Visa or Mastercard to have relied upon for each penalty or fine.

## INTERROGATORY NO. 25:

For each of Defendant's responses to Plaintiff's Request for Admissions that is not an

unqualified admission, state the number of the request and all facts upon which Defendant

based its response, including the identity of the persons who have knowledge of the facts set

forth.

**DONOVAN SEARLES, LLC**

Dated: August 17, 2007          By: _____

David A. Searles
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
(215) 732-6067

**FRANCIS & MAILMAN, P.C.**
James A. Francis
100 South Broad Street, 19th Floor
Philadelphia, PA 19110
(215) 735-8600

Attorneys for Plaintiff and the Class

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served on the date below,

by first class mail, on the following:

Stephen G. Harvey
PEPPER HAMILTON LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103

Rafik Mattar
CALL, JENSEN & FERRELL
610 Newport Center, Suite 700
Newport Beach, CA 92660

Date: August 17, 2007

David A. Searles

**RECEIVED**

AUG 2 3 2007

CALL, JENSEN & FERRELL

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

AUG - 6 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ronald Rosenberg <br><br> Plaintiff(s) <br><br> v. <br><br> Big A Drug Stores, Inc. <br><br> Defendant(s). | **CASE NUMBER** <br><br> C.V. 07-3719 CJC (MLGx) <br><br> **ORDER ON APPLICATION OF NON-RESIDENT ATTORNEY TO APPEAR IN A SPECIFIC CASE** |

The Court, having reviewed the accompanying Application of _____ **David A. Searles**
<i>Applicant's Name</i>

of _____ **Donovan Searles, LLC** _____ for permission to appear and participate
in the above-entitled <span><i>Firm Name</i></span>

action on behalf of ☑ Plaintiff  ☐ Defendant _____ **Ronald Rosenberg**

and the designation of _____ **Stephanie R. Tatar** _____ of _____ **Norman Taylor & Assocs.**
<span><i>Local Counsel Designee</i></span>   <span><i>Local Counsel Firm</i></span>

as local counsel, hereby **ORDERS** the Application be:

☒ GRANTED

☐ DENIED.  Fee, if paid, shall be returned by the Clerk.

Dated _____ **8/5/07**

_____
U. S. District Judge/U.S. Magistrate Judge

LODGED

2007 AUG -2 PM 1:53
CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY _____

DOCKETED ON CM

AUG - 9 2007

BY _____ 024

18

---

G-64 ORDER (06/05)    ORDER ON APPLICATION OF NON-RESIDENT ATTORNEY TO APPEAR IN A SPECIFIC CASE

**EXHIBIT M**

# SERVICE LIST

## Rosenberg, Ronald vs. Big A. Bad Drug Stores

**Attorneys for Plaintiff**
**Ronald Rosenberg**

**FRANCIS & MAILMAN, P.C.**
JAMES A. FRANCI
MARK D. MAILMAN
JOHN SOUMILAS
MICHAEL J. SZYMBORSKI
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

**DONOVAN SEARLES, LLC**
DAVID A. SEARLES
1845 Walnut Street ,Suite 1100
**Philadelphia, PA  19103**
**(215) 732-6067**


**Attorney for Defendant**
**Big A Drug Stores, Inc.**

CALL, JENSEN & FERRELL
Rafik Mattar, Esq.
610 Newport Center Dr., Suite 700.,
Newport Beach, CA 92660
(949) 717-3000 Tel
(949) 717-3100 Fax

## CERTIFICATE OF SERVICE

STATE OF CALIFORNIA          )
                             )        ss.
COUNTY OF LOS ANGELES        )

     I am employed in the County of Los Angeles, State of California. I am over the age of eighteen and not a party to the within action. My business address is 425 West Broadway, Suite 220, Glendale, California 91204.

     On August 22, 2007, I served the document described as: **ORDER ON APPLICATION OF NON-RESIDENT ATTORNEY TO APPEAR IN A SPECIFIC CASE** on the interested parties in the manner indicated:

### SEE ATTACHED SERVICE LIST

   **X  BY MAIL** by placing a true copy thereof enclosed in sealed envelopes addressed as stated above. I am "readily familiar" with the firm's practice of collection and processing documents for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Glendale, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

   _____  **BY FACSIMILE TRANSMISSION**: by transmitting via facsimile a true copy thereof (Consisting of ___ Pages Including Fax Cover Sheet) the document was transmitted by facsimile transmission from 818/244-6052 and that the transmission was reported as complete and without error. A copy of the transmission report is attached hereto. Executed on _____ at Glendale, California.

   _____  **BY DHL/OVERNIGHT DELIVERY**: by depositing in a box or other facility regularly maintained by DHL that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope designated by DHL with delivery fees paid or provided for, addresses as set forth herein, and envelop was placed for delivery by DHL at Glendale, California following ordinary business practices

 **X**  Federal:   I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

     I Declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on August 22, 2007, Glendale, California

ANA ADAME

**1**
PROOF OF SERVICE

**CT** CORPORATION
A WoltersKluwer Company



**Service of Process
Transmittal**
07/27/2007
Log Number 512442798

**TO:**    Tax Department
Max Rave, LLC
2761 Fruitland Avenue
Vernon, CA, 90058

**RE:**    **Process Served in Illinois**

**FOR:**   Max Rave, LLC (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Hristo Gueorguiev, Individually and on behalf of a class, Pltf. vs. Max Rave, LLC, and Does 1-10, Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Amended Complaint |
| **COURT/AGENCY:** | Northern District - Chicago - United States District Court, IL Case # 07C3685 |
| **NATURE OF ACTION:** | Violations of the Fair and Accurate Credit Transaction - Provided an electronically printed receipt displaying more than the last five digits of credit card and expiration date |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Chicago, IL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/27/2007 at 14:30 |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Daniel A. Edelman Edelman, Combs, Latturner & Goodwin, LLC 120 South LaSalle Street 18th Floor Chicago, IL, 60603 312-739-4200 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex 2 Day, 798228681408 |
| **SIGNED:** | C T Corporation System |
| **PER:** | Tawana Carter |
| **ADDRESS:** | 208 South LaSalle Street Suite 814 Chicago, IL, 60604 |
| **TELEPHONE:** | 312-345-4336 |

Page 1 of 1 / DS

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of the package only, not of its contents.

**EXHIBIT N**

AO 440  (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS



### SUMMONS IN A CIVIL CASE

HRISTO GUEORGUIEV,
individually and on behalf of a class,

| | |
|---|---|
| CASE NUMBER: | 07 C 3685 |

V.

ASSIGNED JUDGE:    Judge Bucklo

MAX RAVE, LLC,
and DOES 1-10

DESIGNATED
MAGISTRATE JUDGE:    Magistrate Judge Denlow

TO: (Name and address of Defendant)

Max Rave, LLC
c/o CT Corporation System, registered agent
208 South LaSalle Street, Suite 814
Chicago, Illinois 60604

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Edelman, Combs, Latturner & Goodwin, LLC
120 South LaSalle Street, 18th floor
Chicago, IL 60603

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this
summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time
after service.

MICHAEL W. DOBBINS, CLERK

NADINE FINLEY
(By) DEPUTY CLERK

JUL 2 7 2007
DATE
July 27, 2007
2:25 pm

**FILED**

**JULY 24, 2007**
MICHAEL W. DOBBINS
CLERK, U S DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SMM

| | | |
|---|---|---|
| HRISTO GUEORGUIEV,<br>individually and on behalf of a class,<br><br>Plaintiff,<br><br>v.<br><br>MAX RAVE, LLC,<br>and DOES 1-10,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 07 C 3685<br>Judge Bucklo<br>Magistrate Judge Denlow |

## AMENDED COMPLAINT – CLASS ACTION

### INTRODUCTION

1.    Plaintiff Hristo Gueorguiev brings this action to secure redress for the violation by Max Rave, LLC of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA").

2.    One provision of FACTA, codified as 15 U.S.C. §1681c(g), provides that:

> No person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

3.    Section 1681c(g) is "not ambiguous." It "expressly prohibits printing more than the last five digits of the credit/debit card numbers and also prohibits printing the card's expiration date." Pirian v. In-N-Out Burgers, 06-1251, 2007 U.S. Dist. LEXIS 25384, *8 (C.D.Cal. Apr. 5, 2007).

4.    The purpose of this "truncation requirement" is to prevent identity theft. The

1

Federal Trade Commission estimates that over 9 million persons each year have their identity assumed by criminals for financial gain, causing losses in excess of $50 billion.

5.     One common modus operandi of identity thieves is to obtain credit card receipts that are lost or discarded, or through theft, and use the information on them to engage in transactions. Identity thieves who do this are known as "carders" and "dumpster divers." This modus operandi is more common than the use of sophisticated electronic means to obtain the information. Robin Sidel, "Identity Theft – Unplugged – Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way," Wall Street Journal, Oct. 5, 2006, p. B1.

6.     On information and belief, it is possible for sophisticated identity thieves to replicate a credit card number using the expiration date and the last four digits of the card number. In any event, the expiration date is essential to misuse of the card number.

7.     To curb this means of identity theft, Congress prohibited merchants who accept credit cards and debit cards from issuing electronically-generated receipts that display either the expiration date or more than the last five digits of the card number.

8.     The law gave merchants who accept credit cards and/or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006.

9.     Defendant has willfully violated this law and failed to protect plaintiff and others similarly situated against identity theft and credit card and debit card fraud by failing to comply with the truncation requirement.

10.    Plaintiff brings this action against defendant based on defendant's violation of 15 U.S.C. §§1681 et seq. Plaintiff seeks statutory damages, attorneys fees, costs, and such other

2

relief as the Court deems proper, including punitive damages.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction under 28 U.S.C. §1331 and 15

U.S.C. §1681p (FCRA).

12.    Venue in this district is proper because defendant Max Rave, LLC does

business here.

## PARTIES

13.    Plaintiff, Hristo Gueorguiev, is a resident of this district.

14.    Defendant Max Rave, LLC is a corporation chartered under Delaware law

with its principal place of business in New Jersey. It does business as, among other things, Lola,

Max Rave and Rave. It operates a store at the Harlem Irving Plaza, Norridge, Illinois. Its registered

agent and office in Illinois are C T Corporation System, 208 South LaSalle Street, Suite 814,

Chicago, Illinois, 60604.

15.    Defendant Max Rave, LLC is a "person that accepts credit cards or debit

cards for the transaction of business" within the meaning of FACTA.

16.    Defendants Does 1-10 are individual officers, directors, employees and

agents of defendant Max Rave, LLC who authorized, directed or participated in the violations of law

complained of.

## FACTS

17.    On or about December 23, 2006, plaintiff received from Max Rave, LLC at

its establishment located at Harlem Irving Plaza, Norridge, Illinois, a computer-generated cash

register receipt which displayed plaintiff's card expiration date.

3

## CLASS ALLEGATIONS

18.    Plaintiff brings this action on behalf of a class pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

19.    The class is defined as all persons to whom Max Rave, LLC provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring in Illinois after December 4, 2006, which receipt displays either (a) more than the last five digits of the person's credit card or debit card number, and/or (b) the expiration date of the person's credit or debit card.

20.    The class is so numerous that joinder of all individual members in one action would be impracticable. .

21.    There are over 100 persons to whom Max Rave, LLC provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring in Illinois after December 4, 2006, which receipt displays either (a) more than the last five digits of the person's credit card or debit card number, and/or (b) the expiration date of the person's credit or debit card.

22.    Plaintiff's claims are typical of the claims of the class members. All are based on the same legal theories and arise from the same unlawful and willful conduct.

23.    There are common questions of fact and law affecting members of the class, which common questions predominate over questions which may affect individual members. These include the following:

   a.    Whether defendant had a practice of providing customers with a sales or transaction receipt which failed to comply with the truncation requirement.

   b.    Whether defendant thereby violated FACTA;

   c.    Whether defendant's conduct was willful; and

4

       d.     Identification and involvement of the Doe defendants.

24.    Plaintiff will fairly and adequately represent the class members. Plaintiff has no interests that conflict with the interests of the class members. Plaintiff has retained experienced counsel.

25.    A class action is superior to other available means for the fair and efficient adjudication of the claims of the class members. Individual actions are not economically feasible.

## VIOLATION ALLEGED

26.    Defendants violated 15 U.S.C. §1681c(g)(1), which provides that:

**. . . no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.**

27.    With respect to machines that were first put into use after January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. §1681c(g)(1).

28.    With respect to machines that were in use before January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required compliance with the provisions of 15 U.S.C. §1681c(g)(1) on or after December 4, 2006.

29.    Defendant accepts credit cards and/or debit cards in the course of transacting business with persons such as plaintiff and the class members. In transacting such business, defendant uses cash registers and/or other machines or devices that electronically print receipts for credit card and/or debit card transactions.

30.    After the effective date of the statute, defendant, at the point of sale

or transaction, provided plaintiff and each class member with one or more electronically printed

receipts on each of which defendant failed to comply with the truncation requirement.

31.     FACTA was enacted in 2003 and gave merchants who accept credit card

and/or debit cards up to three years to comply with its requirements, requiring compliance for all

machines no later than December 4, 2006.

32.     On information and belief, defendant knew of the truncation requirement.

33.     On information and belief, VISA, MasterCard, the PCI Security Standards

Council — a consortium founded by VISA, MasterCard, Discover, American Express and JCB —

companies that sell cash registers and other devices for the processing of credit or debit card

payments, and other entities informed defendant about FACTA, including its specific requirements

concerning the truncation of credit card and debit card numbers and prohibition on the printing of

expiration dates, and defendant's need to comply with the same.

34.     The requirement was widely publicized among retailers.

35.     For example, in response to earlier state legislation enacting similar

truncation requirements, on March 6, 2003, the CEO of Visa USA, Carl Pascarella, explained that

"Today, I am proud to announce an additional measure to combat identity theft and protect

consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to

the last four digits of their accounts. The card's expiration date will be eliminated from receipts

altogether. . . . The first phase of this new policy goes into effect July 1, 2003 for all new terminals.

. . . ." "Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft;

Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein," PR

Newswire, March 6, 2003. Within 24 hours, MasterCard and American Express announced they

were imposing similar requirements.

36.    The card issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date.

37.    For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all." VISA required complete compliance by July 1, 2006, five months ahead of the statutory deadline.

38.    Most of defendant's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement. Defendant could have readily done the same.

39.    Defendants willfully disregarded FACTA's requirements and continued to use cash registers or other machines or devices that print receipts in violation of FACTA.

40.    The FCRA, 15 U.S.C. §1681n, provides:

§1681n.  Civil liability for willful noncompliance

(a) In general.  Any person who willfully fails to comply with any requirement imposed under this title [15 USC §§1681 et seq.] with respect to any consumer is liable to that consumer in an amount equal to the sum of—

(1)

(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $ 100 and not more than $ 1,000; or

(B) in the case of liability of a natural person for obtaining a

7

consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $ 1,000, whichever is greater;

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court. . . .

41.    The FCRA, 15 U.S.C. §1681p, provides:

§1681p.  Jurisdiction of courts; limitation of actions

An action to enforce any liability created under this title [15 USC §§1681 et seq.] may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within two years from the date on which the liability arises, except that where a defendant has materially and willfully misrepresented any information required under this title [15 USC §§1681 et seq.] to be disclosed to an individual and the information so misrepresented is material to the establishment of the defendant's liability to that individual under this title [15 USC §§1681 et seq.], the action may be brought at any time within two years after discovery by the individual of the misrepresentation. ∙

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff

and the class members and against defendants as follows:

a.    For statutory damages of $100 to $1,000 per violation;

b.    For attorney's fees, litigation expenses and costs;

c.    For such other and further relief as the Court may deem proper,

including punitive damages.

/s/ Thomas E. Soule
Thomas E. Soule

Daniel A. Edelman
Cathleen M. Combs

8.

James O. Latturner
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

### JURY DEMAND

Plaintiff demands trial by jury.

/s/ Thomas E. Soule
Thomas E. Soule

9

## NOTICE OF LIEN

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.

/s/ Thomas E. Soule
Thomas E. Soule

Daniel A. Edelman
Thomas E. Soule
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

10

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HRISTO GUEORGUIEV, individually      )
and on behalf of a class,            )
                                     )
                Plaintiff,           )      No.  07 C 3685
                                     )
        v.                           )      Judge Elaine E. Bucklo
                                     )
MAX RAVE, LLC; and DOES 1-10,        )      Magistrate Judge Morton Denlow
                                     )
                Defendants.          )

### DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES
### TO AMENDED COMPLAINT

Defendant Max Rave, LLC ("Max Rave"), for its Answer to the Amended

Complaint, filed July 24, 2007 ("Complaint"), of Hristo Gueorguiev ("Plaintiff"), responds as

follows:

### INTRODUCTION

1.    Plaintiff Hristo Gueorguiev brings this action to secure redress for the
      violation by Max Rave, LLC of the Fair and Accurate Credit Transactions
      Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA").

**ANSWER:**

Max Rave admits that Plaintiff purports to bring this action for an alleged

violation of the Fair and Accurate Credit Transactions Act ("FACTA").  Except as expressly

admitted, Max Rave denies all remaining allegations in paragraph 1.

2.    One provision of FACTA, codified as 15 U.S.C. §1681c(g), provides that:

      **No person that accepts credit cards or debit cards for the transaction
      of business shall print more than the last 5 digits of the card number
      or the expiration date upon any receipt provided to the cardholder at
      the point of sale or transaction.**

172599_1.DOC

**Exhibit O**

**ANSWER:**

Max Rave admits that Plaintiff appears to quote portions the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681c(g). Max Rave states that the FCRA speaks for itself and on that basis denies any allegations inconsistent therewith. Except as expressly admitted, Max Rave denies all remaining allegations in paragraph 2.

3.  Section 1681c(g) is "not ambiguous." It "expressly prohibits printing more than the last five digits of the credit/debit card numbers and also prohibits printing the card's expiration date." Pirian v. In-N-Out Burgers, 06-1251, 2007 U.S. Dist. LEXIS 25384, *8 (C.D. Cal. Apr. 5, 2007).

**ANSWER:**

Max Rave does not respond to paragraph 3 as there are no allegations contained therein. To the extent paragraph 3 contains any allegations, Max Rave denies each and every allegation contained therein.

4.  The purpose of this "truncation requirement" is to prevent identity theft. The Federal Trade Commission estimates that over 9 million persons each year have their identity assumed by criminals for financial gain, causing losses in excess of $50 billion.

**ANSWER:**

Max Rave is without sufficient information to form a belief as to the truth of the allegations contained in paragraph 4 of the Complaint, and therefore denies each and every allegation contained therein.

5.  One common modus operandi of identity thieves is to obtain credit card receipts that are lost or discarded, or through theft, and use the information on them to engage in transactions. Identity thieves who do this are known as "carders" and "dumpster divers." This modus operandi is more common than the use of sophisticated electronic means to obtain the information. Robin Sidel, "Identity Theft – Unplugged – Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way," Wall Street Journal, Oct. 5, 2006, p. B1.

2

**ANSWER:**

Max Rave is without sufficient information to form a belief as to the truth of the

allegations contained in paragraph 5 of the Complaint, and therefore denies each and every

allegation contained therein.

6.     On information and belief, it is possible for sophisticated identity thieves
to replicate a credit card number using the expiration date and the last four
digits of the card number. In any event, the expiration date is essential to
misuse of the card number.

**ANSWER:**

Max Rave denies each and every allegation contained in paragraph 6 of the

Complaint.

7.     To curb this means of identity theft, Congress prohibited merchants who
accept credit cards and debit cards from issuing electronically-generated
receipts that display either the expiration date or more than the last five
digits of the card number.

**ANSWER:**

Max Rave admits Plaintiff appears to set forth truncation requirements of

information on electronically printed receipts in paragraph 7. Max Rave states that the FCRA

speaks for itself and on that basis denies any allegations inconsistent therewith. Except as

expressly admitted, Max Rave denies all remaining allegations in paragraph 7.

8.     The law gave merchants who accept credit cards and/or debit cards up to
three years to comply with its requirements, requiring full compliance
with its provisions no later than December 4, 2006.

**ANSWER:**

Max Rave admits Plaintiff purports to provide the law's compliance deadline in

paragraph 8. Max Rave states that the FCRA speaks for itself and on that basis denies any

allegations inconsistent therewith. Except as expressly admitted, Max Rave denies all remaining

allegations in paragraph 8.

9.     Defendant has willfully violated this law and failed to protect plaintiff and
       others similarly situated against identity theft and credit card and debit
       card fraud by failing to comply with the truncation requirement.

**ANSWER:**

Max Rave denies each and every allegation contained in paragraph 9 of the

Complaint.

10.    Plaintiff brings this action against defendant based on defendant's
       violation of 15 U.S.C. §§1681 *et seq.* Plaintiff seeks statutory damages,
       attorneys fees, costs, and such other relief as the Court deems proper,
       including punitive damages.

**ANSWER:**

Max Rave admits that Plaintiff purports to bring this action against Max Rave

based on an alleged violation of 15 U.S.C. §§ 1681 *et seq.*, and seeks "statutory damages,

attorney fees, costs and other relief as the Court deems proper, including punitive damages."

Max Rave denies Plaintiff is entitled to any such damages and/or relief. Except as expressly

admitted, Max Rave denies all remaining allegations in paragraph 10.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction under 28 U.S.C. §1331and 15
       U.S.C. §1681p (FCRA).

**ANSWER:**

Max Rave admits that Plaintiff purports that this Court has subject matter

jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

12.    Venue in this district is proper because defendant Max Rave, LLC does
       business here.

**ANSWER:**

Max Rave admits that Plaintiff purports venue is proper.

## PARTIES

13.    Plaintiff, Hristo Gueorguiev, is a resident of this district.

4

**ANSWER:**

      Max Rave is without sufficient information to form a belief as to the truth of the

allegations contained in paragraph 13 of the Complaint, and therefore denies each and every

allegation contained therein.

      14.    Defendant Max Rave, LLC is a corporation chartered under Delaware law
with its principal place of business in New Jersey. It does business as,
among other things, Lola, Max Rave and Rave. It operates a store at the
Harlem Irving Plaza, Norridge, Illinois. Its registered agent and office in
Illinois are C T Corporation System, 208 South LaSalle Street, Suite 814,
Chicago, Illinois, 60604.

**ANSWER:**

      Max Rave denies its principal place of business is in New Jersey. Max Rave

admits the remaining allegations in paragraph 14.

      15.    Defendant Max Rave, LLC is a "person that accepts credit cards or debit
cards for the transaction of business" within the meaning of FACTA.

**ANSWER:**

      Max Rave admits it accepts credit cards or debit cards for transacting business.

Max Rave does not respond to whether it is a "person" within the meaning of FACTA because it

requires a legal conclusion.

      16.    Defendants Does 1-10 are individual officers, directors, employees and
agents of defendant Max Rave, LLC who authorized, directed or
participated in the violations of law complained of.

**ANSWER:**

      Max Rave is without sufficient information to form a belief as to the truth of the

allegations contained in paragraph 16 of the Complaint, and therefore denies each and every

allegation contained therein.

### FACTS

      17.    On or about December 23, 2006, plaintiff received from Max Rave, LLC
at its establishment located at Harlem Irving Plaza, Norridge, Illinois, a

5

computer-generated cash registered receipt which displayed plaintiff's card expiration date.

**ANSWER:**

Until Max Rave obtains discovery from Plaintiff, it is without sufficient information to form a belief as to the truth of the allegations contained in paragraph 17, and therefore denies each and every allegation therein on that basis.

### CLASS ALLEGATIONS

18.   Plaintiff brings this action on behalf of a class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

**ANSWER:**

Max Rave admits that Plaintiff purports to bring this action on behalf of a class. Except as expressly admitted, Max Rave denies all the remaining allegations in paragraph 18.

19.   The class is defined as all persons to whom Max Rave, LLC provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring in Illinois after December 4, 2006, which receipt displays either (a) more than the last five digits of the person's credit card or debit card number, and/or (b) the expiration date of the person's credit or debit card.

**ANSWER:**

Max Rave admits that Plaintiff purports to seek a class as defined. Except as expressly admitted, Max Rave denies all the remaining allegations in paragraph 19.

20.   The class is so numerous that joinder of all individual embers in one action would be impracticable.

**ANSWER:**

Max Rave states that paragraph 20 alleges legal conclusions that are not subject to admission or denial. To the extent that facts are alleged in paragraph 20, Max Rave is without sufficient information to form a belief of any remaining factual allegations contained in paragraph 20, and therefore denies those allegations on that basis.

6

21.    There are over 100 persons to whom Max Rave, LLC provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring in Illinois after December 4, 2006, which receipt displays either (a) more than the last five digits of the person's credit card or debit card number, and/or (b) the expiration date of the person's credit or debit card.

**ANSWER:**

Max Rave admits that it may have on one or more occasions printed the expiration date and/or more than the last five digits of a credit or debit card. Max Rave is without sufficient information to form a belief as to the truth of the remaining allegations contained in paragraph 21 of the Complaint, and therefore denies each and every remaining allegation contained therein.

22.    Plaintiff's claims are typical of the claims of the class members. All are based on the same legal theories and arise from the same unlawful and willful conduct.

**ANSWER:**

Max Rave states that paragraph 22 alleges legal conclusions that are not subject to admission or denial. To the extent that facts are alleged in paragraph 22, Max Rave is without sufficient information to form a belief of any remaining factual allegations contained in paragraph 22, and therefore denies those allegations on that basis. Max Rave denies any of its alleged actions were willful.

23.    There are common questions of fact and law affecting members of the class, which common questions predominate over questions which may affect individual members. These including the following:

a.    Whether defendant had a practice of providing customers with a sales or transaction receipt which failed to comply with the truncation requirement;

b.    Whether defendant thereby violated FACTA;

c.    Whether defendant's conduct was willful; and

7

   d. Identification and involvement of the Doe defendant.

**ANSWER:**

  Max Rave states that paragraph 23 alleges legal conclusions that are not subject to

admission or denial.  To the extent that facts are alleged in paragraph 23, Max Rave is without

sufficient information to form a belief of any remaining factual allegations contained in

paragraph 23, and therefore denies those allegations on that basis.

   24. Plaintiff will fairly and adequately represent the class members.  Plaintiff
    has no interests that conflict with the interests of the class members.
    Plaintiff has retained experienced counsel.

**ANSWER:**

  Max Rave states that paragraph 24 alleges legal conclusions that are not subject to

admission or denial.  To the extent that facts are alleged in paragraph 24, Max Rave is without

sufficient information to form a belief of any remaining factual allegations contained in

paragraph 24, and therefore denies those allegations on that basis.

   25. A class action is superior to other available means for the fair and efficient
    adjudication of the claims of the class members.  Individual actions are not
    economically feasible.

**ANSWER:**

  Max Rave denies that a class action is the superior method to other available

means in this action.  Max Rave is without sufficient information to form a belief as to the truth

of the remaining allegations contained in paragraph 25 of the Complaint, and therefore denies

those allegations contained therein.

### VIOLATION ALLEGED

   26. Defendants violated 15 U.S.C. §1681c(g)(1), which provides that:

    **...no person that accepts credit cards or debit cards for the
    transaction of business shall print more than the last five digits of the**

8

card number <u>or</u> the expiration date upon any receipt provided to the
cardholder at the point of sale or transaction.

**ANSWER:**

Max Rave denies it willfully violated 15 U.S.C. § 1681c(g)1. Max Rave admits

that Plaintiff appears to quote portions the FCRA. Max Rave states that the FCRA speaks for

itself and on that basis denies any allegations inconsistent therewith. Except as expressly

admitted, Max Rave denies all remaining allegations in paragraph 26.

> 27.  With respect to machines that were first put into use after January 1, 2005,
> 15 U.S.C. §1681c(g)(3)(B) required immediate compliance with the
> provisions of 15 U.S.C. §1681c(g)(1).

**ANSWER:**

Max Rave admits Plaintiff purports to provide the law's compliance deadline.

Max Rave states that the FCRA speaks for itself and on that basis denies any allegations

inconsistent therewith. Except as expressly admitted, Max Rave denies all remaining allegations

in paragraph 27.

> 28.  With respect to machines that were in use before January 1, 2005, 15
> U.S.C. §1681C(G)(3)(b) required compliance with the provisions of 15
> U.S.C. §1681c(g)(1) on or after December 4, 2006.

**ANSWER:**

Max Rave admits Plaintiff purports to provide the law's compliance deadline.

Max Rave states that the FCRA speaks for itself and on that basis denies any allegations

inconsistent therewith. Except as expressly admitted, Max Rave denies all remaining allegations

in paragraph 28.

> 29.  Defendant accepts credit cards and/or debit cards in the course of
> transacting business with persons such as plaintiff and the class members.
> In transacting such business, defendant uses cash registers and/or other
> machines or devices that electronically print receipts for credit card and/or
> debit card transactions.